1  Krishnan Padmanabhan (SBN: 254220)
   kpadmanabhan@winston.com
2  **WINSTON & STRAWN LLP**
   200 Park Avenue
3  New York, NY 10166
   Telephone: (212) 294-6700
4  Facsimile: (212) 294-4700

5  Attorneys for Comcast Defendants.

6  *(Additional counsel information omitted)*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ENTROPIC COMMUNICATIONS, LLC, | **No. 2:23-cv-1048-JWH-KES** |
| 12 | **No. 2:23-cv-1050-JWH-KES** |
| 13  Plaintiff, | Assigned to Hon. John W. Holcomb |
| 14  v. | **COMCAST DEFENDANTS' NOTICE OF MOTION AND MOTION TO** |
| 15  COMCAST CORPORATION; COMCAST CABLE | **DISMISS UNDER FED. R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE** |
| 16  COMMUNICATIONS, LLC; AND COMCAST CABLE | **ALTERNATIVE** |
| 17  COMMUNICATIONS MANAGEMENT, LLC, | Date: July 21, 2023 |
|    | Time: 9:00 AM |
| 18  Defendants. | Courtroom: 9D |

19

20        <u>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE**</u>

21              <u>**FILED UNDER SEAL**</u>

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on July 21, 2023, or as soon as this matter may be heard in Courtroom 9D before the Honorable John W. Holcomb, of the above-entitled Court located at 411 W. 4th Street, Santa Ana, California 92701, defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC (collectively, "Comcast Defendants" or "Comcast") move the Court for an order dismissing these cases with prejudice.

The Comcast Defendants move to dismiss these cases under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The undisputed facts show that in August 2020, MaxLinear, Inc., on behalf of itself and its affiliates, entered an agreement with Comcast Cable Communications Management, LLC, and covenanted not to sue the Comcast Defendants for alleged infringement of the asserted patents. MaxLinear, Inc. and its affiliate then assigned the asserted patents in March 2021 to the plaintiff, Entropic Communications, LLC ("Entropic"). Under black letter law, Entropic received the asserted patents subject to their existing encumbrances, including the covenant not to sue Comcast, and it therefore lacks a basis to bring these lawsuits. This compels dismissal.

Entropic attempts to invoke a narrow exemption for willful infringement in the covenant not to sue through a series of conclusory allegations in its First Amended Complaints (23-cv-1048, Dkt. 69-1; 23-cv-1050, Dkt. 65-1) (together, "FACs"). These allegations cannot satisfy Entropic's burden of establishing jurisdiction and fail to set forth even a plausible allegation of willfulness. Accordingly, even if the Court finds some basis for subject matter jurisdiction, Comcast moves to dismiss Entropic's willfulness claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Comcast's Motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declaration of Krishnan Padmanabhan ("Padmanabhan Decl.") and the attached exhibits, the pleadings and papers on file here, and any further materials and argument presented to the Court at the

time of the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 12, 2023. Counsel were unable to reach resolution.

Dated:  June 20, 2023                    Respectfully submitted,

WINSTON & STRAWN LLP


By:  */s/ K. Padmanabhan*
K. Padmanabhan (SBN 254220)
kpadmanabhan@winston.com
**Winston & Strawn LLP**
200 Park Ave., Fl. 40
New York City, NY 10166
Phone: 212-294-6700
Fax: 212-294-4700

Brian Ferguson (*pro hac vice*)
beferguson@winston.com
**Winston & Strawn LLP**
1901 L Street NW
Washington, D.C. 20036
Phone: 202-282-5000
Fax: 202-282-5100

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com
**Winston & Strawn LLP**
35 West Wacker, Dr.
Chicago, IL 60601
Phone: 312-558-5600
Fax: 312-558-5700

*Attorneys for Comcast Defendants*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...........................................................................................13

II.  FACTUAL BACKGROUND .........................................................................14

    A.   MaxLinear, Inc. granted Comcast a covenant not to sue for patent
        infringement on August 1, 2020 ..............................................................14

    B.   MaxLinear, Inc. or its wholly-owned subsidiary owned all the
        asserted patents on August 1, 2020 .........................................................15

    C.   MaxLinear assigned the asserted patents to Entropic in March
        2021 ..........................................................................................................16

III. APPLICABLE LAW .....................................................................................17

    A.   Dismissal under Rule 12(b)(1) for lack of subject matter
        jurisdiction................................................................................................17

    B.   Dismissal under Rule 12(b)(6) ...............................................................18

    C.   The plausibility standard for pleading willful infringement...................19

IV.  ARGUMENT..................................................................................................20

    A.   The covenant not to sue applies to all the asserted patents.....................20

    B.   The covenant protects each of the Comcast Defendants .........................22

    C.   The covenant binds Entropic....................................................................23

    D.   The covenant negates subject matter jurisdiction ...................................24

    E.   Entropic cannot satisfy the narrow willful infringement
        exemption's specific requirements...........................................................25

        1.   The exemption only applies to pre-August 1, 2020
            willfulness....................................................................................25

        2.   The exemption applies on a patent-by-patent basis.....................26

    F.   Entropic provides no facts to invoke the willfulness exemption in
        the covenant. In fact, its willfulness allegations are not even
        plausible. .................................................................................................28

        1.   Entropic's pre-suit correspondence cannot support
            willfulness (1048, Dkt. 69-1 ¶¶ 31, 109) ........................................29

        2.   Lawsuits *against others* cannot support willfulness by
            Comcast (1048, Dkt. 69-1 ¶¶ 69–71, 76–79, 93–98).....................30

4

COMCAST'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE ALTERNATIVE
NO. 2:23-CV-1048-JWH-KES / NO. 2:23-CV-1050-JWH-KES

3.    Reputation for innovation and unsupported allegations of
patent monitoring cannot support willfulness (1048, Dkt. 69-
1 ¶¶ 3–4, 32–35, 72–75, 84–92, 99–101, 108, 139–145) ..............31

4.    Purported 2003 and 2006 diligence cannot support
willfulness (1048, Dkt. 69-1 ¶¶ 65–68, 80–83) .............................33

5.    Unasserted patents cited during prosecution of Comcast
patent applications cannot support willfulness (1048, Dkt.
69-1 ¶ 110) ....................................................................................34

6.    Conclusory allegations of willful blindness cannot support
willfulness (1048, Dkt. 69-1 ¶¶ 99–107) .......................................35

G.    The covenant is clear and jurisdictional discovery is unwarranted ........36

V.    CONCLUSION ................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*805 Third Ave. Co. v. M.W. Realty Assoc.*,
   58 N.Y.2d 447 (1983) ........................................................................... 21

*Aivaliotis v. Cont'l Broker-Dealer Corp.*,
   2005 WL 1552796 (N.Y. Sup. Ct. June 24, 2005) ............................... 26

*Application of Kennelly*,
   95 N.Y.S.2d 240 (N.Y. Sup. Ct. 1950) ................................................ 27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 19

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*,
   28 F.4th 1247 (Fed. Cir. 2022) ............................................................ 19

*Bioverativ Inc. v. CSL Behring LLC*,
   2021 WL 3471688 (D. Del. Aug. 6, 2021) ........................................... 23

*Blue Phoenix Media Inc. v. Essociate Inc.*,
   2012 WL 12888834 (C.D. Cal. June 15, 2012) .................................... 24

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021) ....................................................... 19

*Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*,
   498 F. Supp. 3d 1080 (D. Minn. 2020), *aff'd*, 37 F.4th 1357 (8th Cir. 2022) ...................................................................................................... 23

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ......................................................*passim*

*Cheetah Omni LLC v. AT&T Servs., Inc.*,
   949 F.3d 691 (Fed. Cir. 2020) ............................................................. 22

*Crewe v. Rich Dad Educ., LLC*,
   884 F. Supp. 2d 60 (S.D.N.Y. 2012) ................................................... 21

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
  2022 WL 16701926 (N.D. Cal. Nov. 3, 2022) ................................. 19, 31, 32, 35

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008) ........................................................................ 23

*Dichter-Mad Family Partners, LLP v. U.S.*,
  707 F. Supp. 2d 1016 (C.D. Cal. 2010) ............................................................ 37

*Dobrova v. Holder*,
  607 F.3d 297 (2d Cir. 2010) ............................................................................. 25

