Krishnan Padmanabhan (SBN: 254220)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Attorneys for Comcast Defendants

*(Additional counsel information omitted)*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | No. 2:23-cv-1048-JWH-KES<br>No. 2:23-cv-1050-JWH-KES |
| Plaintiff, | Assigned to Hon. John W. Holcomb |
| v. | **COMCAST DEFENDANTS'** |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; AND COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | **OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO CONDUCT JURISDICTIONAL DISCOVERY AND CONTINUE HEARING DATE (AND RELATED BRIEFING SCHEDULE) ON COMCAST'S MOTION TO DISMISS** |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................5

II.   LEGAL STANDARD ...........................................................8

    A.   Ex parte applications are reserved for extraordinary relief........................8

    B.   Entropic's burden for demonstrating that jurisdictional discovery is necessary ........................................................................9

III.   ARGUMENT.....................................................................9

    A.   Entropic's request is not an emergency and Entropic is responsible for the timing of this request. ................................................9

    B.   Entropic provides no basis for jurisdictional discovery...........................13

    C.   Entropic's requests are undefined. And fishing expeditions for jurisdictional discovery are not permitted..............................15

    D.   There is no basis to stay the hearing on Comcast's motion to dismiss until a New York court rules on a separate issue........................17

IV.   CONCLUSION ................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CopyTele, Inc. v. E Ink Holdings, Inc.*,
 962 F. Supp. 2d 1130 (N.D. Cal. 2013)....................................................................... 19

*Ellington v. EMI Music, Inc.*,
 21 N.E.3d 1000 (N.Y. 2014) ...................................................................................... 14

*Engasser v. Tetra Tech, Inc.*,
 519 F. Supp. 3d 703 (C.D. Cal. 2021)..................................................................9, 17

*Freeman v. United States*,
 556 F.3d 326 (5th Cir. 2009) ..................................................................................... 13

*Horne v. Wells Fargo Bank, N.A.*,
 969 F. Supp. 2d 1203 (C.D. Cal. 2013) ..................................................................8, 9

*Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co.*,
 619 F. App'x 592 (9th Cir. 2015).........................................................................1115

*Invitrogen Corp. v. President & Fellows of Harvard Coll.*,
 2007 WL 2915058 (S.D. Cal. Oct. 4, 2007)................................................................ 9

*Johnson v. Mitchell*,
 No. CIV S-10-1968 GEB, 2012 WL 1657643 (E.D. Cal. May 10, 2012) ............... 6

*LNS Enterprises LLC v. Continental Motors, Inc.*,
 22 F.4th 852 (9th Cir. 2022) ....................................................................................... 9

*Mission Power Eng'g Co. v. Continental Casualty Co.*,
 883 F. Supp. 488 (C.D. Cal. 1995)...........................................................5, 8, 9, 13

*Morongo Band of Mission Indians v. California State Bd. of Equalization*,
 858 F.2d 1376 (9th Cir. 1988) ................................................................................... 20

*Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*,
   298 F.R.D. 633 (S.D. Cal. 2014) ........................................................... 12

*Northstar Fin. Advisors* Page(s)*v. Schwab Investments*,
   779 F.3d 1036, 1044 (9th Cir. 2015) ..................................................... 19

*PerkinElmer Health Sci., Inc. v. SCR Living, LLC*,
   2022 WL 2189604 (C.D. Cal. Feb. 1, 2022) .......................................... 13

*ProPat Int'l Corp. v. RPost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007) ............................................................. 19

*Sywula v. Teleport Mobility, Inc.*,
   2023 WL 362504 (S.D. Cal. Jan. 23, 2023) ........................................... 19

*Valadez v. County of Los Angeles*,
   2022 WL 19914191 (Nov. 18, 2022) ..................................................... 13

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*,
   807 N.E.2d 876 (N.Y. 2004) ................................................................. 15

*W.W.W. Assocs., Inc. v. Giancontieri*,
   77 N.Y.2d 157 (1990) .............................................................................. 6

**Other Authorities**

Rule 12(b)(1) ............................................................................*passim*

Rule 15(a) ................................................................................................ 8

Rule 15(d) .......................................................................................... 8, 7, 9

Rule 26(f) ............................................................................................... 12

