Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

(additional counsel listed
on signature page)

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-1050-JWH-KES |
| Plaintiff, | **ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO COMCAST DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) OR 12(b)(6) IN THE ALTERNATIVE** |
| v. | |
| COMCAST CORPORATION; *et al.*, | |
| Defendants. | |
| | Date:         July 21, 2023 |
| | Time:         9:00 AM |
| | Courtroom:  9D |

**REDACTED VERSION OF
DOCUMENT PROPOSED TO BE
FILED UNDER SEAL**

---

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................1

II.     THE VENDOR SUPPORT AGREEMENT ..............................................2

III.    ARGUMENT ...............................................................................................3

        A.      This Court has subject matter jurisdiction even if the Court accepts all of
                Comcast's arguments. ....................................................................3

        B.      The covenant is not a license that runs with the patents, but rather a
                conditional covenant. .....................................................................7

        C.      The plain language and context of the VSA is consistent with the legal
                reality that Section 7.3 is not a license. .......................................10

        D.      Even if the covenant travels, its condition has been triggered and the
                covenant therefore has been nullified. .........................................12

        E.      The VSA could not have conveyed rights to a non-party's intellectual
                property without evidence supporting that conclusion. ................16

        F.      The VSA does not deprive this Court of jurisdiction because it has been
                terminated. ....................................................................................17

        G.      To the extent the Court finds any ambiguity, Entropic requests
                jurisdictional discovery. ..............................................................18

        H.      Entropic's willfulness allegations are sufficient under Rule 12(b)(6). ............19

IV.     CONCLUSION ...........................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013).............................................................................5

*Ameranth, Inc. v. ChowNow, Inc.*,
  2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ...........................................6

*ArcelorMittal v. AK Steel Corp.*,
  856 F.3d 1365 (Fed. Cir. 2017)...........................................................6

*AT&T Corp. v. VoIP-Pal.Com, Inc.*,
  2021 WL 3773611 (N.D. Cal. Aug. 25, 2021) ..........................................5

*Barn Light Elec. Co., LLC v. Barnlight Originals, Inc.*,
  2015 WL 1281928 (M.D. Fla. Aug. 21, 2015) .........................................6

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
  2011 WL 13371929 (D. Del. July 18, 2011) ...........................................6

*Carnegie Institution of Wash. V. Fenix Diamonds, LLC*,
  2021 WL 3501092 (S.D.N.Y. Aug. 9, 2021) ...........................................6

*Cedars-Sinai Med. Ctr. V. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993)...........................................................7

*Colton v. New York Hosp.*,
  414 N.Y.S.2d 866 (Sup. Ct. 1979) .....................................................12

*Comcast Cable Communications Management, LLC v. MaxLinear, Inc.*,
  Case No. 1:23-cv-04436-AKH (S.D.N.Y. 2023) ....................................18

*Computer Assocs. Int'l, Inc. v. U.S. Balloon Mfg. Co.*,
  782 N.Y.S.2d 117 (2004) ...............................................................12

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008) .........................................................9

*Debrova v. Holder*,
  607 F.3d 297 (2d Cir. 2010)............................................................15

*Digitech Image Techs., LLC v. Newegg Inc.*,
  2013 WL 1871513 (C.D. Cal. May 3, 2013) .........................................16

*FieldTurf USA, Inc. v. Sports Const. Grp., LLC*,
  507 F. Supp. 2d 801 (N.D. Ohio Aug. 15, 2007).....................................6

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

*Harris Trust & Sav. V. John Hancock Mut. Life Ins. Co.*,
   970 F.2d 1138 (2d Cir. 1992)..................................................................14

*Heartland Rec. Vehicles, LLC v. Forest River, Inc.*,
   2010 WL 497327 (N.D. Ind. Feb. 4, 2010).............................................6

*Hitachi Koki Co., Ltd. v. Techtronic Indus. Co. Ltd.*,
   2013 WL 10110347 (N.D. Ga. Feb. 6, 2013) ..........................................6

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
   581 U.S. 360 (2017)...............................................................................9

*Innovus Prime, LLC v. Panasonic Corp.*,
   2013 WL 3354390 (N.D. Cal. July 2, 2013)............................................8

*Intervention911 v. City of Palm Springs*,
   2018 WL 1441167 (C.D. Cal. Mar. 22, 2018).......................................19

*Joao v. Cenuco, Inc.*,
   376 F. Supp. 2d 380 (S.D.N.Y. 2005)...................................................12

*King Pharms., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010)..........................................................2, 4

*Kohl's Dep't Stores, Inc. v. Escalate, Inc.*,
   2014 WL 1330852 (E.D. Wis. Mar. 28, 2014) ......................................14

*Lepton Labs, LLC v. Walker*,
   55 F. Supp. 3d 1230 (C.D. Cal. 2014) ....................................19, 20, 21

*In re Lipper Holdings, LLC*,
   766 N.Y.S.2d 561 (2003)......................................................................11

*Mayweather Promotions, LLC v. PAC Entertainment Worldwide LLC*,
   2022 WL 3997014 (S.D.N.Y. Sept. 1, 2022).........................................17

*Menell v. First Nat. Bank of Boston*,
   174 B.R. 685 (D.N.J. Bank. 1994)........................................................14

