1  Krishnan Padmanabhan (SBN: 254220)
2  kpadmanabhan@winston.com
   **WINSTON & STRAWN LLP**
3  200 Park Avenue
   New York, NY 10166
4  Telephone: (212) 294-6700
   Facsimile: (212) 294-4700

5  Attorneys for Comcast Defendants

6  (*Additional counsel information omitted*)

7

8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                   **SANTA ANA DIVISION**

13  ENTROPIC COMMUNICATIONS,        **No. 2:23-cv-1048-JWH-KES**
    LLC,                            **No. 2:23-cv-1050-JWH-KES**
14
              Plaintiff,           Assigned to Hon. John W. Holcomb
15
         v.                        **COMCAST'S REPLY IN SUPPORT OF**
16                                 **MOTION TO DISMISS UNDER FED.**
    COMCAST CORPORATION;           **R. CIV. P. 12(B)(1) OR 12(B)(6) IN THE**
17  COMCAST CABLE                  **ALTERNATIVE**
    COMMUNICATIONS, LLC; AND
18  COMCAST CABLE
    COMMUNICATIONS                 Date: July 21, 2023
19  MANAGEMENT, LLC,               Time: 9:00 a.m.
                                   Courtroom: 9D
20           Defendants.

21                                 REDACTED VERSION OF DOCUMENT
                                   TO BE FILED UNDER SEAL
22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ..................................................................................... 6

II.   ARGUMENT ............................................................................................ 7

    A.   Comcast remains authorized to practice the asserted patents because the covenant travels with the patents. ........................................................ 7

    B.   Entropic's distinction between unconditional and conditional covenants is unsupported by any case law and irrelevant. ........................ 8

    C.   Under New York law, the covenant applies to patents of MaxLinear, Inc. and its affiliates including MaxLinear LLC ........................................ 9

    D.   Under New York law, the VSA has not been terminated ........................ 11

    E.   The willfulness exemption does not "nullify" the covenant ................... 12

    F.   Entropic concedes most of its willfulness allegations are implausible and provides no legal support for the remainder ..................................... 14

    G.   Jurisdictional discovery is unwarranted .................................................. 16

    H.   A supplemental pleading would not cure these deficiencies ................... 17

III.  CONCLUSION ........................................................................................ 17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4 *AT&T Corp. v. VoIP-Pal.Com, Inc.*,
2021 WL 3773611 (N.D. Cal. Aug. 25, 2021)........................................................9

5 *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
2011 WL 13371929 (D. Del. July 18, 2011)..........................................................8

6
7 *Comcast Cable Comm'cns Mgmt., LLC v. MaxLinear, Inc.*,
1:23-cv-4436, Dkt. 10 (S.D.N.Y. May 30, 2023)................................................12

8 *Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
954 F. Supp. 2d 199 (S.D.N.Y. 2013)..................................................................10

9
10 *CopyTele, Inc. v. E Ink Holdings, Inc.*,
962 F. Supp. 2d 1130 (N.D. Cal. 2013)................................................................17

11 *Digitech Image Tech., LLC v. Newegg Inc.*,
2013 WL 1871513 (C.D. Cal. 2013)....................................................................10

12 *Doosan Infracore Co., Ltd v. Ingersoll-Rand Co. Ltd.*,
2011 WL 11821022 (N.Y. Sup. Ct. Mar. 15, 2011).............................................10

13
14 *E. Empire Constr. Inc. v. Borough Constr. Grp. LLC*,
200 A.D.3d 1, 3 (2021).........................................................................................11

15 *Ellington v. EMI Music, Inc.*,
21 N.E.3d 1000 (N.Y. 2014).................................................................................16

16
17 *Engasser v. Tetra Tech, Inc.*,
519 F. Supp. 3d 703 (C.D. Cal. 2021)..................................................................14

18 *Gassman v. Rothlein*,
713 N.Y.S.2d 208 (N.Y. App. Div. 2d Dep't 2000)............................................16

19
20 *Induction Innovations, Inc. v. Pacholok*,
2014 WL 4922350 (N.D. Ill. 2014).......................................................................9

21 *Intervention911 v. City of Palm Springs*,
2018 WL 1441167 (C.D. Cal. Mar. 22, 2018) ...............................................14, 15