*Ellington v. EMI Music, Inc.*,
  21 N.E.3d 1000 (N.Y. 2014) ............................................................................. 36

*Energy Innovation Co., LLC v. NCR Corp.*,
  2018 WL 7050840 (N.D. Ga. Nov. 29, 2018) ................................................... 23

*Engasser v. Tetra Tech, Inc.*,
  519 F. Supp. 3d 703 (C.D. Cal. 2021) ............................................. 13, 17, 18, 29

*Entropic Comm'ns, LLC v. Dish Network Corp. et al*,
  C.A. 2:22-cv-07775-JWH-JEM, Dkt. 232 ........................................................ 17

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*,
  2016 WL 1019667 (D. Del. Mar. 15, 2016) ...................................................... 30

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*,
  2016 WL 1381765 (D. Del. Apr. 6, 2016) ........................................................ 30

*Finjan, Inc. v. Cisco Sys., Inc.*,
  2017 WL 2462423 (N.D. Cal. June 7, 2017) ............................................... 31, 34

*Finjan, Inc. v. Cisco Sys., Inc.*,
  2018 WL 7131650 (N.D. Cal. Feb. 6, 2018) ..................................................... 30

*Gassman v. Rothlein*,
  713 N.Y.S.2d 208 (N.Y. App. Div. 2d Dep't 2000) .......................................... 21

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*,
  651 F.3d 1355 (Fed. Cir. 2011) ........................................................................ 22

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) ............................................................................................ 19

*Harris Trust & Sav. v. John Hancock Mut. Life Ins. Co.*,
   970 F.2d 1138 (2d Cir. 1992) ..............................................................................26

*Harrop & Co. v. Apollo Inv. Fund VII, L.P.*,
   2015 WL 3989030 (N.Y. Sup. Ct. June 25, 2015)............................................21

*Innovus Prime, LLC v. Panasonic Corp.*,
   2013 WL 3354390 (N.D. Cal. July 2, 2013) .....................................................23

*Ipventure Inc. v. Cellco P'ship*,
   2011 WL 207978 (N.D. Cal. Jan. 21, 2011)......................................................34

*King Pharms., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010) ...................................................................18, 24

*Kohl's Dep't Stores, Inc. v. Escalate, Inc.*,
   2014 WL 1330852 (E.D. Wis. Mar. 28, 2014)..................................................26

*Lister v. R & R Menswear, Ltd.*,
   2013 N.Y. Slip Op. 30563 (N.Y. Sup. Ct. 2013) .............................................28

*Longitude Licensing v. Apple Inc.*,
   2015 WL 1143071 (N.D. Cal. Mar. 13, 2015) .............................................31, 32

*MasterObjects, Inc. v. Amazon.com, Inc.*,
   2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ...............................................19, 34

*Mendoza v. Wells Fargo Bank, N.A.*,
   2021 WL 4932732 (C.D. Cal. Aug. 9, 2021) ....................................................18

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   2012 WL 4340653 (D. Del. Sept. 20, 2012) .....................................................31

*Myoungchul Shin v. Uni-Caps, LLC*,
   2014 WL 12853912 (C.D. Cal. Dec. 17, 2014)..................................................33

*Novitaz, Inc. v. inMarket Media, LLC*,
   2017 WL 2311407 (N.D. Cal. May 26, 2017) ...................................................35

*Orthopaedic Hosp. v. Encore Med. L.P.*,
   2022 WL 254956 (S.D. Cal. Jan. 27, 2022) ......................................................34

*Prime Healthcare Services, Inc. v. Harris*,
   216 F. Supp. 3d 1096 (S.D. Cal. 2016) .............................................................36

*Radware, Ltd. v. F5 Networks, Inc.*,
   2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ...................................................35

*Ragins v. Hosps. Ins. Co., Inc.*,
   22 N.Y.3d 1019 (N.Y. 2013) ............................................................................21

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
   2022 WL 2047613 (C.D. Cal. Jan. 18, 2022)....................................................20

*RJ Tech., LLC v. Apple, Inc.*,
   2023 WL 3432237 (C.D. Cal. Mar. 23, 2023) .............................................19, 33

*Robocast, Inc. v. YouTube, LLC*,
   2022 WL 16922035 (D. Del. Nov. 14, 2017).....................................................31

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..........................................................................18

*Schron v. Troutman Sanders LLP*,
   986 N.E.2d 430 (N.Y. 2013) .............................................................................24

*Shahtout v. Cal. Psychcare, Inc.*,
   562 F. Supp. 3d 913 (C.D. Cal. 2022) (Holcomb, J.)........................................36

*Shipping & Transit LLC v. Neptune Cigars, Inc.*,
   No. 2:16-03836-AG-SS, Dkt. No. 25 (C.D. Cal. Sept. 12, 2016)..........18, 24, 37

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ...................................................................19, 35

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ..........................................................................24

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
   2018 WL 5263065 (C.D. Cal. June 26, 2018)...................................................19

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ........................................................................34

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................19

*Teradyne v. Astronics Test Sys., Inc.*,
   2020 WL 8173024 (C.D. Cal. Nov. 6, 2020) ....................................................36

9

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009) ................................................22, 23

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*,
   807 N.E.2d 876 (N.Y. 2004) ................................................37

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ................................................33

*Volk v. Liggett Group Inc.*,
   1997 WL 107458 (S.D.N.Y. Mar. 11, 1997)................................25

*W.W.W. Assocs., Inc. v. Giancontieri*,
   566 N.E.2d 639 (N.Y. 1990) ................................................26

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ................................................19

*WiAV Sols. Inc. v. HTC Corp.*,
   2016 N.Y. Slip Op. 30915 (N.Y. Sup. Ct. 2016) ................................28

**Other Authorities**

Black's Law Dictionary ................................................21

Fed. R. Civ. P. 12(b)(1) ................................................*passim*

Fed. R. Civ. P. 12(b)(6) ................................................14, 18, 19, 37

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Comcast-MaxLinear Vendor Service Agreement and Statement of Work |
| B | MaxLinear Communications LLC D&B family tree |
| C | Table of Asserted Patents and Assignments |
| D | February 2018 assignment to MaxLinear Communications LLC |
| E | September 2012 assignment to MaxLinear, Inc. of U.S. Patent App. No. 13/607,916 |
| F | September 2012 assignment to MaxLinear, Inc. of U.S. Patent App. No. 14/948,947 |
| G | July-August 2013 assignment to MaxLinear, Inc. |
| H | June 2010 assignment to MaxLinear, Inc. |
| I | February 2015 Plan of Merger |
| J | April 2015 assignment to Legacy Entropic |
| K | March 2021 assignment to Entropic by MaxLinear, Inc. |
| L | March 2021 assignment to Entropic by MaxLinear Communications LLC |
| M | Entropic Delaware Secretary of State registration |
| N | Entropic Texas Secretary of State registration |
| O | LinkedIn Fortress Profiles |
| P | Fortress Address |
| Q | Comcast Organization Chart |
| R | Comcast 2020 Form 10-K |
| S | August 2022 letter from Entropic to Comcast |
| T | October 2022 letter from Comcast to Entropic |
| U | December 2022 letter from Entropic to Comcast |
| V | February 2023 letter from Entropic to Comcast attaching already filed complaints |

11

| Exhibit | Description |
|---------|-------------|
| W | May 18, 2023 letter from MaxLinear to Comcast |
| X | Cross-reference of allegations in 1048 and 1050 FACs |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     INTRODUCTION**

Plaintiff Entropic's claims for patent infringement against Comcast must be dismissed because each of the asserted patents is subject to a covenant not to sue. In August 2020, Comcast executed a vendor services agreement ("VSA") with MaxLinear, Inc. ("MaxLinear"), a supplier of semiconductor components for Comcast's cable equipment. As part of this VSA, MaxLinear granted Comcast a covenant not to sue on all patents held by MaxLinear or its affiliates. When MaxLinear executed the VSA, it owned, either directly or through its affiliates, each of the patents asserted against Comcast in these two cases (the "asserted patents"). Eight months after entering the VSA, MaxLinear assigned the asserted patents to Entropic, a monetization entity backed by Fortress Investment Group, while retaining a financial stake in any proceeds from litigation brought by Entropic.