1

## I.   INTRODUCTION

An *ex parte* application filed near midnight on a Friday night, and requiring a response within 24 hours, should reflect a serious emergency.  *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) ("filing an *ex parte* motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'" so "[t]here had better be a fire" or the application will be denied).  There is no fire here.  Entropic has asked this Court for leave to conduct jurisdictional discovery instead of opposing Comcast's motion to dismiss for lack of subject matter jurisdiction.  Incredibly, Entropic asserts that it has intended to seek jurisdictional discovery since at least *May 8*[1]—but provides no reason that it waited over six weeks to ask the Court.  Entropic's belated *ex parte* application is a transparent attempt to avoid having to respond substantively to Comcast's motion to dismiss and a sanctionable abuse of the Court's *ex parte* procedures.[2]

But even if Entropic had timely sought this relief, its request lacks any merit whatsoever.  Entropic concedes that jurisdictional discovery would be appropriate only if the contractual provision at issue—the covenant not to sue in the VSA, which immunizes Comcast from suit with respect to all of the asserted patents—is found to be ambiguous.  In fact, Entropic is explicit that it seeks jurisdictional discovery to "allow Entropic to provide evidentiary support *for its interpretation* of the VSA," (Dkt. 1048,

---

[1] Dkt. 87-1 (Declaration of Nicholas F. Lenning) ¶ 9.

[2] Notably, Entropic did not raise this issue with Comcast until the afternoon of June 22, demanding to meet and confer that same day.  The parties met and conferred at Comcast's first opportunity, on June 23, and Entropic filed this *ex parte* application *after 11:00 p.m.* that evening (and did not send the unredacted sealed copies until nearly *midnight*), requiring Comcast to oppose it on a Saturday night—despite this Court's admonition that it "takes a dim view of applicants to file their *ex parte* applications on Fridays or the day before a court holiday."  Standing Order ¶ 15; Declaration of Krishnan Padmanabhan ("Padmanabhan Decl.") ¶¶ 3, 6.

89-1 ("App.") at 11.[3] But extrinsic and parol evidence "*is not admissible to create an ambiguity* in a written agreement which is complete and clear and unambiguous upon its face" under New York law, which governs the contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990) (emphasis added). Faced with the specter of addressing Comcast's compelling arguments in its 12(b)(1) motion that the covenant is clear and unambiguous on its face under New York law, Entropic seeks a months-long extension of time to oppose it (while proposing that Comcast have seven days to reply) under the guise of needing discovery on the intent of the parties. But conducting expedited discovery in the absence of any finding of ambiguity would be a waste of time and resources. This is exactly why Entropic should respond to Comcast's pending Rule 12(b)(1) motion *before* it seeks any discovery. Entropic has the order of operations entirely backwards.

Entropic's sole argument regarding ambiguity in the covenant not to sue relies on a blatant misrepresentation of Comcast's 12(b)(1) motion, rather than the contract language itself or New York law. An actual review of Comcast's briefing, and Entropic's original and amended complaints, makes clear that no such ambiguity in the covenant, or Comcast's briefing, exists. *See infra* at 8-9. Entropic's theories of willfulness have changed, first relying on correspondence that post-dates August 2022 in the initial complaint, which cannot trigger the willfulness exemption in the covenant not to sue based on its timing alone. Entropic's First Amended Complaints ("FACs") then relied on scattershot allegations earlier in time, including based on unasserted patents, and an allegation Entropic made for the first time that willfulness on any single patent would make the entire covenant not to sue ineffective, all of which Comcast addressed in its second Rule 12(b)(1) motion. Comcast's position did not change—it simply addressed Entropic's new arguments. Try as it might, Entropic's own shifting

---

[3] Entropic failed to sequentially cite its *ex parte* application and memorandum in contravention of this Court's rules. Accordingly, Comcast has relied upon the electronically stamped pages to identify page numbers.

theories on willfulness and the covenant not to sue cannot create ambiguity in the contract language.

Entropic also grossly misrepresents the discovery being conducted in the Southern District of New York and is purposefully vague about the jurisdictional discovery it seeks here.  The scope of the covenant not to sue in the VSA is not the subject of Comcast's complaint in the Southern District of New York ("SDNY").  The issue in the New York case is whether MaxLinear's attempted termination of the VSA last month was effective, and Comcast has moved for a preliminary injunction to stop MaxLinear's premature termination which will be heard later this summer.  Entropic boldly states that "[e]ven Comcast thinks discovery is needed on the VSA—it already agreed to a discovery schedule in the SDNY litigation *that includes depositions, including of the person at Comcast that negotiated and executed the VSA, and document discovery*." App. at 2 (emphasis added).  This is false.  Comcast's position was that the relevant termination provisions are clear on their face such that no discovery was required, but Comcast ultimately agreed that "MaxLinear may depose each declarant who submitted a declaration in support of Comcast's Application" for a preliminary injunction.   Ex. A[4] (C.A. 23-cv-04436-AKH, Dkt. 32) at 1.   Comcast's declarants addressed the discussions they had with MaxLinear around its improper attempted termination of the VSA in April and May 2023, and the irreparable harm that Comcast will suffer if MaxLinear were to stop performing services under the VSA.  They did not address the VSA broadly or the substance of the covenant not to sue, nor did any of Comcast's witnesses in the SDNY action submit declarations concerning the "interpretation of various clauses."  App. at 2.