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp.2d 225 (D. Del. 2012) .......................................................19

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015) ..............................................................18

*ParkerVision, Inc. v. Apple, Inc.*,
   2018 WL 11427930 (M.D. Fla. Apr. 27, 2018)........................................6

*Perfectvision Manufacturing, Inc. v. PPC Broadband, Inc.*,
   951 F. Supp. 2d 1083 (E.D. Ark. June 10, 2013).....................................6

iii
**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

*Quantum Corp. v. Riverbed Tech., Inc.*,
   2008 WL 314490 (N.D. Cal. 2008) ........................................................16

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
   556 F.3d 1294 (Fed. Cir. 2009)..........................................................5, 6

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
   706 F. Supp. 2d 350 (S.D.N.Y. 2009)...............................................10, 17

*SanDisk Corp. v. Mobile Media Ideas LLC*,
   2011 WL 1990662 (N.D. Cal. May 23, 2011) .........................................6

*Santo-Reyes v. Att'y Gen. of U.S.*,
   660 F.3d 196 (3d Cir. 2011)................................................................15

*Shipping & Transit LLC v. Neptune Cigars, Inc.*,
   No. 2:16–03836-AG-SS, Dkt. No. 25 (C.D. Cal. Sept. 12, 2016)............4

*Synopsys, Inc. v. Risk Based Security, Inc.*,
   __ F.4th __, 2023 WL 4009505 (4th Cir. June 15, 2023)........................5

*Tessera, Inc. v. Int'l Trade Comm'n*,
   646 F.3d 1357 (Fed. Cir. 2011)...........................................................9

*TransCore, LP v. Elec. Transaction Consultants Corp*,
   563 F.3d 1271 (Fed. Cir. 2009)........................................................7, 8

*Verzani v. Costco Wholesale Corp.*,
   641 F.Supp.2d 291 (S.D.N.Y. 2009)...................................................11

*Widerman v. Spark Energy, Inc.*,
   2020 WL 1862319 (S.D.N.Y. Apr. 14, 2020).......................................18

**Statutes**

35 U.S.C. § 271 .....................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...........................................................................3

Fed. R. Civ. P. 12(b)(6).........................................................................19

Fed. R. Civ. P. 15(d) .......................................................................17, 18

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1
**MEMORANDUM OF POINTS AND AUTHORITIES**

2
## I.  INTRODUCTION

3    In Defendants' motion, Comcast Cable Communications Management, LLC
4 ("Comcast   Management");   Comcast   Corporation;   and   Comcast   Cable
5 Communications, LLC (collectively, "Comcast") take an extraordinary position.
6 Comcast asserts that it acquired a license to practice and exploit every patent, every
7 trademark, every copyright, and every trade secret belonging to MaxLinear, Inc.
8 ("MaxLinear") and MaxLinear Communications LLC ("MaxLinear LLC"). That would
9 be a license of breathtaking scope—a literal selling of the farm.

10    Where is this vast license to be found?



16    For such crumbs, MaxLinear gave Comcast an
17 unlimited license to all its patents, trademarks, copyrights, and trade secrets? Comcast's
18 position obviously lacks any basis in commercial reality.

19    Unsurprisingly, Comcast's position also directly conflicts with the plain language
20 of the agreement and its context.

24    As a matter of law, that means it cannot be a license because it
25 has not conveyed any true freedom from suit, *infra* at § III.B. This also is the only
26 commercially reasonable interpretation of the parties' intent. Legally, the personal
27 covenant between MaxLinear and Comcast does not travel, and thus does not bind
28 Entropic. The entire Motion to Dismiss therefore dissolves.

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

Beyond this fatal defect, there are a number of additional reasons Comcast's motion to dismiss should be denied. Perhaps the simplest is that this Court retains jurisdiction regardless of anything that has been argued. Comcast *concedes* that the covenant is conditional. (Defs.' Mot. at 15:13–15.) A *conditional* covenant reserves the right to sue for infringement. Thus, the Court is not deprived of jurisdiction because a case or controversy remains. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282–83 (Fed. Cir. 2010) ("Had Elan retained the right to sue Eon in some instances, then an actual case or controversy may exist.").

This Opposition also discusses three additional legal defects in Comcast's request that this Court agree it cannot even look into the issues presented (nor could any court). These points are: (1) Comcast's acts, as pleaded in Entropic's factual allegations, satisfy the covenant's condition and therefore nullify the covenant altogether; (2) the VSA could not have granted rights to a non-party's intellectual property (MaxLinear LLC), and (3) regardless of everything else, MaxLinear terminated the VSA.

For any or all of these reasons the Court should deny Comcast's motion.

## II.   THE VENDOR SUPPORT AGREEMENT

Because Comcast omits portions of the covenant at issue from its brief (in **bold**), the relevant provision is reproduced below:



**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**



(ECF No. 75–2 ("VSA") § 7.3.)