22 *Keane v. Zitomer Pharmacy, Inc.*,
2010 WL 624285 (S.D.N.Y. Feb. 23, 2010) ........................................................17

23
24 *King Pharms., Inc. v. Eon Labs, Inc.*,
616 F.3d 1267 (Fed. Cir. 2010) .............................................................................9

25 *Lepton Labs, LLC v. Walker*,
55 F. Supp. 3d 1230 (C.D. Cal. 2014)..............................................................14, 15

26
27 *Lister v. R & R Menswear, Ltd.*,
2013 N.Y. Slip Op. (N.Y. Sup. Ct. 2013)............................................................14

28

*MedImmune Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)......................................................................................8

*MONEC*,
    2012 WL 4340653 (D. Del. Sept. 20, 2012) ......................................15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012) ...........................................14, 15

*Morongo Band of Mission Indians v. California State Bd. of
    Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ..................................................................17

*New Image Const., Inc. v. TDR Enterprises Inc.*,
    74 A.D.3d 680 (2010) ......................................................................................11

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015) ..................................................................17

*Organic Seed Growers and Trade Ass'n v. Monsanto Co.*,
    718 F.3d 1350 (Fed. Cir. 2013) ...................................................................9

*Orthopaedic Hosp. v. Encore Med. L.P.*,
    2022 WL 254956 (S.D. Cal. Jan. 27, 2022) ...................................15, 16

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    2014 WL 3844626 (E.D.N.Y. Apr. 30, 2014), *aff'd*, 839 F.3d 125 (2d
    Cir. 2016) ..............................................................................................................11

*Quantum Corp. v. Riverbed Tech., Inc.*,
    2008 WL 314490 (N.D. Cal. 2008) ..........................................................10

*Radware, Ltd. v. A10 Networks, Inc.*,
    2013 WL 5373305 (N.D. Cal. 2013) .......................................................16

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    556 F.3d 1294 (Fed. Cir. 2009) ...................................................................9

*Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers Of N.J.*,
    2009 WL 1154094 (S.D.N.Y. Mar. 19, 2009)....................................11

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
    706 F. Supp. 2d 350 (S.D.N.Y. Nov. 5, 2009) ...................................11

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    2023 WL 4009505 (4th Cir. 2023) ...........................................................9

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) ..............................................................7, 8

*Vectura Ltd. v. GlaxoSmithKline LLC*,
    2019 WL 1352767 (D. Del. Mar. 26, 2019).......................................7, 8

**Statutes**

Declaratory Judgment Act .......................................................................8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Other Authorities**

Fed. R. Civ. P. § 12(b)(1) ............................................................6, 9, 13, 14

Fed. R. Civ. P. § 15(d) ...........................................................................17

COMCAST'S REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 2:23-CV-1048-JWH-KES / NO. 2:23-CV-1050-JWH-KES

## I.  INTRODUCTION

Comcast deploys to its customers ████████████████████ ████████████████████. Given the size of this footprint, it is only natural that MaxLinear and Comcast would enter into the "Vendor Support Agreement" ("VSA") to ensure that those millions of MaxLinear devices deliver the ████████ and ██████ on which Comcast and its customers rely. And contrary to Entropic's attorney argument, there is nothing unusual about a vendor, like MaxLinear, assuring a major customer, like Comcast, that it would not be sued for patent infringement during the course of their relationship.[1]

On the other hand, what is extraordinary is MaxLinear's attempt to evade its obligation to Comcast by transferring its patents to a monetization entity—Entropic—while retaining a financial stake in Entropic's assertion against Comcast. Neither law nor equity supports MaxLinear's attempt to avoid the covenant by hiding behind its patent assertion proxy, Entropic.

To avoid having its impermissible case dismissed, Entropic relies on a litany of superficial arguments, none of which survives legal or factual scrutiny, let alone satisfies Entropic's burden under Rule 12(b)(1). Entropic argues that the covenant does not travel with the patents because it is "conditional." Entropic is wrong. The case law is clear; MaxLinear and its affiliates did not possess the right to sue Comcast on any of the asserted patents, and thus could not convey that right to Entropic. And Entropic's argument that any "condition" in the covenant preserves subject-matter jurisdiction—even if that "condition" is irrelevant or not satisfied—is unsupported by the case law.