But MaxLinear could not transfer rights it did not have—specifically, the right to sue Comcast for infringement of the asserted patents—so Entropic received the asserted patents subject to the encumbrances created by the covenant not to sue in the VSA. Entropic thus cannot sue Comcast for alleged infringement of the asserted patents and the only appropriate action is dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

Faced with a 12(b)(1) motion, Entropic now "bears the burden of establishing the court's jurisdiction." *Engasser v. Tetra Tech, Inc.*, 519 F. Supp. 3d 703, 706 (C.D. Cal. 2021). And because Comcast brings a factual challenge to subject matter jurisdiction by presenting the VSA and covenant not to sue, the burden shifts to Entropic to "demonstrate *facts* sufficient to support" jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (emphasis added). Entropic's FACs demonstrate that it has no such factual basis to establish jurisdiction, and that the only appropriate action is dismissal of the cases under Rule 12(b)(1).

In an attempt to manufacture jurisdiction, Entropic points to a narrow exemption in the covenant not to sue for patents that have been willfully infringed by Comcast prior to execution of the VSA. But Entropic's FACs present no facts to allege willfulness by Comcast with respect to any MaxLinear patent, let alone any of the asserted patents, and instead contain a set of speculative and conclusory allegations—made clear by their "upon information and belief" prefix—and cannot support claims of willful infringement. In fact, Entropic's willfulness allegations fail to satisfy even the plausibility standard, let alone the higher burden under a factual attack pursuant to Rule 12(b)(1). And even if Entropic conjures some other basis for jurisdiction, its willfulness allegations should be dismissed as implausible under Rule 12(b)(6).

Since Comcast raised the covenant not to sue with both MaxLinear and Entropic, after these cases were filed, MaxLinear's actions have only confirmed that the covenant not to sue fully protects Comcast. In a letter dated May 18, and received by Comcast on May 23, MaxLinear improperly attempted to terminate the VSA. That attempted termination is ineffective and a clear breach of the terms of the VSA, which is now being litigated in a parallel action brought by Comcast against MaxLinear in the Southern District of New York (including as part of a pending preliminary injunction motion that is expected to be heard this summer). But for purposes of this motion, MaxLinear's attempted termination of the VSA confirms that the covenant not to sue was fully in force when Entropic filed these lawsuits, and is a tacit admission that the covenant bars Entropic from bringing these actions.

## II.   FACTUAL BACKGROUND

### A.   MaxLinear, Inc. granted Comcast a covenant not to sue for patent infringement on August 1, 2020

In the VSA, MaxLinear contracted to provide various services to Comcast. Ex. A (VSA) at 1. As part of the VSA, MaxLinear granted Comcast Cable Communications Management, LLC ("CCM") and its affiliates a covenant not to sue for patent infringement. *Id.* § 7.3. Specifically, the VSA included a "Covenant Not to Assert,"

14

where MaxLinear and its affiliates covenanted not to sue CCM and its affiliates for patent infringement with respect to CCM's and its affiliates' purchase, use, or deployment of **any** product or service:

> During the Term,[1] Vendor,[2] on behalf of itself and all Affiliates, (each, a "Vendor Covenanting Party"), to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, ***covenants not to sue Comcast Protected Party for patent***, copyright, or trademark ***infringement***, or for misappropriation of trade secrets, as the case may be, ***with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.***

Ex. A § 7.3 (emphasis added).[3] Thus, CCM and its affiliates cannot be sued on a MaxLinear or MaxLinear affiliate patent to the extent CCM or its affiliates had not willfully infringed that patent at the time the parties entered into the VSA. *Id.* MaxLinear's signatory on the VSA was Steven Litchfield, MaxLinear's Chief Financial Officer ("CFO"). *Id.* at 19.

**B.    MaxLinear, Inc. or its wholly-owned subsidiary owned all the asserted patents on August 1, 2020**

On the effective date of the VSA (August 1, 2020), MaxLinear, or its wholly-owned subsidiary MaxLinear Communications LLC ("MaxLinear LLC"), owned each of the asserted patents. *See* Ex. B (D&B Report) (showing MaxLinear Communications, LLC as a subsidiary of MaxLinear); Ex. C (summary table of assignments); Ex. D

---

[1] The term commenced on the Effective Date, August 1, 2020, and continues through July 31, 2026. Ex. A at 1, 14. MaxLinear cannot terminate the VSA until two years and 90 days after providing notice that it intends to terminate the associated SOW #1. Ex. A, § 11.1; Ex. A, SOW #1 at 3.

[2] "Vendor" is defined as MaxLinear, Inc. Ex. A at 1.

[3] All exhibits to this Motion are attached to the concurrently-filed Declaration of Krishnan Padmanabhan.

(assignment for 14 of 20 asserted patents); Ex. E ('008 assignment); Ex. F ('826 assignment); Ex. G ('682 assignment); Ex. H (assignment for '362, and '866 and '206 continuations). As a subsidiary of MaxLinear, MaxLinear LLC is an "affiliate" under New York law, for the reasons explained in Section IV.A, and its patents are also encumbered by the covenant not to sue in the VSA.

The relationship between MaxLinear and MaxLinear LLC, as reflected in the timeline below, resulted from a merger in April 2015 and subsequent name changes. Before April 2015, MaxLinear had a wholly-owned subsidiary named Excalibur Subsidiary, LLC ("Excalibur"). Ex. I (February 2015 Plan of Merger) at 2. In April 2015, Excalibur merged with an entity called Entropic Communications Inc., which was an operating company, and not the present patent monetization plaintiff Entropic. Ex. J (Assignment 35717-628) at 18. The merger of Excalibur and Entropic Communications Inc. resulted in an entity called Entropic Communications, LLC ("Legacy Entropic"). *Id.* Three years later, in 2018, Legacy Entropic changed its name to MaxLinear Communications LLC ("MaxLinear LLC"). Ex. D (Assignment 55776-482) at 8–9.



### C.   MaxLinear assigned the asserted patents to Entropic in March 2021

On March 31, 2021, eight months after MaxLinear granted the covenant not to sue to Comcast, MaxLinear and MaxLinear LLC assigned a portfolio of patents,

including each of the asserted patents, to the plaintiff in these cases: Entropic Communications, LLC, which is termed "Entropic" throughout this brief. Ex. K (Assignment 55898-230); Ex. L (Assignment 55899-291). Entropic was formed by patent monetization entity Fortress[4] just two days before receiving the patents from MaxLinear. Ex. M (Delaware registration); Ex. N (Texas registration).[5]

MaxLinear's CEO, Kishore Seendripu, signed the assignment from MaxLinear to Entropic. Ex. K at 23. MaxLinear's CFO, Steven Litchfield, signed the assignment from MaxLinear LLC to Entropic. Ex. L at 41. Mr. Litchfield also signed the VSA on behalf of MaxLinear and its affiliates in August 2020. Ex. A at 19.

## III.   APPLICABLE LAW

### A.   Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction

"The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars*, 11 F.3d at 1583. The other party "may move to dismiss a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)." *Engasser*, 519 F. Supp. 3d at 706; *see also Cedars*, 11 F.3d at 1583. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Engasser*, 519 F. Supp. 3d at 706. In a factual attack, the movant "denies or controverts the pleader's allegations of jurisdiction," thereby "challenging the factual basis for the court's subject matter jurisdiction." *Cedars*, 11 F.3d at 1583. Consequently, "in resolving a factual attack, the court need not presume the truthfulness of the plaintiff's allegations and 'may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'" *Engasser*, 519 F. Supp. 3d at 706 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *see also Cedars*, 11 F.3d at 1583–84. Once a party has presented a factual challenge to jurisdiction, the burden is

---

[4]  Entropic's formation documents list several Fortress employees and Fortress's address. Ex. O (LinkedIn profiles for Fortress employees); Ex. K at 1; Ex. N at 2; Ex. P at 3 (Fortress website). *See also Entropic Comm'ns, LLC v. Dish Network Corp. et al*, C.A. 2:22-cv-07775-JWH-JEM, Dkt. 232 (Motion to Compel Rule 7.1-1 Compliance).