Nor is there any merit to Entropic's request to stay the July 21 hearing until SDNY rules on Comcast's preliminary injunction motion.  However dubious it was for MaxLinear to attempt to terminate the VSA to somehow belatedly establish jurisdiction

---

[4] All exhibits are attached to the concurrently-filed Padmanabhan Decl.

such that Entropic can sue Comcast on the patents, it is undisputed that the VSA was in effect when Entropic filed these cases—so under black-letter law any ruling from SDNY on MaxLinear's recent attempted termination of the VSA cannot cure the jurisdictional defects in Entropic's cases that existed at the outset. While Entropic clings to the prospect of a supplemental pleading under Rule 15(d), it already amended its complaint once under Rule 15(a) and has neither provided such notice or motion despite having known about MaxLinear's attempted termination for over a month (since May 18).

At bottom, there is no basis for emergency relief, and no prejudice to Entropic if it simply opposes Comcast's motion to dismiss as scheduled on June 30. Entropic is free to make arguments in that brief about contract ambiguity and the need for jurisdictional discovery. But if the Court finds that the covenant not to sue unambiguously bars Entropic's claims, there will never be a need for this discovery. Comcast respectfully requests that the Court deny Entropic's *ex parte* application and proceed with the July 21 hearing as planned.[5]

## II.   LEGAL STANDARD

### A.   *Ex parte* applications are reserved for extraordinary relief

As the Court has cautioned in its Standing Order, "this Court allows *ex parte* applications solely for extraordinary relief.  Sanctions may be imposed for the misuse of *ex parte* applications."[6]  *Ex parte* applications are "rarely justified" because they are "inherently unfair, and they pose a threat to the administration of justice.  They debilitate the adversary system."  *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Therefore, "[t]he 'opportunities for legitimate *ex parte* applications are extremely limited.'"  *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (citation and quotation marks

---

[5] The parties will be appearing on July 21 for both the hearing on Comcast's motion to dismiss (Dkt. 82-1) and for a scheduling conference.

[6] Standing Order ¶ 15.

omitted).  As *Mission Power* makes clear, there are substantive hurdles to obtaining *ex parte* relief, including that "it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id*.  It is necessary, but not sufficient, to demonstrate that "the other party is the sole wrongdoer."  *Id.* at 493.  If this is shown, the movant must nevertheless also explain "the necessity for bypassing regular motion procedures." *Id.*

> **B.     Entropic's burden for demonstrating that jurisdictional discovery is necessary**

Jurisdictional discovery may be appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Engasser v. Tetra Tech, Inc.*, 519 F. Supp. 3d 703, 710 (C.D. Cal. 2021) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)).  But requests for jurisdictional discovery may be denied where they are "based on little more than a hunch that it might yield jurisdictionally relevant facts" or "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Engasser*, 519 F. Supp. at 710; *see also LNS Enterprises LLC v. Continental Motors, Inc*., 22 F.4th 852 (9th Cir. 2022) ("The mere hunch that discovery might yield jurisdictionally relevant facts was not adequately supported, given that defendants had already specifically rebutted unsupported jurisdictional allegations."). "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." *Engasser*, 519 F. Supp. at 710 (quoting *Dichter-Mad Fam. Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013).

## III.    ARGUMENT

> **A.     Entropic's request is not an emergency, and Entropic is responsible for the timing of this request.**

The supposed "emergency" underlying Entropic's eleventh hour *ex parte* request for jurisdictional discovery and a continuance of the July 21 hearing is of its own making.  Entropic has known about the basis of Comcast's motion to dismiss for lack

of subject matter jurisdiction for months.  On April 19, Comcast informed Entropic of the covenant not to sue that ran with the asserted patents when they were assigned from MaxLinear, Inc. and its affiliate to Entropic, and on May 4, Comcast provided Entropic with the vendor services agreement ("VSA") that includes the covenant.  C.A. 23-cv-1048 ("1048"), Dkt. 54-4, ¶¶ 3-7.  Entropic did not seek any discovery at that time.  The parties then met and conferred about the basis of Comcast's motion to dismiss for lack of subject matter jurisdiction on May 8, and Comcast filed its first motion to dismiss Entropic's original complaints for lack of subject matter jurisdiction on May 22.  1048, Dkt. 54-1.  But rather than seeking any discovery after meeting and conferring, and reviewing Comcast's motion, Entropic voluntarily amended its complaint—largely just adding speculative and conclusory allegations about Comcast's alleged willfulness "upon information and belief."  The parties met and conferred once more on June 12 and discussed the substance of Comcast's Rule 12(b)(1) motion yet again.  Comcast filed its second motion to dismiss the FACs on June 20.  1048, Dkt. 81-2.[7]