## III.   ARGUMENT

**A.    This Court has subject matter jurisdiction even if the Court accepts all of Comcast's arguments.**

Before even reaching the substance, Comcast's motion fails to clear the most basic threshold for a Rule 12(b)(1) motion—do any of Comcast's arguments, even if accepted, deprive the Court of subject matter jurisdiction? No. Even Comcast agrees that the covenant at issue is *conditional*. Under settled law, a conditional covenant does not deprive a court of subject matter jurisdiction. Comcast presses forward anyway, with case citations that are…questionable—omitting distinguishing facts. For example:

ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS

| Case | Comcast's Parenthetical | Actual Case Language |
|---|---|---|
| *King Pharms, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010) | ("[C]ovenants not to sue [] for infringement . . . remove any case or controversy . . . .") | "Elan's **broad and unrestricted** covenants not to sue Eon for infringement of the '102 or '128 patents, remove any case or controversy that may have existed between the parties at one point. [collecting cases]. **Had Elan retained the right to sue Eon in some instances, then an actual case or controversy may exist**. . . . Elan, however, did not retain any such rights, and its covenants not to sue confirm that there is no case or controversy between it and Eon." |
| *Shipping & Transit LLC v. Neptune Cigars, Inc.*, No. 2:16–03836-AG-SS, Dkt. No. 25, at 1–2 (C.D. Cal. Sept. 12, 2016) | (dismissing claims with prejudice because covenant not to sue "eliminate[d] any case or controversy based on the patents-in-suit between the parties.") | "Here, Plaintiff has extended to Defendant a covenant not to sue that promises on behalf of itself and all future assignees of the patents not to assert any claims of infringement against Defendant, its affiliates, or assigns. (Dkt. 19, Ex. 1.) **The broad language** of the covenant covers future, as well as past, activity and products. **Plaintiff has disclaimed any patent infringement suit it could possibly bring** against Defendant at this time, and Defendant has not asserted any |

4

|  |  | intent to pursue activity that would expose it to any prospect of infringement liability. Thus, the covenant eliminates any case or controversy based on the patents-in-suit between the parties. ***Defendant does not dispute*** that the covenant divests the Court of jurisdiction to rule on this Motion." |
|---|---|---|

Comcast's low-resolution parentheticals omit the crucial point in those cases—***un***conditional covenants are entirely different animals than conditional ones. "Broad and unrestricted," or "unconditional" covenants divest a court of jurisdiction because unconditional covenants ***extinguish*** any case or controversy. *See, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, (2013) (holding a case is moot, and lacks a case or controversy, when the plaintiff issued an "unconditional and irrevocable" covenant not to sue that was so broad it "render[ed] the threat of litigation remote or nonexistent."). Unconditional covenants eliminate the right to sue for ***infringement***, and with it so goes jurisdiction.

But, one must tread carefully because "a covenant not to sue does not always divest a court of jurisdiction." *AT&T Corp. v. VoIP-Pal.Com, Inc.*, 2021 WL 3773611, at *6 (N.D. Cal. Aug. 25, 2021) (citing *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017)). Instead, "[w]hether a covenant not to sue divests the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

Jurisdiction remains when strings are attached. Where a party has retained a right to sue because a covenant is ***conditional*** or ***restricted***, a case or controversy still exists. *See, e.g.*, *Synopsys, Inc. v. Risk Based Security, Inc.*, __ F.4th __, 2023 WL 4009505, at

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

*6 (4th Cir. June 15, 2023) (finding jurisdiction where a covenant not to sue was "partial, conditional, and revocable" and therefore "d[id] not meet *Already*'s standards"); *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (concluding that a covenant not to sue had not rendered the case moot because it had not "*unconditionally* assure[d] Defendants and their customers that it would never assert [the challenged] claims…against them"); *Revolution Eyewear*, 556 F.3d at 1297–1300 (finding jurisdiction over declaratory judgment action where covenant did not cover future sales of the product at issue and patentee therefore "retain[ed]" the right to sue).[1] Entropic has not located any authority to the contrary, and Comcast cites none.

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, 2011 WL 13371929 (D. Del. July 18, 2011), is particularly instructive. There, BMS had issued a covenant not to sue but had conditioned that promise "on the accuracy of Mylan's Notice Letter describing its ANDA product." *Id.* at *5. The Court concluded that "[b]y conditioning the covenant on BMS' own view of the accuracy of Mylan's representations, and by reserving to itself the right to sue Mylan for infringement of the [patents] based on Mylan's ANDA as it presently exists, BMS has failed to provide Mylan the certainty to which it is entitled." *Id.* Thus, "[d]espite the covenant, BMS [was] free, at any time, to assert that Mylan's ANDA product infringes the [patents], and BMS may attempt to evade the covenant by contending that BMS believes the representations Mylan made in the Notice Letter were somehow inaccurate." *Id.* Because of these conditions, the Court concluded subject matter jurisdiction existed.