Entropic's argument that MaxLinear, Inc. ("MaxLinear") could not grant a covenant with respect to patents held by its wholly owned subsidiary MaxLinear Communications LLC ("MaxLinear LLC") also fails. Entropic conveniently ignores New York contract law, which explicitly states the opposite, as well as the express

---

[1] Without any case law support, Entropic argues, incorrectly, that the VSA and SOW contain no consideration. Comcast addressed this in its opening brief (Dkt. 82-1, at 24 n. 14). Entropic fails to respond to Comcast's case law or argument.

language in the VSA that directly refutes Entropic's argument. Entropic's other arguments are similarly contrary to law and belied by the facts. Even after amending its complaint, Entropic is still unable to marshal any plausible willfulness allegation for any asserted patent, and thus cannot trigger the willfulness exemption. Indeed, Entropic even concedes that many of its willfulness allegations are insufficient by failing to defend them in its opposition. And for the few willfulness allegations it does discuss, Entropic fails to cite even a single case finding such allegations plausible, let alone address the sea of cases Comcast cited dismissing such allegations under *Iqbal*.

Lastly, MaxLinear's desperate attempt to terminate the VSA to create jurisdiction for its patent assertion proxy is ineffective under New York law, including under Entropic's own-cited cases. In any event, it serves as an implicit admission that the covenant barred Entropic's claims when these suits were filed, the time at which jurisdiction is assessed. Entropic and MaxLinear cannot undo the covenant simply because it bars their patent monetization scheme. The only correct result is dismissal.

## II.   ARGUMENT

### A. Comcast remains authorized to practice the asserted patents because the covenant travels with the patents.

Entropic argues—without the support of any case law—that licenses run with patents, but that conditional covenants do not. Opp'n at 7. But both parties agree that "an authorization" to practice the patent travels with the patent when transferred. "'[A] non-exclusive patent license is equivalent to a covenant not to sue' and vice versa; 'both are properly viewed as 'authorizations.''" *Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 1352767, *3 (D. Del. Mar. 26, 2019) (quoting *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275–76 (Fed. Cir. 2009)). In *Vectura*, the court found that the defendants were "authorized" to practice the patents-in-suit up to the expiration of the covenant not to sue, and thus no infringement could occur up until that date. *Id.* Here too, MaxLinear granted a covenant not to sue that authorized Comcast to practice the patents of MaxLinear and its affiliates, including each of the asserted

patents, through the expiration of the VSA. As in *TransCore* and *Vectura*, Comcast remains authorized upon the assignment of the asserted patents to Entropic.[2]

### B. Entropic's distinction between unconditional and conditional covenants is unsupported by any case law and irrelevant.

Relying on inapplicable declaratory judgment ("DJ") cases, Entropic manufactures a false axiom—that only unconditional covenants divest a court of subject-matter jurisdiction. Unconditional covenants divest the court of DJ jurisdiction because the "very purpose of the Declaratory Judgment Act [was] to ameliorate" the "dilemma" that "put[s] the challenger to the choice between abandoning his rights or risking prosecution." *See MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (considering jurisdictional issues unique to the Declaratory Judgment Act and Article III's case or controversy requirement). A covenant without any limitations resolves the challenger's dilemma. But it does not logically follow that a covenant containing ***any*** limitations creates a case or controversy,[3] And Entropic's cited cases finding jurisdiction when a patentee provided a contingent assurance, or one that failed to even address the accused products, do not stand for that proposition.

Entropic's exemplary case—*Bristol-Myers*—is illustrative. There, Bristol Myers ("BM"), the patent holder, sought to dismiss the accused infringer Mylan's DJ claims of noninfringement. *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, 2011 WL 13371929, at \*3 (D. Del. July 18, 2011). In response to Mylan's DJ claims, BM sent Mylan a covenant not to pursue infringement claims *if* Mylan's Abbreviated New Drug Application ("ANDA") accurately reflected the composition of Mylan's new drug. *Id.* at \*3–5. BM reserved the right to unilaterally conclude that Mylan's ANDA was "inaccurate," leaving the threat of litigation hanging over Mylan. *Id.* at \*6. But that case has no applicability here where MaxLinear retained no such discretion to sue.