[5] While Plaintiff shares the "Entropic" moniker with the company MaxLinear acquired in 2015, that is only because MaxLinear licensed the trademark to Plaintiff. Ex. U at 2.

placed on the party seeking to invoke the court's jurisdiction "to demonstrate **facts** sufficient to support its contention." *Cedars*, 11 F.3d at 1584 (emphasis added); *see also Engasser*, 519 F. Supp. 3d at 706. That is, "allegations alone are insufficient to meet the complainant's burden." *Cedars*, 11 F.3d at 1584. In fact, "the allegations in the complaint are not controlling," and "only uncontroverted factual allegations are accepted as true for purposes of the motion." *Id.* at 1583. Where the complainant cannot present evidence to support its jurisdictional allegations, the complaint must be dismissed. *Cedars*, 11 F.3d at 1584–85; *Engasser*, 519 F. Supp. 3d at 710–11.

A covenant not to sue divests the court of subject matter jurisdiction because there is no actual case or controversy. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010) ("[C]ovenants not to sue [] for infringement . . . remove any case or controversy . . . ."); *Shipping & Transit LLC v. Neptune Cigars, Inc.*, No. 2:16-03836-AG-SS, Dkt. No. 25, at 1–2 (C.D. Cal. Sept. 12, 2016) (dismissing claims with prejudice because covenant not to sue "eliminate[d] any case or controversy based on the patents-in-suit between the parties").

As discussed below, Entropic cannot meet its burden to set forth **facts** establishing jurisdiction in the face of Comcast's factual Rule 12(b)(1) motion. Indeed, Entropic's allegations regarding willful infringement fail to meet even the lower standard for plausibility.

### B.   Dismissal under Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint." *Mendoza v. Wells Fargo Bank, N.A.*, 2021 WL 4932732, at *2 (C.D. Cal. Aug. 9, 2021) (Holcomb, J.). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Id.* (quotation omitted). The court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). But the court is not required to accept as true legal conclusions couched as factual allegations, or conclusory statements, when

evaluating a complaint under 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) (citing *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020)).

### C. The plausibility standard for pleading willful infringement

The Federal Circuit has made clear that "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–105 (2016)). In order to survive a motion to dismiss, "a claim for willful infringement must allege facts from which it can be plausibly inferred that the party accused of infringement had ***knowledge of the asserted patent and knowledge that the party's alleged conduct constituted . . . infringement*** of the asserted patent." *RJ Tech., LLC v. Apple, Inc.*, 2023 WL 3432237, at *8 (C.D. Cal. Mar. 23, 2023) (emphasis added); *Sleep No. Corp. v. Sizewise Rentals, LLC*, 2018 WL 5263065, at *7 (C.D. Cal. June 26, 2018) ("Plaintiff must allege *not just knowledge of the patents, but pre-suit knowledge of* infringement . . . .") (emphasis added). Thus, the complaint must "contain allegations that the accused infringer had specific 'knowledge of the asserted patent'" and it "must also contain allegations that 'the accused infringer had a specific intent to infringe at the time of the challenged conduct.'" *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 2022 WL 16701926, at *3 (N.D. Cal. Nov. 3, 2022) (quoting *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1274 (Fed. Cir. 2022)). Put another way, "a claim for enhanced damages for willful infringement is not adequately stated when all that is alleged is knowledge of the patent and direct infringement." *MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021); *RJ Tech.*, 2023 WL 3432237, at *8 (allegations of "continued use of the accused products despite knowledge of the asserted patent" is "insufficient to state a claim"). Moreover, willfulness cannot be based on post-suit knowledge alone. *See Ravgen, Inc. v. Quest Diagnostics Inc.*, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022). That is because "[i]t seems beyond the pale to expect every

19

1  patent defendant to 'cease all allegedly infringing conduct once a complaint is filed' to

2  force them to avoid enhanced damages for willful infringement." *Id.*

3  **IV.   ARGUMENT**

4        Entropic's claims for patent infringement against Comcast must be dismissed

5  because each of the asserted patents is subject to a covenant not to sue in the VSA.

6  Entropic's reliance on a narrow exemption for willful infringement in the covenant

7  cannot satisfy Entropic's burden on establishing jurisdiction. That exemption is

8  inapplicable here because Entropic fails to present any facts, let alone a plausible

9  allegation, that Comcast had knowledge of each asserted patent, and knowledge of

10  infringing each of those asserted patents, prior to the effective date of the VSA (or at

11  any time prior to these lawsuits).

12        **A.     The covenant not to sue applies to all the asserted patents**

13        The covenant not to sue applies to all twenty of the asserted patents because they

14  were all owned by either MaxLinear or MaxLinear LLC as of August 1, 2020–the

15  effective date of the VSA. As discussed below, first, there can be no dispute that the

16  asserted patents of MaxLinear, the VSA's signatory, are encompassed by the covenant.

17  Ex. A at 1, 11 § 7.3.[6] Second, there can be no dispute that the asserted patents of

18  MaxLinear LLC are also encompassed by the covenant because MaxLinear explicitly

19  granted the covenant not to sue "on behalf of itself *and all Affiliates*," each termed a

20  "Vendor Covenanting Party," and MaxLinear LLC was, and is, an affiliate (wholly-

21  owned subsidiary) of MaxLinear. *Id.* § 7.3 (emphasis added).

22        While the VSA does not define "Affiliate," New York law–which governs the

23  VSA's interpretation (Ex. A at 15–16)[7]–recognizes the definition of "affiliate" found in

24  _____

25  [6] There is no dispute that all twenty of the asserted patents were owned by either MaxLinear or MaxLinear LLC as of August 1, 2020 until March 31, 2021. 1048, Dkt.

26  69-1, ¶ 37.

27  [7] Under New York law, "[i]t is well established that the interpretation of a contract is a matter of law for the court." *Gassman v. Rothlein*, 713 N.Y.S.2d 208, 210 (N.Y. App.

28  Div. 2d Dep't 2000) (citing *805 Third Ave. Co. v. M.W. Realty Assoc.,* 58 N.Y.2d 447, 461 (1983)).

Black's Law Dictionary: a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012); *see Harrop & Co. v. Apollo Inv. Fund VII, L.P.*, 2015 WL 3989030, at *4 (N.Y. Sup. Ct. June 25, 2015) (noting when a term is not defined in an agreement, under New York law, the plain and ordinary meaning governs, and "New York courts frequently consult dictionary definitions to determine a word's plain meaning") (citing *Ragins v. Hosps. Ins. Co., Inc.*, 22 N.Y.3d 1019, 1022 (N.Y. 2013)). Given that MaxLinear LLC was a wholly-owned subsidiary of MaxLinear on August 1, 2020, *supra* § II.B, MaxLinear LLC is an "affiliate" of MaxLinear under the VSA using the term's plain meaning. Accordingly, the covenant not to sue granted by MaxLinear "on behalf of itself and all Affiliates" applies to (i) all twelve patents asserted in the 1048 case (Ex. C, Patents 1-12), and (ii) two of the patents asserted in the 1050 case (U.S. 8,223,775 and 8,284,690) (Ex. C, Patents 13-14), all of which were held by MaxLinear LLC on August 1, 2020.

The remaining six patents in the 1050 case were all directly owned by MaxLinear, and similarly subject to the covenant not to sue. *See supra* II.B. Four of those patents (U.S. 8,792,008; 9,825,826; 10,135,682; and 9,210,362) (Ex. C, Patents 15-18) issued before August 1, 2020, and were held by MaxLinear at the time it granted Comcast the covenant not to sue. The final two asserted patents (U.S. 11,381,866; and 11,399,206) (Ex. C, Patents 19-20) are continuations of patents[8] owned by MaxLinear at the time it granted Comcast the covenant not to sue, and are thus presumed to be encompassed by the covenant not to sue. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011) (a license to a patent is presumed to apply to continuations of that patent); *Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020) (extending license to continuations based on rule of *General Protecht* and

---

[8] Respectively, U.S. Patent No. 8,526,898 (from U.S. Patent App. No. 12/762,900); U.S. Patent No. 9,100,622 (from U.S. Patent App. No. 13/962,871); and U.S. Patent No. 9,210,362 (from U.S. Patent Appl. No. 14/614,543) which is asserted in the 1050 case.