Because the basis for Comcast's pending motion to dismiss the FACs under Rule 12(b)(1) is substantively the same as its original motion to dismiss for lack of subject matter jurisdiction—and based on the same evidence[8]—there is nothing new about Comcast's June 20 motion that could possibly have given Entropic grounds to suddenly seek jurisdictional discovery *now*.[9]  Indeed, Entropic has **conceded** that it could have sought this relief six weeks ago—specifically, that Entropic first raised jurisdictional

---

[7] Comcast filed a consolidated motion to dismiss the FACs under both Rule 12(b)(1) and 12(b)(6) in the alternative.

[8] The evidence in the second Rule 12(b)(1) motion / 12(b)(6) motion was all provided with Comcast's first Rule 12(b)(1) motion (filed on May 22, 2023) or Comcast's first Rule 12(b) motion (filed on May 15, 2023).

[9] Indeed, both Comcast's first motion to dismiss the original Complaints and its second motion to dismiss the FACs included arguments that the covenant is clear and unambiguous, and that jurisdictional discovery is therefore unnecessary.  Dkt. 54-1 at 21-22; Dkt. 82-1 at 36-37.

discovery on May 8. Lenning Decl. ¶ 9.[10] Entropic appears to be simply throwing down another roadblock in the hopes that it can further avoid responding to Comcast's Rule 12(b)(1) motion.

Entropic tries to justify its delay in seeking jurisdictional discovery by pointing to a purported "inconsistency" in how Comcast itself interprets the covenant in its first and second motions to dismiss. App. at 1-2. But there is no such inconsistency. In the portion of the first Rule 12(b)(1) motion that Entropic points to, Comcast simply referenced language from the covenant relating to willful infringement, and discussed temporal aspects of the covenant, i.e., that post-VSA allegations of willfulness cannot invoke the willfulness exemption. Comcast's first Rule 12(b)(1) motion did not articulate a "position" or "interpretation" as to whether the covenant not to sue is assessed on a patent-by-patent basis, because the entirety of Entropic's willfulness allegation in the Original Complaints was based on post-VSA correspondence. 1048, Dkt. 1, *e.g.*, ¶¶ 31, 110; App. at 1-2 (citing 1048, Dkt. 54 at 9:18-21 (discussing temporal aspect of covenant not to sue); *see also* App. at 2, n 2 (citing 1048, Dkt. 54 at 20:17-20 (discussing that a reading of the covenant not to sue in which MaxLinear could invoke the willfulness exemption by manufacturing willfulness allegations is contrary to New York law; this section again discusses temporal aspects of the covenant, and does not aim to address whether the covenant is assessed on a patent-by-patent basis). Then, in its FACs, filed in response to Comcast's first motion to dismiss, Entropic set forth for the first time the theory that willful infringement of a single patent would make the *entire* covenant not to sue ineffective with respect to MaxLinear's entire patent portfolio. 1048, Dkt. 69-1, ¶¶ 60. Given that new argument, Comcast explained in its second Rule 12(b)(1) motion why that reading of the willfulness exemption is

---

[10] Entropic appears to blame Comcast for seeking this "emergency" relief by claiming that "Comcast has long had notice of Entropic's intent to seek jurisdictional discovery." But it is undisputed that Entropic never asked Comcast, let alone the Court, for such discovery until now, as opposed to merely raising an "intention" to do so during meet and confers between counsel.

incorrect.  The parties discussed this position at their June 12 meet and confer on Comcast's second Rule 12(b)(1) motion (and again during the meet and confer on this application), during which Entropic could not provide any case in support of its position. Dkt. 82-1, § E.2.  But regardless, Entropic's claim that something in Comcast's June 20 motion somehow necessitated jurisdictional discovery is belied by the fact that it raised jurisdictional discovery as early as May 8.  Lenning Decl. ¶ 9.