---

[1] *See also Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056, at *20 (S.D. Cal. Aug. 19, 2021); *Carnegie Institution of Wash. V. Fenix Diamonds, LLC*, 2021 WL 3501092, at *3 (S.D.N.Y. Aug. 9, 2021); *ParkerVision, Inc. v. Apple, Inc.*, 2018 WL 11427930, at *4 (M.D. Fla. Apr. 27, 2018); *Barn Light Elec. Co., LLC v. Barnlight Originals, Inc.*, 2015 WL 1281928, at *2 (M.D. Fla. Aug. 21, 2015); *Perfectvision Manufacturing, Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1092 (E.D. Ark. June 10, 2013); *Hitachi Koki Co., Ltd. v. Techtronic Indus. Co. Ltd.*, 2013 WL 10110347, at *3–4 (N.D. Ga. Feb. 6, 2013); *SanDisk Corp. v. Mobile Media Ideas LLC*, 2011 WL 1990662, at *3 (N.D. Cal. May 23, 2011); *Heartland Rec. Vehicles, LLC v. Forest River, Inc.*, 2010 WL 497327, at *6 (N.D. Ind. Feb. 4, 2010); *FieldTurf USA, Inc. v. Sports Const. Grp., LLC*, 507 F. Supp. 2d 801, 808 (N.D. Ohio Aug. 15, 2007).

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1    Here, there is no dispute that the covenant is conditional, and does not irrevocably

2   bar suit. The covenant is subject to at least two conditions. First—and here Comcast

3   agrees— ██████████████████████████████████████████████████████████

4   ████████████████████████████████████ (*See* Defs.' Mot. at 26:15–

5   16.) (Indeed, this has in fact happened, as discussed *infra* at §§ III.D; III.F.) Second, ███

6   ████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████ Thus,

8   as in *BMS*, MaxLinear is, and has been, free to sue Comcast for patent infringement at

9   any time. Both of these conditions—as well as the numerous other disputes between the

10  parties concerning the validity, scope and applicability of this agreement, and

11  Comcast's ongoing patent infringement—provide a case or controversy between the

12  parties. Subject matter jurisdiction exists as a matter of law, and the Court's inquiry can

13  stop here.[2]

14       **B.    The covenant is not a license that runs with the patents, but rather a**

15              **conditional covenant.**

16       In a related but not identical point, by its plain language, the VSA covenant

17  confers no license. It therefore does not travel with the patents to bind the new owner

18  Entropic. By definition, a license conveys "freedom from suit." *TransCore, LP v. Elec.*

19  *Transaction Consultants Corp*, 563 F.3d 1271, 1275 (Fed. Cir. 2009). But Comcast

20  concedes that the VSA does not go that far— █████████████████████████████

21  ████████████████████████████ (Defs.' Mot. at 25:26.) Thus,

22  the covenant does ***not*** convey a freedom from suit for patent infringement because

23  MaxLinear always retained the ability to sue Comcast for patent infringement (not

24  merely breach of contract). That would be impossible if the covenant was equivalent to

25

26

───────────────

27  [2] For this reason, Comcast has not cleared its initial burden of "den[ying] or
    controvert[ing] the pleader's allegations of jurisdiction," *Cedars-Sinai Med. Ctr. V.*
    *Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993), because all of its arguments still do not

28  amount to the extinction of a case or controversy sufficient to deprive this Court of
    subject matter jurisdiction.

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

a license—as unconditional covenants not to sue are—because, once acts of infringement are authorized, a license cannot be nullified to de-authorize them.

Begin with first principles: a patent "does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude." *TransCore*, at 1275. "It follows, therefore, that a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit." *Id*. For this reason, the Supreme Court and the Federal Circuit "on numerous occasions" have "explained that a non-exclusive patent license is equivalent to a covenant not to sue." *Id*. (collecting cases).

The reverse, however, is not necessarily true—not just any "covenant not to sue" is equivalent to a non-exclusive patent license. The key question, regardless of the particular language used, is whether the contract provision is "properly viewed as [an] authorization[]." *TransCore*, 563 at 1276; *see also* 35 U.S.C. § 271 ("[W]hoever ***without authority*** makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."). Here, the answer plainly is no—no act, which otherwise would be infringement, is "authorized." MaxLinear did not surrender its right to sue Comcast for infringement—all parties here agree the opposite is true: MaxLinear retained that right at all times.

The ultimate focus on authorization explains why *TransCore*—and every other case that Comcast cites and Entropic has located—specifies that an "***unconditional*** covenant not to sue" is equivalent to a nonexclusive patent license. *See TransCore*, 563 at 1276; *see also Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *5 (N.D. Cal. July 2, 2013) ("Under federal law, there is no substantive difference between an unconditional covenant not to sue and a non-exclusive license."). In contrast, a ***conditional*** covenant, like this one, does not authorize any act of infringement because the patentee is retaining at least some right to sue, across all rights in the Patent Act. Such a contract provision is not a license because it does not convey freedom from suit.

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

A license *must* convey a freedom from suit—and if such "freedom" is retroactively revocable, there is no freedom at all.

Notice this principle is consistent with others: for example, this is why a breach of a patent license does not revive past claims of patent infringement—any remedy lies solely in contract. *See Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374 (2017) (holding that licensor may not sue licensee for patent infringement based on breach of licensing agreement because "whatever rights [licensor] retained are a matter of the contracts with its purchasers, not the patent law"); *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) ("That some licensees subsequently renege or fall behind on their royalty payments does not convert a once authorized sale into a non-authorized sale. Any subsequent non-payment of royalty obligations arising under [the licenses] would give rise to a dispute with Tessera's licensees, not with its licensee's customers.").