---

[2] Entropic points to remedies in contract that arise when a licensee breaches a license agreement. Opp. at 9. This is not relevant to the issue here, and certainly cannot undo cases like *TransCore* and *Vectura* that answer the exact issue before the Court.
[3] Entropic misrepresents *Shipping & Transit* (Opp'n at 4) to make this logical leap.

1    Entropic's other cases, also DJ actions, fare no better. Entropic quotes *King*
2    *Pharms.* out of context to imply that any retained right creates jurisdiction. Opp'n at 4
3    (citing *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010)). But
4    that quote in *King Pharms.* refers to *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, in
5    which the covenant excluded current products at issue in the case. 556 F.3d 1294, 1300
6    (Fed. Cir. 2009). Here, the covenant extends to Comcast's "purchase, use, or
7    deployment of *any product*." Ex. A § 7.3. (emphasis added) In *AT&T Corp. v. VoIP-*
8    *Pal.Com, Inc.*, the patentee offered a covenant not to sue to end the case and refile in its
9    preferred forum; to forum shop. 2021 WL 3773611, at *9 (N.D. Cal. 2021). In
10   *ArcelorMittal v. AK Steel Corp.*, the patentee conditioned a covenant not to sue on a
11   then-pending motion to amend to add claims; if it was told it could not add claims it
12   would stand down, otherwise it intended to pursue its claims. 856 F.3d 1365, 1368, 1371
13   (Fed. Cir. 2017). Here, there is no such future condition, and in fact, the "have not
14   willfully infringed" language makes clear that the exemption relies entirely on past
15   willfulness for a given patent. Similarly, in *Synopsys, Inc. v. Risk Based Sec., Inc.*, the
16   covenant failed to address the dispute, was vaguely conditioned on future performance,
17   and could be unilaterally withdrawn. 2023 WL 4009505 (4th Cir. 2023).

18   And even in the DJ context, "[a] promise not to sue, even with an exception, will
19   still erase the controversy" if there is no "*non-speculative likelihood*" that the exception
20   will actually apply." *Induction Innovations, Inc. v. Pacholok*, 2014 WL 4922350, at *11
21   (N.D. Ill. 2014) (emphasis added); *Organic Seed Growers and Trade Ass'n v. Monsanto*
22   *Co.*, 718 F.3d 1350, 1360 (Fed. Cir. 2013). Entropic, by contrast, relies on "information
23   and belief" allegations, and fails to satisfy even the plausibility standard, let alone its
24   Rule 12(b)(1) burden, in its attempt to show the covenant is inapplicable.

25       **C. Under New York law, the covenant applies to patents of MaxLinear,**
         **Inc. and its affiliates including MaxLinear LLC**
26

27   Entropic does not dispute that MaxLinear, LLC was (and still is) a wholly owned
28   subsidiary of MaxLinear (Opp'n at 16), that MaxLinear granted Comcast a covenant

1  not to sue "on behalf of [MaxLinear **and all [its] Affiliates**" (together, termed "Vendor
2  Covenanting Party"), or that the covenant extends to all "Vendor Covenanting Party's
3  patent[s]." Ex. A § 7.3 (emphasis added). Instead, Entropic argues that "there is no
4  evidence in the record that MaxLinear had any ownership interest in MaxLinear LLC's
5  patents, or had the authority to convey any rights to those patents." Opp'n at 16–17. But
6  "[a] contract entered by a parent corporation is binding on the subsidiaries when, as
7  here, there is a provision in the contract that explicitly binds them." *Doosan Infracore*
8  *Co., Ltd v. Ingersoll-Rand Co. Ltd.*, 2011 WL 11821022, at *4 (N.Y. Sup. Ct. Mar. 15,
9  2011) (citation omitted). That is because "[a] parent company has the right to dispose
10 of the property of a subsidiary as long as that disposal does not impair the rights of
11 creditors." *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 954 F. Supp. 2d 199, 208
12 (S.D.N.Y. 2013). And contrary to Entropic's argument, "[a] subsidiary need not be a
13 signatory to a document by which a parent disposes of its property." *Id*. The "evidence
14 in the record" (the VSA) supports that MaxLinear intended to bind its wholly owned
15 subsidiary, and that its subsidiary intended to be bound. In fact, MaxLinear represented
16 that it had "full power and authority" to satisfy its obligations under the VSA (VSA §
17 8.1(d)), and MaxLinear's CFO signed both the VSA and MaxLinear LLC's assignment
18 of patents to Entropic. Entropic has not come forward with any evidence to the contrary,
19 notwithstanding the fact that that any "evidence" related to MaxLinear, Inc.'s supposed
20 lack of authority would be available to Entropic if it existed. Op. Br. at 36–37.