*TransCore*, and explaining that "[t]he expectation is properly placed on the patent owner [] to specifically carve out continuation patents that it intended to exclude because [the patent owner] has the most information about its total patent portfolio"); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275–76 (Fed. Cir. 2009) (no substantive difference between a license and a covenant not to sue).[9]

In short, each of the 20 asserted patents is subject to the covenant not to sue in the VSA, and Comcast is immune from their assertion by Entropic.[10]

### B.   The covenant protects each of the Comcast Defendants

MaxLinear granted a covenant not to sue to any "Comcast Protected Party," Ex. A at § 7.3, which encompasses all three Comcast Defendants in these cases. The VSA defines "Comcast Protected Party" as Comcast Cable Communications Management, LLC *and its Affiliates*. *Id.* at 1, 11 § 7.3. Under the plain meaning of the term "affiliate" discussed above (*supra* IV.A), there can be no dispute (nor does Entropic raise one) that Comcast Corporation and Comcast Cable Communications, LLC are affiliates of Comcast Cable Communications Management, LLC. Comcast Corporation is a parent of Comcast Cable Communications, LLC, which is a further parent of Comcast Cable Communications Management, LLC. *See* Ex. Q (organization chart for Comcast Defendants); 1048[11], Dkt. 69-1 at ¶¶ 11, 14; 1050 Dkt. 65-1 at ¶¶ 7, 10. These relationships are not new and were the same in 2020 when the covenant not to sue was granted. Ex. R (Form 10-K for Comcast Corp.) at Table of Contents, 342 Exhibit 21. In

---

[9] The reason that a covenant extends to continuations is obvious. Without such a rule, the covenanting party could avoid their obligation by merely pursuing a continuation application claiming the same subject matter. *See generally Cheetah Omni*, 949 F.3d at 696 and *TransCore*, 563 F.3d at 1279.

[10]

[11] "1048" and "1050" refer to C.A. 23-cv-1048 and 23-cv-1050 respectively.

---

COMCAST'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE ALTERNATIVE
NO. 2:23-CV-1048-JWH-KES / NO. 2:23-CV-1050-JWH-KES

1  short, the covenant not to sue immunizes all three Comcast Defendants.

2  **C.  The covenant binds Entropic**

3  There is no question that if Entropic took title to the asserted patents, it did so

4  subject to the covenant not to sue Comcast granted by MaxLinear in the VSA.[12] That

5  is, when MaxLinear and MaxLinear LLC transferred their patents to Entropic, the then-

6  existing covenant not to sue traveled with the patents. "[T]he owner of a patent cannot

7  transfer an interest greater than that which it possesses, [so] an assignee takes a patent

8  subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*,

9  522 F.3d 1368, 1372 (Fed. Cir. 2008); *see also TransCore*, 563 F.3d at 1275 ("[O]ur

10  analysis begins with the premise that one cannot convey what one does not own.").

11  Accordingly, legal encumbrances which involve "the right to use" a patent, including

12  covenants not to sue, "run with the patent." *Datatreasury*, 522 F.3d at 1372; *Innovus*

13  *Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *8 (N.D. Cal. July 2, 2013).[13]

14  For example, in *Innovus Prime*, the court held that a fourth-generation assignee of the

15  patent was bound by a covenant not to sue that the original patentee granted to the

16  accused infringer. *Innovus Prime*, 2013 WL 3354390, *4–5.

17  Whether or not Entropic had knowledge of the covenant not to sue does not

18  change the analysis. *Id.* at *7 ("While this court understands the unfairness that may

19  arise from an assignee not being on notice of a prior covenant not to sue or license, it is

20  well settled that assignees take a patent subject to any prior licenses."). The covenant

21  not to sue binds Entropic, even if MaxLinear and MaxLinear LLC made representations

22  and warranties to the contrary. 1048, Dkt. 69-1, ¶¶ 37–41. MaxLinear's recent attempt

23  to unilaterally terminate the VSA (Ex. W; 1048, Dkt. 69-1, ¶¶ 63–64), although

24  improper and ineffective under the VSA's terms, is an implicit admission that the VSA

---

25  [12] Comcast does not admit that Entropic owns all right, title and interest in and to the asserted patents and reserves all of its rights to contest the issue.

26

27  [13] Courts widely apply this principle. *See, e.g.*, *Bioverativ Inc. v. CSL Behring LLC*, 2021 WL 3471688, at *3 (D. Del. 2021); *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 498 F. Supp. 3d 1080, 1091 (D. Minn.), *aff'd*, 37 F.4th 1357, 1365 (8th Cir. 2022); *Energy Innovation Co., LLC v. NCR Corp.*, 2018 WL 7050840, at *4 (N.D. Ga. 2018).

28

and covenant not to sue were in effect when Entropic brought these cases.[14] The attempted termination, like the VSA and the assignment from MaxLinear LLC to Entropic, was signed by MaxLinear's CFO, Mr. Litchfield. Ex. W.

### D. The covenant negates subject matter jurisdiction

A patent holder cannot sue an alleged infringer who is shielded by a covenant not to sue on those patents. *See, e.g., Blue Phoenix Media Inc. v. Essociate Inc.*, 2012 WL 12888834, at *3–4 (C.D. Cal. June 15, 2012) (dismissing a patent infringement counterclaim subject to a covenant not to sue); *King Pharms.*, 616 F.3d at 1282 (Fed. Cir. 2010) ("[U]nrestricted covenants not to sue [] for infringement . . . remove any case or controversy . . . ."); *Shipping & Transit LLC*, No. 2:16-03836-AG-SS, Dkt. No. 25, at 1–2 (C.D. Cal. Sept. 12, 2016) (dismissing patent infringement case where plaintiff granted a covenant not to sue); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1008 (9th Cir. 2012) (affirming dismissal based on a covenant not to sue).



Accordingly, the covenant not to sue in the VSA ***forever*** precludes Entropic (and any

---

[14] Further, the VSA is a valid and enforceable contract. Entropic's FACs incorrectly allege that the VSA does not include "any identification of consideration" (1048, Dkt. 69-1, ¶ 62), but the VSA unambiguously states that the parties entered the agreement "in consideration of the mutual covenants and promises contained herein." Ex. A at 1. Further, SOW #1 to the VSA states that "Vendor agrees that Services during the Statement of Work Term are for good and valuable consideration, the sufficiency of which is hereby acknowledged." Ex. A, SOW #1 at 4. There is no question that this constitutes consideration under New York law. *See, e.g., Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 436–37 (N.Y. 2013).

successors-in-interest) from bringing claims for infringement of the asserted patents based on infringement before July 31, 2026. In any event, these allegations are a distraction from the question of whether Entropic can establish jurisdiction for the current actions. There is no question that Entropic's lawsuits were brought "during the Term" of the VSA and are therefore barred by the covenant not to sue.

**E.   Entropic cannot satisfy the narrow willful infringement exemption's specific requirements**

The exemption to the covenant not to sue applies only to willful infringement that occurred before the effective date of the VSA—August 1, 2020—and only on a patent-by-patent basis. Entropic's allegations of willfulness are insufficient to invoke this narrow exemption for any of the asserted patents.

**1.   The exemption only applies to pre-August 1, 2020 willfulness**

The language of the VSA states that the covenant applies "to the extent that Comcast [or its affiliates] ***have not*** willfully infringed a [MaxLinear] patent." Ex. A at § 7.3 (emphasis added). The phrase "have not willfully infringed" uses the present perfect tense, and thus refers to infringement that was willful at the time of or before the effective date of the VSA. *See Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) ("The present perfect tense 'refers to (1) a time in the indefinite past . . . , or (2) a past action that comes up to and touches the present.'") (quoting Chicago Manual of Style ¶ 5.119 (15th ed. 2003)). It does not refer to hypothetical willful infringement that might occur in the future. All of Entropic's willfulness allegations based on Comcast's purported knowledge of the asserted patents after August 1, 2020 are therefore irrelevant.[15]

In fact, common sense requires this interpretation.  If the "have not willfully infringed" clause encompassed potential future willful infringement, then MaxLinear, or its successors-in-interest, could nullify the covenant at will by notifying Comcast of

---

[15] The following allegations all post-date the effective date of the VSA, and therefore cannot invoke the willfulness exception: 1048, Dkt. 69-1, ¶¶ 69–79, 97, 109, and 110.