Entropic next argues that the parties' Rule 26(f) conference, conducted on June 23, finally triggered its ability to pursue this relief, even though Entropic made clear that it was prepared to file before the Rule 26(f) conference—on June 22.  Ex. B. Entropic did not raise the issue of seeking this discovery during the parties' Rule 26(f) conference either. Padmanabhan Decl. ¶ 8. Regardless, a Rule 26(f) conference is not a prerequisite to seeking jurisdictional discovery, or the Court ordering it. *See Invitrogen Corp. v. President & Fellows of Harvard Coll.*, 2007 WL 2915058, at *2–3 (S.D. Cal. Oct. 4, 2007) (granting plaintiff's motion to compel for limited jurisdictional discovery before the Rule 26(f) conference, and also noting that parties may stipulate to discovery prior to formal discovery opening); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D. 633, 639 (S.D. Cal. 2014) ("no Rule 26(f) conference, discovery plan or status conference is required in order to conduct discovery for the jurisdictional inquiry"). The fact that the parties were diligent in preparing for the July 21 Case Management Conference, by holding their Rule 26(f) conference, provides no justification for any "emergency relief."

Further, the key facts here—the VSA and covenant not to sue contained therein— were all available to Entropic before it filed this lawsuit, since MaxLinear has a financial stake in these cases, and Entropic has admitted that it has received documents and information from MaxLinear.  However, there can be no dispute that Entropic's pre-filing investigation should have revealed the VSA and covenant not to sue, and if Entropic believed it could establish jurisdiction in view of the covenant not to sue, it should have asserted as much in its original complaints or FACs, including its own

investigation of any facts that might support jurisdiction through MaxLinear. The belated request for jurisdictional discovery to keep these cases alive, after failing to perform an adequate pre-filing investigation, and then filing a deficient amended complaint, is too little, too late.  Entropic should be obligated to respond to Comcast's Rule 12(b)(1) motion so the Court can hear the issue.

In short, Entropic has provided no reason whatsoever for its lengthy delay in seeking jurisdictional discovery, and that alone requires denial of its *ex parte* application. *Mission Power*, 883 F. Supp. at 492 (to justify *ex parte* relief, "it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect."); *PerkinElmer Health Sci., Inc. v. SCR Living, LLC*, 2022 WL 2189604 (C.D. Cal. Feb. 1, 2022) (Holcomb, J.) ("Whether due to SCR's lack of diligence or lack of candor, it appears that SCR is not without fault in creating the crisis from which it now seeks relief. SCR therefore cannot meet the second prong of *Mission Power.* The [*Ex Parte*] Application is DENIED."); *Valadez v. County of Los Angeles*, 2022 WL 19914191, at *2 (Nov. 18, 2022) (denying *ex parte* application where "Plaintiffs have failed to … show that they are 'without fault' in creating the current 'crisis.'") (quoting *Mission Power*, 883 F. Supp. at 491).

## B.   Entropic provides no basis for jurisdictional discovery.

Even if Entropic had timely sought this relief, it is not warranted.  "As the party opposing dismissal and requesting discovery," Entropic "bear[s] the burden of demonstrating the necessity of discovery."  *See Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir. 2009).  Entropic is "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* at 342.  Nowhere in Entropic's motion is any indication of *what* information it now seeks that would withstand Comcast's Rule 12(b)(1) motion.  Entropic's silence here is particularly striking because it has ready access to documents from MaxLinear, who granted Comcast the covenant not to sue, has a pecuniary interest

in these cases, and who continues to cooperate with Entropic through the provision of documents.

Rather than point to specific information it needs to oppose Comcast's motion, Entropic argues that jurisdictional discovery is necessary because the covenant not to sue in the VSA is ambiguous and requires the consideration of extrinsic evidence in order for the Court to interpret it. Entropic's entire argument relies on a gross misrepresentation of Comcast's motion papers.

In an attempt to manufacture ambiguity, Entropic incorrectly argues that Comcast first contended that willful infringement of any single patent before the date of the VSA would render the covenant ineffective, and that Comcast then changed its position that the willfulness exemption operated on a patent-by-patent basis. As discussed above, this is not true, and Comcast has been arguing for the same meaning from the start. *See supra* at 11. But if Entropic wishes to argue that the covenant not to sue is ambiguous, it should do so based on the language of the covenant itself, and case law, and has every opportunity to do so in response to Comcast's Rule 12(b)(1) motion.