A license surrenders infringement claims once and for all—an authorized act cannot subsequently and retroactively be de-authorized. Holding otherwise would create an "absurd result [that] would cast a cloud of uncertainty over every sale, and every product in possession of a customer of the licensee, and would be wholly inconsistent with the fundamental purpose of patent exhaustion—to prohibit postsale restrictions on the use of a patented article." *Tessera*, 646 F.3d at 1370.

Here, Section 7.3 is conditional. ███████████████████ Comcast admits that it does. The covenant thus is conditional, and not an authorization of infringement or forbearance from suit. As a result, it cannot be a license and thus grants no rights to use any patent, meaning Entropic is not bound. *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) (only legal encumbrances on the right to use are "deemed to 'run with the patent'"). The Court consequently has always had subject matter jurisdiction.

---

9

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1
2

**C.     The plain language and context of the VSA is consistent with the legal
reality that Section 7.3 is not a license.**

3       The remainder of the VSA, and its context, is consistent with the legal reality that

4   Section 7.3 cannot function as a license:



5       • The VSA recites its purpose at the outset:

7                                                    This is not an IP license.

25       This evidences an intent for each party to maintain the rights to their IP.

26

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 *See Verzani v. Costco Wholesale Corp.*, 641 F.Supp.2d 291, 299

4 (S.D.N.Y. 2009) (rendering terms meaningless or entire provisions

5 surplusage is not permissible).

6 • Neither party behaved afterward as though the VSA was a license. A few

7 months after the VSA, MaxLinear assigned patents, including those in-suit

8 to Entropic ███████████████████████████████████

9 ████ (FAC ¶¶ 34–35.) Meanwhile Comcast, ██████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████

13 █████████████

14     Comcast's position is extreme. Comcast asserts that it is permitted to take any

15 liberty with MaxLinear's IP—for example, the moment the VSA was signed, it could

16 manufacture and sell ***counterfeit*** MaxLinear products (using MaxLinear's patents,

17 copyrights and trade secrets too, if it wants) because it is immune from suit. And even

18 more extraordinarily, Comcast says it can continue to do so because even though

19 counterfeiting would be as willful as any trademark infringement could be, it wouldn't

20 nullify the covenant in Comcast's view because it was not pre-existing conduct.

21     In summary, the only reasonable interpretation of the VSA is that while it may

22 postpone IP infringement suits (for patent, trademark, copyright, or trade secret), it does

23 not surrender them. *See In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (2003)

24 (courts should not interpret contracts in a way that leads to "absurd" or "commercially

25 unreasonable" results). MaxLinear granted, as part of being Comcast's vendor,

26 a conditional delay of suit during the parties' business relationship. The obligation is

27 solely on the part of MaxLinear, it applies solely to Comcast, and it may be nullified

28 when it becomes incompatible with the business partnership (*e.g.*, willful infringement,

or the end of the partnership.) Such a provision is not a license and therefore is not an encumbrance of any patent that travels, because no rights to practice any patent have been conveyed. Entropic thus is not subject to this provision and retains all rights to sue Comcast for patent infringement.

### D. Even if the covenant travels, its condition has been triggered and the covenant therefore has been nullified.

Even if the Court concludes that the provision is a license that runs with the patents, it still is inapplicable and no bar to jurisdiction because the express condition has been triggered, nullifying the provision. ████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ That condition has been triggered here—(*see* FAC ¶¶ 60–104)—and the covenant not to sue therefore has been "nullified." (ECF No. 51–1 (Defs.' First Mot.) at 20:4–11.)

As an initial matter, covenants not to sue must be strictly construed against the party asserting them. *Colton v. New York Hosp.*, 414 N.Y.S.2d 866, 874 (Sup. Ct. 1979); *see also Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 383 (S.D.N.Y. 2005) ("For a document to constitute a release from liability, it must contain an explicit, unmistakable and unequivocal statement by one party that it intends to abandon its right to prosecute a present or future claim against the other party."). Also, as the clear drafter of the agreement,[3] any ambiguities in the VSA must be construed against Comcast. *Computer Assocs. Int'l, Inc. v. U.S. Balloon Mfg. Co.*, 782 N.Y.S.2d 117, 119 (2004) ("[A]ny ambiguity in contract language must be construed against the party that drafted the contract.").

By its own plain language, ██████████████████████████████████████ ██████████████████████████████ The parties do not dispute that the condition, if triggered, nullifies the covenant. Instead, the parties dispute only the scope of this

---
[3] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

condition; specifically whether *when* such willful infringement must have occurred and the *scope* of the nullification. Comcast asserts that the condition "applies only to willful infringement that occurred before the effective date of the VSA—August 1, 2020—and only on a patent-by-patent basis." (Defs.' Mot. at 25:8–11.) Both assertions contradict the plain language. Instead, the only reasonable interpretation is that any willful patent infringement, at any time, triggers the condition and nullifies the covenant.