21        Entropic cites irrelevant cases addressing whether a parent can assign a sufficient
22 bundle of rights in its subsidiaries' patent to have standing to sue for infringement or be
23 sued for DJ of noninfringement. *See Quantum Corp. v. Riverbed Tech., Inc.*, 2008 WL
24 314490 (N.D. Cal. 2008); *Digitech Image Tech., LLC v. Newegg Inc.*, 2013 WL
25 1871513, at *4 (C.D. Cal. 2013). Here, the question is not whether MaxLinear has
26 standing to sue but whether it could bind its subsidiary MaxLinear, LLC to the covenant.
27 Under New York law, the answer is simple: yes.

28

### D. Under New York law, the VSA has not been terminated

Entropic and MaxLinear are mistaken that the VSA is terminated. By letter dated May 18, 2023, MaxLinear purported to terminate the VSA and SOW, effective immediately, in violation of the VSA's and SOW's termination provisions, each of which includes a notice period prior to termination.[4] Dkt. 83-23.[5] Under New York law, which governs the VSA (and SOW), MaxLinear's termination is ineffective and a breach of the Agreement. *Process Am., Inc. v. Cynergy Holdings, LLC*, 2014 WL 3844626, at *11 (E.D.N.Y. Apr. 30, 2014), *aff'd*, 839 F.3d 125 (2d Cir. 2016) ("A termination that does not comply with contractual requirements is ineffective"); *E. Empire Constr. Inc. v. Borough Constr. Grp. LLC*, 200 A.D.3d 1, 3 (2021) ("[New York] case law is clear that a party's termination is ineffective where the relevant contract provides for a notice to cure and notice is not provided."); *New Image Const., Inc. v. TDR Enterprises Inc.*, 74 A.D.3d 680, 681 (2010) (a purported termination was "ineffective" where terminating party failed to comply with the "contractual prerequisites to termination").

Indeed, Entropic's own-cited case law supports Comcast's position. In *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, the contract at issue required that termination could only take place after a certain date, but the defendant issued a premature notice of "immediate" termination. 706 F. Supp. 2d 350, 356 (S.D.N.Y. Nov. 5, 2009). The court ruled that under New York law defendant's termination was only effective as of the earliest date permitted by the contract, and that "a valid contract still exist[ed]" between the parties until that earliest permissible termination date. *Id.* at 352, 356–57 (explaining that New York relies on the "erroneous date" rule," and that when a termination notice identifies an erroneous termination date it can only effectuate termination as of the first proper termination date); *Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers Of N.J.*, 2009 WL 1154094, at *10 (S.D.N.Y. Mar. 19, 2009)

---

[4] This letter came after Comcast informed Entropic of the covenant not to sue. Entropic represented that MaxLinear had failed to inform Entropic regarding the VSA.
[5] All Dkt. citations are to C.A. 23-cv-1048 unless indicated otherwise.

(holding contract is valid until actual termination). Here, MaxLinear's first possible termination is two years and 90 days from receipt of its supposed termination notice. Dkt. 92 at 15, n. 1 (citing Ex. A, § 11.1; Ex. A, SOW #1 at 3).

Entropic also conveniently ignores that almost immediately after Comcast received MaxLinear's purported termination notice, Comcast sought a temporary restraining order and preliminary injunction in S.D.N.Y. to stop the premature termination and deem it ineffective. *Comcast Cable Comm'cns Mgmt., LLC v. MaxLinear, Inc.*, 1:23-cv-4436 ("SDNY Case"), Dkt. 10 (S.D.N.Y. May 30, 2023). And contrary to Entropic's misrepresentation, Comcast has sought specific performance of both the VSA and SOW *in their entirety* in S.D.N.Y. SDNY Case, Dkt. 1 at 10 (May 26, 2023); *id.*, Dkt. 10 at 10 (May 30, 2023).