1   purported willful infringement after executing the VSA. But under New York Law,

2   provisions of a contract cannot be interpreted in a way that allows a party to simply

3   manufacture a scenario to avoid its obligations. *See Aivaliotis v. Cont'l Broker-Dealer*

4   *Corp.*, 2005 WL 1552796, at *2 (N.Y. Sup. Ct. June 24, 2005) (emphasizing that

5   contract should be interpreted to give each clause meaning and rejecting interpretation

6   that allows a party to easily avoid its obligations); *W.W.W. Assocs., Inc. v. Giancontieri*,

7   566 N.E.2d 639, 642, 643 (N.Y. 1990) (where parties have "reduced their negotiations

8   to a clear, complete writing," "ignoring the plain language of the contract . . . effectively

9   rewrites the bargain that was struck").

10   ### 2.    The exemption applies on a patent-by-patent basis

11   Entropic is also incorrect that willful infringement of even one MaxLinear patent

12   nullifies the covenant not to sue as to ***all*** MaxLinear patents. In its FACs, Entropic

13   alleges ███████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████

15   But the plain meaning of the exemption is that the covenant is nullified only as to—*i.e.,*

16   "to the extent"—a ***specific*** patent is willfully infringed before the date of the VSA.

17   *Harris Trust & Sav. v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1143 (2d Cir.

18   1992) (noting the plain meaning of "***to the extent***," as used to define conditions to

19   trigger an exception to a benefit, means that when the conditions are met, the exception

20   applies "with respect to one portion of the benefits," not the entirety) (emphasis added);

21   *Kohl's Dep't Stores, Inc. v. Escalate, Inc.*, 2014 WL 1330852, at *1 (E.D. Wis. Mar.

22   28, 2014) (applying an allegation-by-allegation analysis to determine whether an

23   exception to the vendor's duty to indemnify for patent infringement applied, where the

24   exception provided that the vendor would not indemnify "for any claims ***to the extent***

25   such claim [was] based on" the customer's own intellectual property or customer's

26   incorporation of infringing software) (emphasis added). Entropic's reading not only

27   runs afoul of the plain meaning of the exemption, but also would lead to nonsensical

28   results. For example, if Comcast was willfully infringing a single patent, but did not

26

know that patent was MaxLinear's, under Entropic's reading, Comcast would unwittingly forfeit the covenant's protection for the entirety of MaxLinear's portfolio.

In addition, the exemption states that "to the extent" Comcast and Comcast's Affiliates "have not willfully infringed" MaxLinear's patents, copyrights, or trademarks, MaxLinear covenants not to sue Comcast for patent, copyright, or trademark infringement "as the case may be."

> During the Term, Vendor, on behalf of itself and all Affiliates, (each, a "Vendor Covenanting Party"), *to the extent* Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") *have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, **as the case may be***, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.

Ex. A § 7.3. (emphasis added). The language "as the case may be" refers to separable events—willful infringement of a patent, a copyright, or a trademark, and similarly, immunity from suit on that specific patent, copyright, or trademark absent any such willful infringement. *Application of Kennelly*, 95 N.Y.S.2d 240, 242–43 (N.Y. Sup. Ct. 1950) (explaining that "as the case may be" refers to separable events, and if read otherwise, the phrase is meaningless).

Taking Entropic's position on willfulness and Entropic's reading of the covenant not to sue language together underscores the point. Under Entropic's view, Comcast willfully infringed based on Entropic's supposed reputation for innovation and history of litigating against third parties. *See e.g.*, 1048, Dkt. 69-1, ¶¶ 91, 93.  But if the mere existence of public information could make Comcast a willful infringer not immunized by the covenant not to sue, then this would imply that the covenant not to sue was a nullity at the outset. Similarly, under Entropic's view, Comcast willfully infringed

based on its knowledge, "upon information and belief," of patent applications that later resulted in one or more of the asserted patents. 1048, Dkt. 69-1, ¶¶ 65–68, 80-82. But there is no dispute that MaxLinear also knew of Comcast's investments in MaxLinear LLC / Legacy Entropic, for example by way of its "longstanding commercial relationship" with Comcast and MaxLinear's acquisition of Legacy Entropic (1048, Dkt. 69-1 ¶¶ 99–101), before entering the VSA. A reading of the covenant in which MaxLinear and its affiliate MaxLinear LLC / Legacy Entropic already knew that Comcast was willfully infringing the asserted patents before entering the VSA would render the covenant not to sue illusory, which contradicts basic principles of contract interpretation under New York. *Lister v. R & R Menswear, Ltd.*, 2013 N.Y. Slip Op. 30563, at *7 (N.Y. Sup. Ct. 2013).

Try as it might, Entropic cannot manufacture a strained alternative reading of the covenant to try and save its case. *WiAV Sols. Inc. v. HTC Corp.,* 2016 N.Y. Slip Op. 30915, at *3–4 (N.Y. Sup. Ct. 2016) (denying plaintiff's alternative readings of covenant not to sue language that contradict plain meaning). Any exemption to the covenant not to sue must be assessed on a patent-by-patent basis. And as discussed below, Entropic's FACs do not set forth facts sufficient to establish that any of the asserted patents fall outside the covenant not to sue.

### F. Entropic provides no facts to invoke the willfulness exemption in the covenant. In fact, its willfulness allegations are not even plausible.[16]

Entropic attempts to invoke the willfulness exemption to the covenant not to sue to argue for jurisdiction, but provides no "***facts*** sufficient to support its contention," as required to satisfy its burden. *Cedars*, 11 F.3d at 1584. Having reviewed Comcast's previous motions against its original complaints, Entropic's FACs offer a series of factually unsupported allegations—most made "upon information and belief." These

---

[16] If the Court finds some alternate basis for subject matter jurisdiction outside the willfulness exemption, Comcast requests the Court dismiss Entropic's willfulness allegations pursuant to Rule 12(b)(6) as implausible.

28

COMCAST'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE ALTERNATIVE
NO. 2:23-CV-1048-JWH-KES / NO. 2:23-CV-1050-JWH-KES

allegations fall into six buckets: (i) pre-suit correspondence generally advertising Entropic's portfolio; (ii) lawsuits filed by Entropic against other companies; (iii) purported general awareness of Entropic's contribution to MoCA and patent portfolio; (iv) purported diligence before Comcast's investment in Entropic in 2003 and 2006; (v) identification of MaxLinear patents as prior art during Comcast's patent prosecution activities before the U.S. Patent Office; and (vi) conclusory allegations of willful blindness. In resolving Comcast's 12(b)(1) Motion, which poses a "factual attack, the court need not presume the truthfulness of the plaintiff's allegations." *Engasser*, 519 F. Supp. 3d at 706. Entropic's willfulness allegations, which are overwhelmingly speculative, are woefully insufficient. But even if Comcast's Motion was a "facial" attack on willfulness, Entropic's allegations fail to satisfy the plausibility standard, and are insufficient on their face to invoke jurisdiction. *Cedars*, 11 F.3d at 1583.

### 1. Entropic's pre-suit correspondence cannot support willfulness (1048[17], Dkt. 69-1 ¶¶ 31, 109)

All of Entropic's pre-suit correspondence came after entry into the VSA on August 1, 2020, and cannot invoke the willfulness exemption. Entropic's pre-suit correspondence also cannot establish the knowledge necessary to support an allegation of willfulness, because it merely listed 250-plus patent numbers, noting that "among" those 250 patents some were essential to the MoCA standard. Ex. S at 1. The letter did not identify any specific patent that was infringed or provide any explanation of how Comcast purportedly infringed. Ex. S[18]; Ex. U. Comcast responded by asking Entropic to identify specific patents and requesting "claim charts setting forth why any of the

---

[17] Entropic's FAC in the 1050 case includes substantially similar allegations. Citations in this section are provided to paragraphs in Entropic's FAC in the 1048 case, and Ex. X includes cross-references to corresponding paragraphs in the 1050 FAC.

[18] Entropic's FACs ██████████████████████████████████████████ ████████████████████████████████████████████ But as explained in a Notice of Errata (1048, Dkt. 71), these marks were made by outside counsel after the complaints in these matters, and not by Comcast. Outside counsel's marked up copy of this letter was inadvertently filed.

listed patents are relevant to Comcast." Ex. T. Entropic sent additional correspondence on December 23, 2023, again failing to identify any specific patents as infringed, but stated that it was "committed to licensing its patents that cover MoCA technology on . . . RAND terms." Ex. U at 2. Correspondence offering an entire portfolio for license, without identifying any specific patent that is purportedly infringed, or explaining how that patent is purportedly infringed, as Entropic sent here, is insufficient to support an allegation of willfulness. *Finjan, Inc. v. Cisco Sys., Inc.*, 2018 WL 7131650, at *3 (N.D. Cal. Feb. 6, 2018) (holding that identification of a portfolio is "not sufficient to constitute notice of any specific patent"); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, 2016 WL 1019667, at *4 (D. Del. Mar. 15, 2016);  *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, 2016 WL 1381765 (D. Del. Apr. 6, 2016) (adopting report and recommendation).