There is certainly no basis to conduct jurisdictional discovery ***before*** the Court has examined the covenant not to sue and made a determination as to whether it believes the clause is ambiguous. *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1004 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract."). Entropic ***concedes that the Court needs to find the covenant not to sue ambiguous before extrinsic evidence can be relevant.*** App. at 6, n 3 (citing *Cnty. Of Nassau v. Tech. Ins. Co.*, 107 N.Y.S.3d 348, 351 (2019) (citing *Amusement Bus. Underwriters v. American Intl. Grp.*, 66 N.Y.2d 878, 880 (1985) ("extrinsic evidence is highly relevant to determine the parties' intent ***when a term or clause of a contract is ambiguous.***")). Entropic's efforts to obtain jurisdictional discovery on the basis that the covenant is ambiguous, before even filing an opposition setting forth its basis for claiming ambiguity, is procedurally incorrect and legally unsupported. And where the terms of an agreement were "negotiated

between sophisticated, counseled businesspeople negotiating at arm's length," as they were here, courts applying New York law are especially reluctant to rely on extrinsic evidence. *See Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004). Entropic's burden in demonstrating the relevance of extrinsic evidence to interpret the covenant not to sue is high, and it has done little to meet that burden.

### C.   Entropic's requests are undefined. And fishing expeditions for jurisdictional discovery are not permitted.

Despite having had the VSA since at least May 4, having contemplated jurisdictional discovery since May 8, and having seen two motions from Comcast on Rule 12(b)(1), Entropic's *ex parte* application **does not list even a single discovery request that it would intend to serve if granted jurisdictional discovery**. Jurisdictional discovery should be made up of "narrowly tailored request[s]." *See Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co.*, 619 F. App'x 592, 595 (9th Cir. 2015), as amended on clarification (Aug. 19, 2015) (citing *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)). And while Entropic states that it seeks "limited discovery, similar in scope to which Comcast already has agreed in a different litigation over the same contract," App. at 2, 9, this is incorrect as set forth above. *See supra* 7–8; *see also infra* 18–19. Comcast explicitly did not seek any discovery in the SDNY litigation because the meaning of the relevant termination provisions at issue is unambiguous. Notably, not even MaxLinear is seeking document discovery from Comcast on the VSA, the termination provisions, or the covenant not to sue; instead, it requested depositions of the witnesses that submitted declarations in support of Comcast's application for a preliminary injunction, to which Comcast agreed.[11]   Those declarations address the irreparable harm Comcast will suffer from

---

[11] Comcast will similarly depose any of MaxLinear's declarants. Notably, however, MaxLinear has not yet agreed that it will provide any document discovery. Ex. A (C.A. 23-cv-04436-AKH, Dkt. 32) at 1 ("*In the event Comcast intends to seek targeted*

MaxLinear's improper termination of the VSA as well as the communications between MaxLinear and Comcast in May 2023. C.A. 23-cv-04436-AKH, Dkt. 16-18 (Declarations in Support of Comcast's Application for Preliminary Injunction). None of the witnesses addressed the negotiation of the VSA or the interpretation of specific contract provisions in their declarations or are even signatories to the agreement. C.A. 23-cv-04436-AKH, Dkt. 32 at 1; C.A. 23-cv-04436-AKH, Dkt. 16-18 (Declarations in support of Comcast's Application for Preliminary Injunction). While Entropic fails to identify the discovery it seeks in this case, it undoubtedly seeks to exceed the limited discovery concerning particular termination provisions (and not the covenant not to sue) that will occur related to Comcast's application for a preliminary injunction. Indeed, the evidence relating to termination and irreparable harm to Comcast caused by termination is wholly irrelevant to Entropic's burden of establishing jurisdiction in this case.

Entropic's inability to narrowly define its intended discovery, despite ample time with the relevant documents and Comcast's Rule 12(b)(1) motions, is troubling. Requests for broad jurisdictional discovery are not appropriate because they amount to "no more than a request 'to fish on a hunch that something might be caught in a widely cast net.'" *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (citing *Martinez v. Manheim Cent. California*, 2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) and *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that denial of discovery is not an abuse of discretion when it is "based on little more than a hunch that it might yield jurisdictionally relevant facts")). Here, Entropic hopes to find "something" to argue that it can establish subject matter jurisdiction, but that "something" remains completely undefined, and it is altogether unclear why it did not obtain what it needs from MaxLinear prior to bringing suit. This

*document or other written discovery* from MaxLinear . . . and MaxLinear agrees that any documents or information *it agrees to provide* will be produced before the depositions of its declarants").

is the definition of a fishing expedition. *Engasser*, 519 F. Supp. 3d at 710 (denying jurisdictional discovery where requests were "based on little more than a hunch that it might yield jurisdictionally relevant facts.").

### D. There is no basis to stay the hearing on Comcast's motion to dismiss until a New York court rules on a separate issue.