**Willful infringement of any patent triggers the condition.** The provision is ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████  The use of the singular "a" is unambiguous. So unambiguous that Comcast itself agreed until Entropic filed its amended complaint:

| First 12(b)(1) Motion | Second 12(b)(1) Motion |
|---|---|
| ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ████████ | Thus, CCM and its affiliates cannot be sued on a MaxLinear or MaxLinear affiliate patent to the extent CCM or its affiliates had not willfully infringed that patent at the time the parties entered into the VSA. |

(*See* Defs.' First Mot. at 9:18–21; Defs. Mot at 15:13–17.) If the parties intended for the willful infringement provision to apply on a case-by-case basis, they would (and could) have stated as much. Indeed, throughout the contract, when a condition was intended to have a specific scope, the parties so stated it. For example, ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

13

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**



Comcast's other arguments are unavailing.

Second,

Finally, Comcast asserts that Entropic's interpretation would lead to "nonsensical results," specifically that "if Comcast was willfully infringing a single patent, but did not know that patent was MaxLinear's, … Comcast would unwittingly forfeit the covenant's protection . . . ." (Defs.' Mot. at 26:28–27:1–2.) The obvious problem with this argument is that there is nothing "unwitting" about willful patent infringement. Willful patent infringement, by definition, requires knowledge of the patent (and hence, it is difficult to follow Comcast's reasoning that it could willfully infringe a patent but

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1  be unaware it was MaxLinear's—MaxLinear's name is on the front of the patent) and

2  knowledge of infringement. The most reasonable interpretation is that MaxLinear

3  would have no interest in continuing to extend any protections whatsoever to a party it

4  discovers is willfully infringing its intellectual property (and who refuses to negotiate a

5  license).

6       **Willful infringement at any time triggers the condition.** The condition also

7  applies to any willful infringement that occurs or has occurred, either before or after the

8  execution date. This is the ordinary meaning of the phrase "have not" because the

9  present perfect tense "refers to (1) a time in the indefinite past . . . , or (2) a past action

10 that comes up to and ***touches the present***." *Debrova v. Holder*, 607 F.3d 297, 301 (2d

11 Cir. 2010); *see also Santo-Reyes v. Att'y Gen. of U.S.*, 660 F.3d 196, 199 (3d Cir. 2011)

12 ("The present-perfect tense refers to an action that is now completed, or continues up to

13 the present."). The present is today. The plain language of the condition, and its context,

14 indicates that the parties did not intend for the condition to be frozen at the time of

15 execution, but rather a continuing condition that MaxLinear will delay suit only so long

16 as Comcast does not willfully infringe its intellectual property.

17      Comcast complains that this interpretation would allow MaxLinear to

18  ███████████████████████████████████████████████████████████████

19  ███████████████ (Defs.' Mot. at 25:26–26:1.) ███████████████████

20  ███████████████████████████████████████████████████████████████

21  ███████████████████████████████████ Instead, this provision

22 is most reasonably viewed in this respect as an anti-'quick draw' provision. If

23 MaxLinear discovers that Comcast is infringing its intellectual property, this condition

24 encourages MaxLinear to inform Comcast of that infringement and then the parties

25 would negotiate a license—as one would expect business partners to do.

26      In sum, Entropic has sufficiently alleged that Comcast willfully infringed

27 MaxLinear patents both pre- and post-execution of the VSA, and that such infringement

28  ███████████████████████████████. (FAC ¶¶ 55, 60–104.) Those allegations are

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

detailed and plausible. Conclusively determining the extent of Comcast's willful infringement, as Comcast appears to demand, is inappropriate at this stage and would require voluminous discovery (discovery that would substantially overlap with the merits of the case) in order for the Court to make the findings of fact that Comcast wants. To the extent the Court adopts any of Comcast's interpretations, which have changed even between Comcast's motions, the Court should permit Entropic leave to further amend the complaint. Specifically, newly discovered facts after the First Amended Complaint have established a good faith basis for more factual allegations as to willful infringement of additional patents.

### E. The VSA could not have conveyed rights to a non-party's intellectual property without evidence supporting that conclusion.

As Comcast concedes, many of the asserted patents were owned by MaxLinear LLC, not MaxLinear, Inc., before they were transferred to Entropic.[4] MaxLinear LLC was not a party to the VSA. And there is no evidence in the record that MaxLinear possessed any rights or interests to intellectual property owned by MaxLinear LLC.

It is well settled that a parent company cannot grant a license to its subsidiary's patent without an express ownership interest in the patent. *See Quantum Corp. v. Riverbed Tech., Inc.*, 2008 WL 314490, at *3 (N.D. Cal. 2008) (finding that a parent company's agreement purporting to grant an exclusive license to "all patents . . . owned by [it] and its subsidiaries" was ineffective to transfer *any* rights in its subsidiary's patent where the agreement was not executed by the subsidiary itself). Indeed, absent an appropriate written assignment transferring legal title from one to the other, a parent company "cannot be deemed to have equitable title to the patent merely because it owns and exercises control over its subsidiary." *See Digitech Image Techs., LLC v. Newegg Inc.*, 2013 WL 1871513, at *4 (C.D. Cal. May 3, 2013). Nor can the parent company be found to have legal ownership of its subsidiary's patent. *See Digitech*, 2013 WL

---

[4] Specifically, all of the asserted patents in the 1048 case, and the '775 and '690 patents, were owned by MaxLinear LLC. (Defs.' Mot. at 21:8–14.)

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1871513, at *4 ("The fact that a corporate parent's subsidiary owns a patent is not
enough to establish that the parent has a *legal* ownership interest in the subsidiary's
patent.") (emphasis provided).