## E. The willfulness exemption does not "nullify" the covenant

To invoke the willful infringement exemption, Entropic argues (1) that the VSA's use of "a patent" is unambiguous and means that willful infringement of any patent at any time nullifies the covenant as to all patents, and (2) misrepresents Comcast's first 12(b)(1) motion to argue that Comcast "itself agreed." Neither assertion is correct.

To Entropic's first point, the language of § 7.3 is clear: "to the extent [Comcast] … have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark … [Vendor Covenanting Parties] covenant not to sue [Comcast] for patent, copyright, or trademark infringement as the case may be, with respect to [Comcast]'s purchase, use or deployment of any product or service." Ex. A, § 7.3. This language told Comcast on the effective date of the VSA: MaxLinear and its affiliates will not sue you on patents that Comcast had not willfully infringed. And while Entropic tries to contrast § 7.3 with § 11.3, the better analysis is found within § 7.3 itself. If the contracting parties meant to say "to the extent [Comcast] have not willfully infringed a̶ <u>any</u> Vendor Covenanting Party's patent," then they would have used that language, as the clause

1   uses "any" to extend the covenant to "**any** product or service." Ex. A, § 7.3.[6]

2       Entropic's second point, which Comcast addressed in its response to Entropic's

3   *Ex Parte* Application, is a blatant misrepresentation of Comcast's motions. Comcast's

4   briefing, and Entropic's original and FAC complaints, make clear there is no ambiguity

5   in the covenant or Comcast's positions. *Infra* at 8–9. Entropic's theories of willfulness

6   have changed, first relying on correspondence that post-dates August 2020 in the

7   original complaint, which cannot trigger the willfulness exemption based on its timing

8   alone. Entropic's FACs then added scattershot allegations earlier in time, including an

9   allegation that willfulness on any single patent would void the entire covenant. Comcast

10  addressed this new allegation in its second Rule 12(b)(1) motion. Comcast's position

11  did not change—it simply addressed Entropic's new arguments.

12      And while Entropic insists that the present perfect tense refers to willfulness up

13  to the present day (Opp'n at 15), that would allow MaxLinear to manufacture a

14  willfulness claim to undo the covenant for a given patent, and would render the covenant

15  illusory, contrary to New York law. Entropic offers no case law to support its reading.

16  Entropic's reading also makes no sense. Comcast would only have agreed to a covenant

17  containing the exemption because it had not willfully infringed MaxLinear's patents,

18  and in fact, neither MaxLinear nor any of its affiliates ever said Comcast had done or

19  was doing so. Entropic's wholly implausible willfulness allegations prove the same.

20  And Entropic's infringement allegations further cement the point. Entropic alleges

21  infringement by Comcast's use of Broadcom chips that (i) comply with the MoCA

22  standard and (ii) support high-speed Internet services. MaxLinear has long-known that

23  Comcast uses chips from two vendors—MaxLinear and Broadcom—for MoCA and

---

[6] While Entropic did not want to "belabor the Court" with an explanation of why *Harris Trust* and *Kohl's* are not relevant (Opp. at 14), the reality is that Entropic cannot distinguish them. *Kohl's* is particularly relevant because it involved a vendor (like MaxLinear) that indemnified a customer (like Comcast) "to the extent" the infringement claim was based on the vendor's technology and not Kohl's technology. The Court found that the plain language indicated that even if both the vendor's and Kohl's technology were accused, the vendor would have to indemnify to the degree that the infringement claim could be based on the vendor's technology alone. This limitation did not render the entire indemnification clause ineffective, as Entropic contends.