### 2.  Lawsuits *against others* cannot support willfulness by Comcast (1048, Dkt. 69-1 ¶¶ 69–71, 76–79, 93–98)

Entropic's speculative allegations that Comcast monitored lawsuits that Entropic filed against ViXS, Dish, DirecTV, and Charter, or supposedly had discussions with RPX or its suppliers to request indemnification relating to those lawsuits, also cannot support a claim of willfulness. As a preliminary matter, these types of purely speculative "information and belief" allegations are insufficient as a matter of law because they offer no factual basis to support Comcast's knowledge of the lawsuits or the patents asserted therein, or any investigation of those patents. *See Cedars*, 11 F.3d at 1585; *Dali Wireless*, 2022 WL 16701926, at *3–7. Further, the Dish, DirecTV, and Charter lawsuits were filed in 2022 (1048, Dkt. 69-1 ¶¶ 61–71, 75), **after** Comcast was granted the Covenant Not to Sue in August 2020, and therefore cannot invoke the willfulness exemption to the covenant not to sue.

It is also well recognized that allegations of purported general knowledge of past lawsuits against third-parties are insufficient to support claims of willful infringement. *See Longitude Licensing v. Apple Inc.*, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13,

30

2015) (finding litigation of the asserted patents but against other parties was "unrelated litigation" and did not support a willful infringement claim); *MONEC Holding AG v. Motorola Mobility, Inc.*, 2012 WL 4340653, at *5 (D. Del. Sept. 20, 2012) ("This court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent."); *Robocast, Inc. v. YouTube, LLC*, 2022 WL 16922035, at *3 (D. Del. Nov. 14, 2017) ("The existence of 'prominent national litigations' . . . between Plaintiff and third-party competitors over [a] patent . . . does not plausibly grant actual knowledge of that patent to an unrelated party.").

### 3. Reputation for innovation and unsupported allegations of patent monitoring cannot support willfulness (1048, Dkt. 69-1 ¶¶ 3–4, 32–35, 72–75, 84–92, 99–101, 108, 139–145)

While Entropic alleges willfulness based on Comcast's participation in MoCA, its general awareness that Entropic's predecessor entities contributed to MoCA technology or standards, or its general awareness of the purported public success of MoCA technology (*e.g.*, through Verizon Wireless's deployment of Fios), such purported reputation of innovation has repeatedly been found insufficient to support an allegation of willfulness. *See Finjan, Inc. v. Cisco Sys., Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing willful infringement claim based on supposed knowledge of a patent portfolio, because "[k]nowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent"); *Longitude Licensing v. Apple Inc.*, 2015 WL 1143071, at *2 (N.D. Cal. Mar. 13, 2015) (granting motion to dismiss where complaint alleged that defendant "had knowledge of the Patents-in-Suit as part of [a] patent portfolio"). Entropic also alleges, on information and belief, that Comcast, as a member of MoCA, "monitored and reviewed the publication and issuance of patents that would be standard-essential" (1048, Dkt. 69-1, ¶¶ 89–90), without any factual basis for alleging that Comcast engaged in such activity. These allegations fail

to meet Entropic's burden to provide facts, and fail to even qualify as plausible willfulness allegations. *Cedars*, 11 F.3d at 1585; *Dali Wireless*, 2022 WL 16701926, *3–7 (finding allegations of alleged infringer discovering asserted patents based on an alleged "practice of monitoring" the patent owner's portfolio to be "conclusory statements" that were "unsupported by specific allegations").[19]

Notably, Entropic ***does not plead*** that it (or any predecessor-in-interest of the asserted patents) notified Comcast, or any other MoCA member, of its purportedly standard-essential patents. In the same vein, Entropic speculatively alleges that Comcast monitored the prosecution of two more recent MaxLinear patents, the '866 and '206 patents, but provides no factual basis for any such monitoring. *See* 1048, Dkt. 69-1 ¶¶ 72–74. For example, Entropic does not allege when this alleged monitoring occurred, and whether it related to patent applications or issued patents. Of course, if that speculatively alleged monitoring occurred after the effective date of the VSA, August 1, 2020, it cannot invoke the willfulness exemption to the covenant for that reason too.[20]

Entropic's reliance on a "longstanding commercial relationship" (1048, Dkt. 69-1 ¶¶ 99–101) between Comcast and MaxLinear for its claim of willful infringement only confirms that Entropic has no basis to allege willfulness, and no facts to meet its burden to show that the willfulness exemption to the covenant not to sue is invoked for any patent. Throughout that "longstanding commercial relationship," MaxLinear has never told Comcast that they are infringing, or need to take a license to, any patent, let alone the asserted patents in these actions. Entropic cannot rely on that MaxLinear-

---

[19] In the -01050 case, Entropic's FAC alleges that "[t]he Patents-in-Suit are the result of years of research and development in satellite and cable technology." 1050, Dkt. 65-1 ¶ 60. This vague allegation, made "upon information and belief," cannot support willfulness for the same reasons.

[20] Entropic's FACs also allege "upon information and belief" that Comcast had knowledge of the '008 and '826 patents because Comcast employed a named inventor (Patrick Tierney) on those patents. 1048, Dkt. 69-1 ¶ 108. Entropic does not allege any basis for ***Comcast*** to have knowledge of the patents. The mere fact that Mr. Tierney was employed by Comcast does not reasonably permit an inference that Comcast had knowledge of these patents. Plus, knowledge of a patent alone is insufficient for a claim of willful infringement—knowledge of infringement is also required, which Entropic does not plead. *See RJ Tech.*, 2023 WL 3432237, at *2.

Comcast relationship to allege willfulness, while failing to present any facts to support that MaxLinear, who is Entropic's partner in these litigations, ever provided Comcast knowledge of any patent or knowledge of infringement of that patent. Ironically, the longstanding MaxLinear-Comcast relationship is the entire reason that the VSA and covenant not to sue exist. Rather than tell Comcast that it was infringing any patents, MaxLinear—through the covenant not to sue—told Comcast that it was free from allegations of infringement with respect to the patents of MaxLinear and its affiliates.

All of Entropic's allegations of Comcast's pre-suit knowledge of patents due to its knowledge of MoCA are also based on information and belief, and such allegations fail to meet Entropic's factual burden, and are insufficient as a matter of law.[21] *See, e.g.*, *Myoungchul Shin v. Uni-Caps, LLC*, 2014 WL 12853912, at *3 (C.D. Cal. Dec. 17, 2014) (citing *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding insufficient allegations based "upon information and belief" where no further facts were alleged)). In addition to being pure conjecture, none of these allegations reflect Comcast having knowledge of any specific patent or infringement of any specific patent, and thus fail to plausibly allege willfulness. *Finjan,* 2017 WL 2462423, at *5.