The scope of the covenant not to sue in the VSA is not the subject of Comcast's complaint in SDNY. *See supra* 7, 15. Rather, Comcast sued MaxLinear in SDNY on the basis that MaxLinear's purported termination of the VSA was improper and ineffective, and Comcast now seeks a preliminary injunction to prohibit MaxLinear from terminating the VSA and its accompanying statement of work prematurely. MaxLinear has agreed to continue performing services under the VSA until the "later of (a) August 16, 2023, or (b) 30 days after the Court resolves Comcast's Application for a preliminary injunction." Ex. C (C.A. 23-cv-04436-AKH, Dkt. 23) ¶ 2. But Entropic has asked the Court to continue the July 21 hearing until after the SDNY rules on the preliminary injunction. App. at 9-11. In essence, what Entropic requests is to hold over the question of whether it can seek leave to file a supplemental pleading, pursuant to Rule 15(d), *if* the SDNY determines that MaxLinear is permitted to terminate the VSA.[12] In the meantime, Entropic has no basis for subject matter jurisdiction, and is thus attempting to avoid responding to Comcast's motion in any substantive manner to argue why this case should continue. The appropriate course is

---

[12] As Entropic recognizes, the SDNY is currently scheduled to hear Comcast's application for ***preliminary injunction*** in August. This will not be a final determination, and Entropic should not be allowed to hold over this case until the SDNY has made a final decision on the status of the VSA. If Entropic contends that the decision in the SDNY is dispositive of jurisdiction here, the proper course of action would be for Entropic to voluntarily dismiss its lawsuits against Comcast here and refile if the VSA is found to be terminated.

1    to dismiss these cases pending any resolution in SDNY, and then allow Entropic to
2    refile if the SDNY issues a ruling providing a basis for Entropic to do so.[13]

3        Entropic's delay in seeking this continuance precludes it.  Comcast filed the
4    lawsuit against MaxLinear in SDNY on May 26 and sought a temporary restraining
5    order and preliminary injunction as quickly as possible on May 30.  Entropic was fully
6    aware of these actions because it has been coordinating with MaxLinear, who has a
7    financial interest in Entropic's lawsuits. In fact, Entropic's June 5 FACs explicitly
8    reference MaxLinear's May 18 termination letter to Comcast, despite Comcast never
9    having provided that letter to Entropic. And counsel for Entropic declined to explain its
10   first knowledge of that letter, or whether it participated in MaxLinear's decision to send
11   a letter attempting termination, on the basis that this information would be common
12   interest privileged. Padmanabhan Decl. ¶ 6. In essence, Entropic and MaxLinear are
13   asking for two bites at the apple—depositions in this matter and in the SDNY
14   litigation—to argue after-the-fact jurisdiction in these cases.

15       Entropic could have sought this relief anytime since receiving the VSA or
16   MaxLinear's ineffective termination letter (and certainly could have raised this issue
17   before Comcast filed its pending motions to dismiss on June 20, or at the status
18   conference on June 9).  Entropic provides no reason why it waited to seek this relief,
19   except to point to the fact that Comcast's preliminary injunction motion will be heard
20   in mid-August by SDNY.  But the issue to be decided in that case (whether MaxLinear's
21   termination of the VSA in May 2023 was effective) has no bearing on whether Entropic
22   has established jurisdiction in these cases as a matter of law.

23       As it stands, because Entropic has failed to establish that jurisdiction existed at
24   the time that it filed these cases, it cannot cure through any post-filing termination of

25   _____
26   [13] Even if MaxLinear were permitted to terminate the VSA, it is undisputed that
     MaxLinear's attempted assignment of patents to Entropic took place while the VSA
27   was in force, and Comcast reserves all rights to contest the effectiveness of that
     assignment, or otherwise seek relief, based on MaxLinear's failure to comply with the
28   terms of the VSA. 1048, Dkt. 82-1 at 23, n 12.