Because there is no evidence in the record that MaxLinear had any ownership
interest in MaxLinear LLC's patents, or had the authority to convey any rights to those
patents, Comcast's motion must be denied as to those patents.

**F.   The VSA does not deprive this Court of jurisdiction because it has
been terminated.**

Even if the Court determines that the covenant travels with the patents, and even
if the Court determines that the covenant's conditions have not been satisfied, the Court
nonetheless should deny the motion and either deem Entropic's FAC as a supplemental
pleading under Rule 15(d) or grant Entropic to file such a supplemental pleading. ████
████████████████████████████████████████████████████████
████████████████████████████████

Unsurprisingly, Comcast is not happy about losing what it asserts is a free license
to a trove of IP, and therefore baldly asserts this termination was "ineffective." The
applicable law (of New York) disagrees. A contract that is terminated . . . is terminated,
regardless of whether that termination was wrongful or permitted under the contract.
*See, e.g.*, *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 706 F. Supp.
2d 350, 360 (S.D.N.Y. 2009) ("Under New York law, timely notice that violates the
terms of the contract is proper so long as it is actually received and no prejudice
results."); *see also id.* (collecting cases in accord that wrongful termination still
terminates the contract).

Wrongful termination of a contract does not prevent termination, it is merely a
breach. *See Mayweather Promotions, LLC v. PAC Entertainment Worldwide LLC*, 2022
WL 3997014, at *8 (S.D.N.Y. Sept. 1, 2022) ("A claim for wrongful termination is
nothing more than a sub-species of a breach of contract or in fact a breach of contract
itself."). Any remedy Comcast possesses therefore lies against MaxLinear, in contract.

17

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1    There is no remedy against Entropic. *See Widerman v. Spark Energy, Inc.*, 2020 WL
2    1862319, at *5 (S.D.N.Y. Apr. 14, 2020) ("It 'is black letter law that non-parties [to a
3    contract] ordinarily cannot be held liable for a breach of contract.'"). But whatever may
4    come between Comcast and MaxLinear, the VSA *is* terminated, and therefore is no
5    impediment to the present suit.

6           Indeed, while Comcast has a pending lawsuit against MaxLinear for breach of
7    contract, notably Comcast has made no argument to that Court for a (legally impossible)
8    order that the VSA should be un-terminated. Neither did Comcast plead for specific
9    performance of Section 7.3—it plead for specific performance only for the support
10   services MaxLinear allegedly promised. *See Comcast Cable Communications*
11   *Management, LLC v. MaxLinear, Inc.*, Case No. 1:23-cv-04436-AKH (S.D.N.Y. 2023).

12          So the VSA is terminated. The effect is that the covenant at issue is no longer in
13   effect. Comcast makes no argument that the covenant included in the VSA survives
14   termination. Nor could it. ████████████████████████████████████████████
15   ████████████████████████████████████████████████████████████████████
16   ██████████████

17          Because the VSA is now terminated, and there can be no dispute that there
18   *presently* is subject matter jurisdiction. A supplemental pleading under Rule 15(d)—
19   which could take the form of deeming Entropic's FAC as a Rule 15(d) pleading or
20   granting leave for Entropic to file such a pleading—cures any alleged deficiency. *See,*
21   *e.g., Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044–46 (9th Cir.
22   2015), as amended on denial of reh'g and reh'g *en banc* (Apr. 28, 2015).

23          **G.    To the extent the Court finds any ambiguity, Entropic requests**
24                  **jurisdictional discovery.**

25          As addressed above, Entropic believes that the plain language and intent of the
26   parties is clear. But, to the extent the Court determines that the intent of the parties is
27   ambiguous, the Court should, in its discretion, permit limited jurisdictional discovery
28   on these issues. Specifically, such discovery should focus on whether MaxLinear

intended to license its entire IP portfolio, including its trademarks, for the mere prospect of a SOW. Similar discovery already is proceeding in SDNY and the Court should have access to the same facts.

### H.   Entropic's willfulness allegations are sufficient under Rule 12(b)(6).

Comcast's Motion essentially argues that Entropic needs to prove the entirety of its willfulness allegations at the pleading stage. It does not. The FAC sufficiently addresses and plausibly asserts Comcast's willful infringement of Entropic's patents; thus, Comcast's Motion should be denied.

Federal notice pleading "only requires that [plaintiff's] complaint give notice to the defendant of the general basis of the plaintiff's claims." *Intervention911 v. City of Palm Springs*, 2018 WL 1441167, at *9 (C.D. Cal. Mar. 22, 2018). Indeed, *MONEC Holding*, which Comcast relies on in its Motion, states that "[a]t the pleading stage, 'the question before the Court on defendants' motion to dismiss is whether [the plaintiff] has plead sufficient facts . . . for the Court to infer that the defendants had knowledge of [the plaintiff's] patents and that their products infringed on those patents.'" See *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp.2d 225, 229 (D. Del. 2012) (emphasis provided) (citations omitted). Because Entropic has alleged that Comcast willfully infringed Entropic's patents with enough particularity to give notice of the basis of its claims, Entropic's Complaint is sufficient to meet the liberal notice pleading standard and, accordingly, is sufficient to overcome Comcast's Motion to Dismiss. *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1243 (C.D. Cal. 2014) ("One must be mindful not to require a plaintiff to prove its case at the pleadings stage.").