Internet services, since these are the two primary players in the marketplace. But MaxLinear never accused Comcast of infringing any of the asserted patents (or any patent) based on the use of Broadcom chips prior to filing these lawsuits. If Entropic (and thus MaxLinear) contends that Comcast was willful based on information that MaxLinear has long known, but on which it never provided notice to Comcast, this implies that MaxLinear was hiding in wait and never meant to honor the covenant not to sue, and that MaxLinear intended the covenant to be illusory. This is explicitly barred by New York law. *Lister v. R & R Menswear, Ltd.*, 2013 N.Y. Slip Op., 30563, at \*7 (N.Y. Sup. Ct. 2013). Entropic fails to address this issue. Entropic also misses that the covenant contemplates this exact scenario—where MaxLinear seeks to sue its competitors—and states that MaxLinear can "assert any claim of infringement ..." against "Comcast's ... [other] vendors," but not against Comcast.

### F. Entropic concedes most of its willfulness allegations are implausible and provides no legal support for the remainder

Entropic's willfulness allegations here fall within Entropic's "burden of establishing the court's jurisdiction" under Rule 12(b)(1) because Entropic alleges willfulness to invoke the exemption to the covenant not to sue. *Engasser v. Tetra Tech, Inc.*, 519 F. Supp. 3d 703, 706 (C.D. Cal. 2021) (the party faced with a 12(b)(1) motion "bears the burden of establishing the court's jurisdiction"). Entropic concedes that neither MaxLinear nor Entropic ever told Comcast they were infringing any patent. And rather than a "factual basis," Entropic relies on speculative allegations pled "upon information and belief," conceding it cannot satisfy its burden.

But even applying the lower plausibility standard, Entropic's allegations still fail. Entropic fails to rebut even one of the many cases cited by Comcast which demonstrate that allegations mirroring Entropic's have been repeatedly dismissed. Dkt. 90, Sec. IV.F. Retreating further, Entropic argues that "notice" is sufficient, relying on *Intervention911 v. City of Palm Springs*, 2018 WL 1441167 (C.D. Cal. Mar. 22, 2018), *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230 (C.D. Cal. 2014) and *MONEC Holding AG v.*

*Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012). These cases are inapplicable. The "notice to the defendant" quote in *Intervention911* relates to the standard applied in determining whether to grant a motion to supplement a pleading. Neither *Intervention911* nor *Lepton Labs* involved willfulness. And in *MONEC*, the court dismissed willfulness allegations like Entropic's based on participation in the same market and prior litigations against others.

Comcast's Motion addressed the implausibility of the six categories of willfulness allegations in the FACs: (i) pre-suit correspondence generally advertising Entropic's portfolio; (ii) lawsuits filed by Entropic against other companies; (iii) purported general awareness of Entropic's contribution to MoCA and patent portfolio; (iv) purported diligence before Comcast's investment in Entropic in 2003 and 2006; (v) identification of MaxLinear patents as prior art during Comcast's prosecution activities; and (vi) conclusory allegations of willful blindness. Dkt. 90 at 29. Entropic does not address, and thus concedes, the insufficiency of its allegations for categories (i), (iii), and (vi). And Entropic's defense of (ii), (iv), and (v) is legally unsupported.

*Category (ii)*: Three of the lawsuits Entropic points to (Charter, Dish, and DirecTV) were filed in 2022, *after* the effective date of the VSA, and therefore cannot invoke the willfulness exemption. *Supra* VII.B. Even setting that aside, Entropic's allegations are insufficient. Entropic rebuts none of Comcast's cited cases, and Entropic's own case, *MONEC*, held that "unrelated litigation by the defendant's competitors concerning the relevant patent" are insufficient. *MONEC*, 897 F. Supp. 2d at 232. Entropic also fails to explain why lawsuits involving different products or services, some of which are only "substantially similar" (Opp'n at 20) would give Comcast knowledge of infringement.