### 4. Purported 2003 and 2006 diligence cannot support willfulness (1048, Dkt. 69-1 ¶¶ 65–68, 80–83)

Similarly, Entropic's speculative allegations that Comcast reviewed seven of the asserted patents as "part of its due diligence *prior* to investing in Entropic" in "2003 [and] 2006" do not support its claims of willfulness either. 1048, Dkt. 69-1, ¶¶ 65–68, 80–82 (emphasis added). Entropic misleadingly labels the asserted patents as "Pre-Investment Patents," relying on the filing date of the corresponding ***applications*** (or

---

[21]  Along these lines, Entropic has speculatively alleged that Comcast sought indemnification from its suppliers. 1048, Dkt. 69-1 ¶ 75. The allegation indicates that the indemnification request supposedly came in response to the Charter lawsuit, which post-dates the VSA and therefore cannot trigger the willfulness exemption to the covenant. Of course, the allegations are "upon information and belief" without any factual support, and thus cannot support a claim of willfulness for that reason too. *See Myoungchul Shin* and *Vivendi* cases cited above.

underlying applications), instead of the date on which they issued as patents. 1048, Dkt. 69-1 ¶ 80. That is because each of the asserted patents issued *after* the alleged investments in 2003 and 2006. But knowledge of a patent application, as opposed to an issued patent, cannot support Entropic's willful infringement claims as a matter of law. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *Orthopaedic Hosp. v. Encore Med. L.P.*, 2022 WL 254956, at *26 (S.D. Cal. Jan. 27, 2022) ("knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim"); *Ipventure Inc. v. Cellco P'ship*, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011) ("Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.").[22] Further, Entropic's allegations that "Comcast knew, based on its own analysis and also potentially statements from Entropic itself, that these patents were standard-essential to MoCA, such that practicing the MoCA standard would infringe these patents" and "knew of the Pre-Investment Patents and substantively reviewed such patents" (1048, Dkt. 69-1 ¶¶ 80-81) are wholly conclusory and are not entitled to the presumption of truth in response to a Rule 12(b)(1) factual challenge. *Cedars*, 11 F.3d at 1585 ("[C]onclusory statements do not provide the necessary factual basis to support jurisdiction."). Nor can they satisfy the plausibility standard. *Simio,* 983 F.3d at 1365 (disregarding conclusory statements even under the plausibility standard).

### 5. Unasserted patents cited during prosecution of Comcast patent applications cannot support willfulness (1048, Dkt. 69-1 ¶ 110)

Entropic also alleges that four ***unasserted*** MaxLinear patents (U.S. Patent Nos. (i) 10,075,333 and 10,285,116, and (ii) 9,178,765 and 9,419,858) were cited as prior art

---

[22] To the extent that Entropic alleges that Comcast had knowledge of the asserted patents because of knowledge of patent family members, that too fails. *MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021)) ("Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent.").

by the U.S. Patent Office during prosecution of Comcast patents and applications ((i) Application 16/777,622 and (ii) U.S. 10,582,515). 1048, Dkt. 69-1 ¶ 110[23]. Comcast has well over 2,000 patents, and citation to these four MaxLinear patents during prosecution does not create a plausible case for willfulness. *See Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *4 (N.D. Cal. Aug. 22, 2016) (aggregating cases explaining that citation during prosecution does not provide sufficient knowledge to support willfulness); *Dali Wireless*, 2022 WL 16701926, at *3–7 (dismissing willfulness allegations based on citation to asserted patents in several of accused infringer's 75 patents). Entropic also makes a conclusory allegation that Comcast infringes these four unasserted MaxLinear patents. But this type of conclusory allegation, devoid of any explanation of how each limitation of at least one claim is satisfied, cannot sustain a claim of infringement, let alone willful infringement. *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) ("[I]f a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied, it is hard to see how infringement would be 'probable.'"). Of course, these MaxLinear patents are not asserted in this case, so they are irrelevant to the willfulness exemption, which must be assessed patent-by-patent. *See supra* E.2.

### 6.   Conclusory allegations of willful blindness cannot support willfulness (1048, Dkt. 69-1 ¶¶ 99–107)

Lacking factual basis to support any of its allegations that Comcast had pre-suit knowledge of any specific patent or infringement thereof, Entropic resorts to conclusory allegations claiming willful blindness: that Comcast's failure to investigate Entropic's patents renders Comcast willfully blind. 1048, Dkt. 69-1 ¶¶ 99-107. But these allegations "are based on the same set of facts"—"Comcast already knew it was willfully infringing patents owned by Entropic" (*id*. ¶ 101)—that "are insufficient to

---

[23] Entropic also alleges that Comcast "substantively reviewed" these patents in October 2020 and June 2022. These allegations are conclusory, and post-date the VSA, and are thus irrelevant to the willfulness exemption.

show that [Comcast] had actual knowledge." *Teradyne v. Astronics Test Sys., Inc.*, 2020 WL 8173024, at *4 (C.D. Cal. Nov. 6, 2020) (dismissing willful blindness allegations at pleading stage). Entropic's FACs "offer[] no analysis for why [Comcast] subjectively believed that there was a high probability it infringed or that Comcast took deliberate actions to avoid learning that it was infringing."[24] *Id*. Because they lack any factual basis, Entropic's willful blindness allegations also fail.

### G. The covenant is clear and jurisdictional discovery is unwarranted

The language of the covenant not to sue is clear and unambiguous, such that Entropic's FACs should be dismissed for lack of subject matter jurisdiction. *Shahtout v. Cal. Psychcare, Inc.*, 562 F. Supp. 3d 913, 920 (C.D. Cal. 2022) (Holcomb, J.). Because the language is clear, jurisdictional discovery relating to the VSA, such as the intent of the parties, is not appropriate. *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1004 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract.").

While Entropic has intimated it may seek discovery, the only purpose would be to manufacture ambiguities where none exist, which would "unnecessarily denigrate[] the contract." *Id*. ("[E]xtrinsic and parol evidence is not admissible to create an ambiguity in [the] written agreement."). Under New York law, courts are especially reluctant to rely on extrinsic evidence where the terms of an agreement were "negotiated between sophisticated, counseled business people negotiating at arm's length," as they were here. *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004). Further, MaxLinear is Entropic's business partner in these lawsuits; any

---

[24] Entropic also alleges ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ "Legal conclusions," such as those offered by Entropic here, "need not be taken as true merely because they are cast in the form of factual allegations." *Prime Healthcare Services, Inc. v. Harris*, 216 F. Supp. 3d 1096, at 1111 (S.D. Cal. 2016). In fact, the "conclusory nature of [Entropic's] allegations … disentitles them to the presumption of truth." *Id*. at 1110 (citing *Iqbal*, 556 U.S. 662, 681 (2009)).

1   purportedly relevant discovery was available to Entropic before it filed these lawsuits
2   and available to it now. *Dichter-Mad Family Partners, LLP v. U.S.*, 707 F. Supp. 2d
3   1016, 1054 (C.D. Cal. 2010) (denying jurisdictional discovery where plaintiffs had not
4   shown relevant information was unavailable). Thus, no discovery relating to the VSA
5   or jurisdiction is necessary to resolve this Motion.

6   **V.     CONCLUSION**

7          MaxLinear granted Comcast a broad, unambiguous covenant not to sue across
8   MaxLinear's patent portfolio. Black letter law holds that this covenant travels with the
9   patents, and that neither MaxLinear, nor Entropic, can escape that obligation. Although
10  Entropic grasps at the willfulness exemption to the covenant, its willfulness allegations
11  lack factual basis, and are not even plausible under the relevant case law. The upshot is
12  that Entropic cannot meet its burden to establish jurisdiction, and the Court should grant
13  Comcast's Rule 12(b)(1) Motion and dismiss Entropic's FACs. And even if the Court
14  believes jurisdiction may exist on an alternate theory, the Court should dismiss
15  Entropic's willfulness allegations as implausible under Rule 12(b)(6).

16         Entropic has had multiple chances to establish jurisdiction, and has failed, so
17  dismissal with prejudice is appropriate. *Shipping & Transit*, No. 2:16-03836-AG-SS,
18  Dkt. No. 25, at 1–2 (dismissing with prejudice because covenant not to sue
19  "eliminate[d] any case or controversy based on the patents-in-suit between the parties").

20
21
22  Dated:  June 20, 2023                     Respectfully submitted,

23                                            WINSTON & STRAWN LLP

24
25                                            By:  */s/ K. Padmanabhan*
                                                 K. Padmanabhan (SBN 254220)
26                                               kpadmanabhan@winston.com
                                                 **Winston & Strawn LLP**
27                                               200 Park Ave., Fl. 40
                                                 New York City, NY 10166
28                                               Phone: 212-294-6700

1

Fax: 212-294-4700

2

Brian Ferguson (*pro hac vice*)
beferguson@winston.com

3

**Winston & Strawn LLP**
1901 L Street NW

4

Washington, D.C. 20036
Phone: 202-282-5000

5

Fax: 202-282-5100

6

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com

7

**Winston & Strawn LLP**
35 West Wacker, Dr.

8

Chicago, IL 60601
Phone: 312-558-5600

9

Fax: 312-558-5700

10

*Attorneys for Comcast Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMCAST'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE ALTERNATIVE
NO. 2:23-CV-1048-JWH-KES / NO. 2:23-CV-1050-JWH-KES