the VSA, even if that termination was proper (which it is not).[14]  Because a party cannot sue before it obtains the relevant legal right, there must be a final adjudication of disputed contractual issues that give rise to jurisdiction *before* the lawsuit is filed. *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1144-45 (N.D. Cal. 2013) (granting motion to dismiss for lack of subject matter jurisdiction because the plaintiff's rights in the patent—which hinged on whether the exclusive licensee materially breached the license agreement, vesting rights back in the plaintiff—had not yet been adjudicated); *see also, e.g., ProPat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193–94 (Fed. Cir. 2007) ("[a] bare licensee cannot cure its lack of standing by joining the patentee as a party.").  Entropic is flatly wrong that it could file a "supplemental" pleading if the SDNY rules that MaxLinear effectively terminated the VSA.  The cases that Entropic cites are off base.  *Northstar Fin. Advisors v. Schwab Investments* generally discusses supplemental pleadings permitted by Rule 15(d) and is not a patent infringement case.  779 F.3d 1036, 1044 (9th Cir. 2015).  And in *Sywula v. Teleport Mobility, Inc*., the plaintiff brought suit to obtain credit as an inventor on software patents.  2023 WL 362504 (S.D. Cal. Jan. 23, 2023).  Neither case disturbs the line of authority requiring dismissal of cases where there was a lack of jurisdiction at the outset of a patent infringement case.  Notably, Entropic does not address the fact that, if MaxLinear's attempted termination of the VSA provides basis for a supplemental pleading, it has no excuse for having waited over a month, since May 18, and still failed to file such a pleading. And if MaxLinear intends to wait pending resolution of the SDNY case, that could take years, since only Comcast's preliminary injunction will be decided by mid-August. Entropic does not have the right to hold Comcast hostage, in

---

[14] Entropic's other "questions as to the interpretation of this contract" now claims must be resolved via discovery are completely irrelevant to burden of establishing jurisdiction in these cases.  App. at 6-7.  Whether under the VSA MaxLinear can "sue after the Term for past damages during the Term" and whether MaxLinear can sue Comcast's vendors, are of no moment regarding whether Entropic can establish jurisdiction in this case at the time it filed these lawsuits.

litigation that lacks subject matter jurisdiction, for months or years in the hopes that the VSA is eventually terminated and the covenant not to sue is no longer in place.

Entropic does not (and could not) argue that the covenant was not in effect when it filed these cases.  And MaxLinear has stipulated to perform services under the VSA's terms until the preliminary injunction is decided.  MaxLinear's attempted termination of the VSA last month only confirms that the covenant not to sue was fully in force when Entropic filed these lawsuits, and Entropic's reliance on the SDNY litigation is an admission that the covenant bars Entropic from bringing these actions and it needs termination in order to pursue Comcast.  Because jurisdiction was lacking *when Entropic filed these cases (and today)*, the SDNY's ruling on MaxLinear's attempted termination cannot save Entropic's claims *today*.  *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss.").  There would be no efficiencies in continuing the hearing until the SDNY rules.  Rather, the continued maintenance of these litigations, despite Entropic's inability to defend subject matter jurisdiction, is a waste of the Court's and the parties' time and efforts.  The Court should hear Comcast's Rule 12(b)(1) motion at the July 21 hearing and then dismiss these cases, rather than let Entropic continue its strategy of delay.

## IV.   CONCLUSION

There is no basis to grant Entropic's "emergency" request for (unspecified) jurisdictional discovery.  Entropic should simply oppose Comcast's motion to dismiss on June 30—where it is free to make the arguments it alludes to in its application.  As a matter of law, the discovery that Entropic seeks prematurely will be necessary only if the Court finds that there is an ambiguity in the covenant not to sue that would benefit from extrinsic evidence.  Nor is there any reason to hold over Comcast's motion to dismiss for lack of subject matter jurisdiction pending a "likelihood of success on the merits" determination by the SDNY.

For all of the foregoing reasons, Comcast respectfully requests that the Court deny Entropic's *ex parte* application in its entirety.

Dated:  June 25, 2023                    WINSTON & STRAWN LLP

                                         By: */s/Krishnan Padmanabhan*

                                         Krishnan Padmanabhan (SBN: 254220)
                                         kpadmanabhan@winston.com
                                         **WINSTON & STRAWN LLP**
                                         200 Park Ave., Fl. 40
                                         New York City, NY 10166
                                         Tel: (212) 294-6700
                                         Fax: 212-294-4700

                                         Diana Hughes Leiden (SBN: 267606)
                                         dhleiden@winston.com
                                         **WINSTON & STRAWN LLP**
                                         333 S. Grand Ave.
                                         Los Angeles, CA  90071
                                         Tel: (213) 615-1700
                                         Fax: (213) 615-1750

                                         Brian Ferguson (*pro hac vice*)
                                         bferguson@winston.com
                                         **WINSTON & STRAWN LLP**
                                         1901 L Street NW
                                         Washington, DC 20036
                                         Tel: (202) 282-5000
                                         Fax: (202) 282-5100

                                         Saranya Raghavan (*pro hac vice*)
                                         sraghavan@winston.com
                                         **WINSTON & STRAWN LLP**
                                         35 West Wacker, Dr.
                                         Chicago, IL 60601
                                         Tel: (312) 558-5600
                                         Fax: (312)558-5700

                                         *Attorneys for Comcast Defendants*