The FAC alleges a large number of factual allegations as to Comcast's willful infringement. These factual allegations are detailed and specific, and far above that required to put Comcast on notice of Entropic's claims.

First, the FACs set forth a series of allegations showing that Comcast invested in Entropic Communications, Inc. in 2003, and again in 2006, resulting in knowledge of

19

its patents. (FAC ¶ 74.) The FACs plausibly allege that Comcast substantively reviewed and analyzed Entropic Communications, Inc.'s patents and patent applications as part of its due diligence prior to investing. (FAC ¶ 75.) Because several of the applications for the Asserted Patents were filed prior to 2006 (the "Pre-Investment Patents"), Entropic alleges that Comcast substantively reviewed the Pre-Investment Patents before 2006 and therefore had knowledge that it was infringing such Pre-Investment Patents when Comcast began its deployment of MoCA standard-compliant devices and offering its cable modem products and services. (FAC ¶¶ 76–77.) Entropic also alleges that Comcast had knowledge that these patents ultimately issued. (FAC ¶ 78.)

Second, the FACs allege that, upon information and belief, Comcast had prior notice of at least four patent infringement suits brought by Entropic or its predecessor that would have put Comcast on notice of the Asserted Patents *and* Comcast's infringement. Specifically, the FACs allege that Comcast was aware of Entropic's patent infringement suit against (1) Charter Communications, Inc., (2) Dish Network Corporation, DISH Network, LLC, and Dish Network Service, LLC, (3) DirecTV, LLC, AT&T, Inc., AT&T Services, Inc., and AT&T Communications, LLC; and (4) ViXS Systems, Inc. and ViXS USA, Inc. (FAC ¶¶ 61, 68–69, 81.) Each suit asserted infringement relating to one or more of the Asserted Patents and involves accused products or services substantially similar or identical to Comcast's own products and services, such that Comcast's knowledge of infringement in those cases would immediately implicate its own infringement. *See id.* Entropic alleges that Comcast reviewed the claims in each suit, analyzed its own products, and determined it infringed. (FAC ¶¶ 61–70, 80–84.)

Third, the FACs allege that "one of the inventors of the '008 Patent and '826 Patent . . . was Patrick Tierney" and "Mr. Tierney now works at Comcast." (FAC ¶ 103.) Thus, the FACs alleged that upon information and belief, "Comcast knew of the aforementioned Patents-in-Suit as early as the day Mr. Tierney was hired." (*Id.*) Comcast admits that Mr. Tierney was employed by Comcast, yet attempts to quickly

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

dispose of the issue in a footnote, arguing that Mr. Tierney's knowledge does not provide a basis for Comcast to have knowledge of Entropic's patents. (Defs.' Mot. at 32:14, n. 20.) However, Entropic's allegations to the contrary are sufficient to overcome a motion to dismiss, as Entropic is not required to prove its case at the pleading stage and without the benefit of discovery. Accordingly, Entropic's allegations at this stage are sufficient to support a reasonable inference that Comcast had knowledge of the Asserted Patents through Mr. Tierney.

Finally, the FACs also demonstrate that Comcast had knowledge of and willfully infringed U.S. Patent Nos. 10,075,333, 10,285,116, 9,178,765, and 9,419,858, all of which are part of or in the same family of certain Asserted Patents. (FAC ¶ 73.) Each of the aforementioned patents were cited in a non-final rejection during prosecution of Comcast's patent applications. *See id.* Comcast attempts to side-step the issue, arguing that because the aforementioned patents are not asserted in this action, "they are irrelevant to the willfulness exemption." (Defs.' Mot. at 35:16–17.) Not so. The FACs sufficiently allege that Comcast substantively reviewed each of the cited patents, which are part of or in the same family of certain Asserted Patents, and thus had knowledge of and subsequently willfully infringed such Asserted Patents. (*See* FAC ¶ 73.)

These allegations far exceed Entropic's burden at this stage to make plausible factual allegations that put Comcast on notice of the claims against it. Indeed, Entropic has provided voluminous and detailed allegations of both Comcast's knowledge of patents and its specific knowledge that it infringes those patents.

## IV.   <u>CONCLUSION</u>

In light of the foregoing, Comcast's Motion should be denied.

Dated: June 30, 2023                  Respectfully submitted,

By: */s/ Christina Goodrich*
Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
K&L GATES LLP

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

James A. Shimota *(admitted pro hac vice)*
jim.shimota@klgates.com
George C. Summerfield *(admitted pro hac vice)*
george.summerfield@klgates.com
K&L GATES LLP
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Facsimile: (312) 827-8000

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Entropic Communications, LLC, certifies that this brief contains 6,956 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 30, 2023

Respectfully submitted,

By: */s/ Christina Goodrich*
Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

James A. Shimota *(admitted pro hac vice)*
jim.shimota@klgates.com
George C. Summerfield *(admitted pro hac vice)*
george.summerfield@klgates.com
K&L GATES LLP
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Facsimile: (312) 827-8000

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

23

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**