*Category (iv)*: Entropic does not dispute that the "Pre-Investment *Patents*" were only *applications* at the time of Comcast's investments. Entropic cites no case law to counter the well-settled proposition that knowledge of an application is insufficient to show knowledge of the patent that eventually issues. *See, e.g.*, *Orthopaedic Hosp. v.*

*Encore Med. L.P.*, 2022 WL 254956, at *26 (S.D. Cal. Jan. 27, 2022) (collecting cases). Moreover, each of these applications went through several years of prosecution before they issued, so even if Comcast had reviewed applications, the scope of the issued claims would have been "totally unforeseeable." *Id.*

***Category (v)***: Entropic attempts to impute knowledge to Comcast based on its employment of Patrick Tierney, one of Comcast's 100,000-plus employees. As a practical matter, if Entropic's allegations are sufficient, then a company willfully infringes every patent on which an employee is a named inventor. That cannot be the case. *See, e.g.*, *Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, *2–4 (N.D. Cal. 2013) (finding insufficient speculative allegations of pre-suit knowledge based on plaintiff's former employee being hired by defendant because such a conclusory allegation lacks "factual basis"). Indeed, Entropic identifies no case law to support its position. Entropic also does not contest that it failed to even plead knowledge of infringement based on Mr. Tierney's employment by Comcast.

### G. Jurisdictional discovery is unwarranted

Entropic's admission that "the plain language and intent of the parties [to the VSA] is clear" (Opp'n at 18) undermines its request for jurisdictional discovery. *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1004 (N.Y. 2014). Under New York law, the Court cannot consider parol evidence where, as here, the parties' intent is clear from the agreement's plain language, even if the parties offer different interpretations of the plain language. *Gassman v. Rothlein*, 713 N.Y.S.2d 208, 210 (N.Y. App. Div. 2d Dep't 2000) ("It is well established that the interpretation of a contract is a matter of law for the court."). Overlooking the covenant's plain meaning, Entropic seeks discovery on "whether MaxLinear intended to license its entire IP portfolio, including its trademarks, for the mere prospect of a SOW." Opp'n at 18–19. But if the plain language is "clear," as Entropic admits, no such discovery is necessary.[7] And Entropic's reference to

---

[7] Entropic has also repeatedly mischaracterized the proceedings in SDNY. As Comcast explained in its Opposition to Entropic's *Ex Parte* Application, that litigation does not involve interpreting the covenant not to sue in the VSA. Dkt. 90 at 7.

"trademarks" is untethered to the issues in this case, and thus irrelevant. *Keane v. Zitomer Pharmacy, Inc.*, 2010 WL 624285, at *4 (S.D.N.Y. Feb. 23, 2010) (a party "may not point to a supposed ambiguity that is wholly irrelevant to the case at bar to open the floodgates to all extrinsic evidence"). Entropic also already has access to MaxLinear's information, because they are cooperating in these cases.[8]

### H. A supplemental pleading would not cure these deficiencies

Entropic cannot cure the deficiencies in its FACs with a "supplemental pleading" under Rule 15(d). The VSA has not been "terminated," (*supra*, II.E), so the covenant is in force now, just as it was when Entropic filed these suits. And because subject matter jurisdiction is assessed at the time of filing, MaxLinear's attempted post-filing "termination" is irrelevant, and the FACs should be dismissed regardless. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). *Northstar Fin. Advisors Inc. v. Schwab Invs.* does not help Entropic, as that case involved perfection of an assignment post-complaint, from a party that had ***already been found*** to have standing to sue. 779 F.3d 1036, 1044–46 (9th Cir. 2015). Here, Entropic asks the Court to find jurisdiction based on an ineffective termination that is being litigated in another forum. Dismissal is appropriate here. *See CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1144–45 (N.D. Cal. 2013) (dismissing for lack of subject matter jurisdiction because plaintiff's rights in the patent, which hinged on an exclusive licensee's breach of an agreement, had not yet been adjudicated).

### III.   CONCLUSION

Entropic's attempts to maintain these cases—by misreading the covenant and relying on implausible willfulness allegations and corporate shell games—all ring hollow. There simply is no case to be had against Comcast. Given that Entropic has already amended its complaints, the Court should dismiss these cases with prejudice.

---

[8] In fact, Entropic has asserted common interest privilege over its communications with MaxLinear related to the VSA.

1  Dated:  July 7, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WINSTON & STRAWN LLP

By: */s/ K. Padmanabhan*

Krishnan Padmanabhan (SBN: 254220)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Ave., Fl. 40
New York City, NY 10166
Tel: (212) 294-6700
Fax: 212-294-4700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Ave.
Los Angeles, CA  90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Brian Ferguson (*pro hac vice*)
bferguson@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker, Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312)558-5700

*Attorneys for Comcast Defendants*