Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Connor J. Meggs (SBN 336159)
connor.meggs@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000

[*Additional Counsel Listed on Signature Page*]

***Attorneys for Plaintiff***
***Entropic Communications, LLC***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, *et al.*,<br><br>Defendants. | Case No.: 2:23-cv-01050-JWH-KES<br><br>**NOTICE OF LODGING OF PLAINTIFF'S SLIDES PRESENTED AT THE AUGUST 9, 2023 HEARING ON DEFENDANTS' MOTION TO DISMISS** |

1

**NOTICE OF LODGING**

Plaintiff Entropic Communications, LLC hereby gives notice that it is lodging a copy of the slides that it presented during the August 9, 2023 hearing on Defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC's motion to dismiss, which are attached hereto as Exhibit A and Exhibit B.

Dated: August 9, 2023

*/s/ Christina N. Goodrich*
Christina Goodrich (SBN 261722)
Connor J. Meggs (SBN 336159)
Cassidy T. Young (SBN 342891)
Kelsi E. Robinson (SBN 347066)
K&L Gates LLP
10100 Santa Monica Boulevard
8th Floor
Los Angeles, CA 90067
Tel.: (310) 552-5000
Fax: (310) 552-5001

James A. Shimota *(pro hac vice)*
jim.shimota@klgates.com
K&L Gates LLP
70 W. Madison Street
Suite 3300
Chicago, IL 60602
Tel.: (312) 807-4299

Darlene F. Ghavimi *(pro hac vice)*
darlene.ghavimi@klgates.com
K&L Gates LLP
2801 Via Fortuna
Suite #650
Austin, TX78746
Tel.: (512) 482-6919

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
K&L Gates LLP
4 Embarcadero Center
Suite 1200
San Francisco, CA 94111
Tel.: (415) 882-8200

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

2
**NOTICE OF LODGING**

# EXHIBIT A

*Entropic Communications, LLC v. Comcast Corporation, et al.*

Case Nos. 2:23-cv-01048 and 2:23-cv-01050

United States District Court
for the Central District of California

## ENTROPIC'S ARGUMENT IN OPPOSITION TO COMCAST'S MOTION TO DISMISS UNDER RULE 12(B)(1) AND 12(B)(6)

1

# Two Competing Views of the Meaning of a "Vendor Support Agreement"

## Comcast's View:

*MaxLinear granted Comcast a license to its entire IP portfolio—all patents, all trademarks, all copyrights, and all trade secrets—deep inside a Vendor Support Agreement, for **no fee at all**.*

*The license is **retroactively** revocable due to willful infringement [even though such revocation of a license is not legally possible].*

## Entropic's View:

*The covenant is a personal agreement by MaxLinear to hold in abeyance IP lawsuits against Comcast to promote potential business relations, until the VSA ended or unless Comcast acted sufficiently unfriendly by willfully infringing.*

2

# Comcast Does Not Realistically Dispute Key Entropic Points

❖ Comcast entirely avoids discussion that a grant of a license on all trademarks, copyrights and trade secrets (for no compensation) **makes no** sense.

❖ Comcast cannot explain how the VSA authorizes acts of infringement, yet **also can be nullified retroactively**.

    ❖ Once authorized, acts cannot be de-authorized to resurrect infringement claims.

# Nevertheless, Comcast Seeks Dismissal

| Rule 12(b)(1) |
| --- |
| **Comcast Requested Relief:** Dismiss entire case. |

| Rule 12(b)(6) |
| --- |
| **Comcast Requested Relief:** Dismiss only willfulness allegations. |

# Both Motions Should Be Denied, Permitting the Case to Continue

| Rule 12(b)(1) |
| --- |
| **Comcast's Requested Relief:** Dismiss entire case. |
| **Disposition:** A case and controversy exists where the Patent Owner maintains an affirmative claim of infringement, despite license defenses. |

| Rule 12(b)(6) |
| --- |
| **Comcast's Requested Relief:** Dismiss only willfulness allegations. |
| **Disposition:** Willful infringement adequately plead, including willful blindness. |

# Rule 12(b)(1)

# Many Cases Cited by Comcast in Support of Dismissal Are 12(b)(6) Cases, not Subject Matter Jurisdiction

| CASE | PROCEDURAL POSTURE |
|------|--------------------|
| *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010) | Patent holder never brought suit, and to avoid DJ claims, **disclaimed right** to bring suit for patent infringement. |
| *Shipping & Transit LLC v. Neptune Cigars, Inc.*, No. 2:16-03836-AG-SS, Dkt. No. 25, at 1–2 (C.D. Cal. Sept. 12, 2016) | Patent holder **disclaimed right** to maintain suit for patent infringement and **affirmatively sought dismissal** of the patent infringement claim. |
| *Blue Phoenix Media Inc. v. Essociate Inc.*, No. CV1200834JVSMLGX, 2012 WL 12888834 (C.D. Cal. June 15, 2012) | Unconditional covenant evaluated under **Rule 12(b)(6)** |
| *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1008 (9th Cir. 2012) | Unconditional covenant evaluated under **Rule 12(b)(6)** |
| *Volk v. Liggett Group Inc.*, 1997 WL 107458, at *4 (S.D.N.Y. Mar. 11, 1997) | Unconditional covenant evaluated under **Rule 12(b)(6)** |

**Rule 12(b)(6) cases**

# The Only Cases Cited by Comcast re SMJ Dismissals Involve Patent Owners <u>NOT</u> Maintaining A Suit:

| CASE | PROCEDURAL POSTURE |
|---|---|
| *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010) | Patent holder **never brought suit**, and to avoid DJ claims, **disclaimed right** to bring suit for patent infringement. |
| *Shipping & Transit LLC v. Neptune Cigars, Inc.*, No. 2:16-03836-AG-SS, Dkt. No. 25, at 1–2 (C.D. Cal. Sept. 12, 2016) | Patent holder **disclaimed right** to maintain suit for patent infringement and **affirmatively sought dismissal** of the patent infringement claim. |

# *King Pharms., Inc. v. Eon Labs, Inc*. 616 F.3d 1267 (Fed. Cir. 2010)—Patent Owner Sought Dismissal

❖ Covenantee brought **declaratory judgment** action seeking a judgment of patent invalidity.

❖ **Patent holder** argued the court lacked subject matter jurisdiction, arguing that no case or controversy existed because it disclaimed any right to sue pursuant to the covenant.

❖ The court accepted patent holder's position because there was no chance of an infringement suit:

"[I]n a letter to the district court, Elan stated it 'will **waive any rights** it may have, if any, separate and apart from any rights it has transferred to the new patent owners, to pursue any damages or relief from Eon . . . Based on Elan's past ownership of the '128 patent.'" *King Pharms., Inc.*, 616 F.3d at 1282 (emphasis added).

"Elan's **broad and unrestricted** covenants not to sue Eon for infringement of the '102 or '128 patents, remove any case or controversy that may have existed between the parties at one point." *Id.* (emphasis added).

# *Shipping & Transit LLC v. Neptune Cigars, Inc.*
## No. 2:16-03836-AG-SS, Dkt. No. 25 (C.D. Cal. Sept. 12, 2016)

❖ Patent holder brought suit for patent infringement, and defendant moved to dismiss, asserting that patents were invalid.

❖ **Plaintiff-Patentee then asked the court to dismiss** the action based on agreeing that there could be no future case of infringement.

"Plaintiff has **disclaimed any patent infringement suit it could possibly bring** against Defendant at this time, and Defendant has not asserted any intent to pursue activity that would expose it to any prospect of infringement liability. Thus, the covenant eliminates any case or controversy based on the patents-in-suit between the parties."

*Shipping & Transit LLC*, No. 2:16-03836-AG-SS, Dkt. No. 25 at *2.

10

# *Shipping & Transit LLC*—Patent Owner Sought Dismissal

❖ Judge Guilford entered a dismissal with prejudice at Patent Owner's request:

Accordingly, Defendant's Motion to Dismiss is **MOOT**. As requested by Plaintiff, its claims against Defendant are **DISMISSED WITH PREJUDICE**.

Judgment in this case is entered in favor of Defendant Neptune Cigars, Inc. and against

Plaintiff Shipping and Transit, LLC.

Dated September 12, 2016

Hon. Andrew J. Guilford
United States District Judge

11

# Note That the *Shipping and Transit* Court <u>Retained</u> Jurisdiction

❖ A Court cannot grant dismissal with prejudice if it lacks subject matter jurisdiction:

"A dismissal with prejudice effectively renders an adjudication on the merits. Without jurisdiction, the Claims Court cannot presume to dismiss the complaint with prejudice."

- *Scott Aviation v. United States*, 953 F.2d 1377, 1378 (Fed. Cir. 1992).

❖ Thus, *Shipping and Transit* did <u>not</u> hold a lack of SMJ, because it granted dismissal with prejudice.

12

# Comcast's Observation in the Reply Brief—the DJ Cases Are "Inapplicable":

Relying on inapplicable declaratory judgment ("DJ") cases, Entropic manufactures a false axiom—that only unconditional covenants divest a court of subject-matter jurisdiction. Unconditional covenants divest the court of DJ jurisdiction because the "very purpose of the Declaratory Judgment Act [was] to ameliorate" the "dilemma" that "put[s] the challenger to the choice between abandoning his rights or risking prosecution." *See MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (considering jurisdictional issues unique to the Declaratory Judgment Act and Article III's case or controversy requirement). A covenant without any limitations resolves the challenger's dilemma. But it does not logically follow that a covenant containing *any* limitations creates a case or controversy,[3] And Entropic's cited cases finding jurisdiction when a patentee provided a contingent assurance, or one that failed to even address the accused products, do not stand for that proposition.

- Comcast Reply at 8:5-16 (DE 103-1).

13

# What Happens When the Patent Owner **<u>Does</u>** Maintain a Claim of Infringement?

❖ Analysis of case/controversy is so simplified it is automatic.

❖ There **<u>is</u>** a case and controversy because there **<u>is</u>** a patent infringement claim by the Patent Owner.

   ❖ License/covenant defenses **<u>do not</u>** divest subject matter jurisdiction.

14

# Where Patent Owner Maintains a Patent Infringement Claim, SMJ Exists Despite License Defenses

Fed. Cir.

> "That resolution of a question of state law [holding a license valid] may render federal questions moot **does not deprive a federal court of subject matter jurisdiction where the plaintiff bases his claim upon, and seeks remedies under, the patent laws, even where the complaint anticipates a defense of license**."

- *Air Prod. & Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1563-64 (Fed. Cir. 1985).

> "[Plaintiff's] well-pleaded complaint expressly sets out an action for patent infringement. The issue is not ownership; this is an action for patent infringement in which the defendant has asserted the defense of license. **Jurisdiction in the federal courts is not lost simply because the most efficient approach at trial may be to address the license defense first**."

- *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1327 (Fed. Cir. 2002).

15

# Where Patent Owner Maintains a Patent Infringement Claim, SMJ Exists Despite License Defenses

Fed. Cir.

"While the covenant may have eliminated the case or controversy pled in the patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims, **the covenant does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims** raised in the Complaint."

- *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006).

"[A] district court retains jurisdiction over claims in a patent suit for purposes of Federal Rule of Civil Procedure 41 even if the patentee offers a covenant not to sue."

- *Cooper Notification, Inc. v. Twitter, Inc.*, 545 Fed. App'x 959, 967 (Fed. Cir. 2013).

16

# Where Patent Owner Maintains a Patent Infringement Claim, SMJ Exists Despite License Defenses

N.D. Cal.

"In the present case, the jurisdictional test is satisfied. [Plaintiff] has presented a well-pleaded complaint based on patent law and has requested the type of relief that patent law can furnish. Illumina's challenge is substantial and could indeed, if successful, stop these patent proceedings at their outset, but it **must be directed at the merits of [Plaintiff's] claim rather than at this court's jurisdiction**."

- *Applied Biosystems Group v. Illumina, Inc.*, 282 F. Supp. 2d 1120, 1125 (N.D. Cal. 2003).

# Where Patent Owner Maintains a Patent Infringement Claim, SMJ Exists Despite License Defenses

E.D. Va.

"The covenants not to sue extinguished the case or controversy with respect to a declaratory judgment of non-infringement and unenforceability, **but not with respect to Rambus' infringement claim**. If Rambus breached the covenant not to sue by asserting an infringement claim against Samsung on the [asserted] patents, its suit would not fail for lack of jurisdiction. . . . [T]here **is no authority for the proposition that a covenant not to sue stands as a jurisdictional bar to bringing a subsequent infringement claim**."

- *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 440 F. Supp. 2d 495, 504 (E.D. Va. 2006).

18

# Overview of the Case or Controversy Analysis:

**Does the Patent Owner Maintain a Suit for Infringement?**

**NO**

**YES**

Basis for suit is DJ claims

Basis for suit is the affirmative claim

**Relevant Question:**
Is there a reasonable apprehension the Patent Owner may someday bring suit?

**Relevant Question:**
None. There **is** a case or controversy because there **is** a claim of patent infringement.

19

# Correct Disposition is Denial of the Rule 12(b)(1) Motion

❖ Entropic has brought and maintains claims of patent infringement.

❖ Binding authority holds that a license/covenant defense does not destroy SMJ (*Air Products*, et al.)

❖ Even under the DJ-based analysis, the parties dispute whether the conditional covenant has any effect

# Rule 12(b)(6)

# Rule 12(b)(6) Motion

- ❖ Comcast asks that the "claims of willful infringement" be dismissed.

- ❖ Willful infringement issues will be developed in the case regardless, because the willfulness issue underlies the conditional covenant.

- ❖ Thus, willfulness is not just an affirmative issue, it is a defense to Comcast's defense.

# Standard for Evaluating Claim Under Rule 12(b)(6):

"When determining whether a claim has been stated, the Court **accepts as true** all well-pled factual allegations and **construes them in the light most favorable to the plaintiff**. . . . Courts have considered the '**totality of the allegations** to determine whether a claim of willfulness is plausible.'"

*- Finjan, Inc. v. Cisco Systems, Inc.*, 2018 WL 7131650, at *2-3 (N.D. Cal. Feb. 6, 2018).

"**We must presume [that Plaintiff's] allegations are true at the pleading stage**. To the extent Defendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss."

*- Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1358 (Fed. Cir. 2018).

23

# Willful Infringement Overview

1) Comcast was willfully blind to the patent rights of Entropic and MaxLinear.

2) Comcast had direct knowledge of all the Patents in Suit based on Entropic's communications and the litigation against Charter and others (involving some or all of the Patents in Suit in the -050 case).

# Willful Blindness Overview

❖ Entropic invented MoCA and other technologies used by Comcast. Comcast knew that.

❖ Comcast was deeply involved in MoCA, using it and sitting on the Alliance board.

❖ Comcast invested in Entropic.

❖ Comcast has a long relationship with MaxLinear—one of **two** suppliers—to source key components for use (e.g., see the VSA).

❖ MaxLinear inventor (of two patents in suit) worked for Comcast.

# Rule 12(b)(6) Dismissal is Inappropriate Given the Allegations of Willfulness

**Comcast was a member of MoCA:** As a member of MoCA, Comcast was aware that Entropic was the leading contributor of MoCA technology and knew that deployment of MoCA standard-compliant devices would infringe Entropic's patents.

*See* 1048 First Amended Complaint ("FAC") ¶¶ 84-92 (DE 69-1).

26

# Rule 12(b)(6) Dismissal is Inappropriate Given the Allegations of Willfulness

**Comcast invested in Entropic in both 2003 and 2006:** Comcast substantively reviewed and analyzed Entropic's patents and patent applications prior to investing, and therefore had knowledge of Entropic's patents such that Comcast knew that its devices infringed Entropic's patents.

*See* 1048 FAC ¶¶ 65-68 (DE 69-1).

# Rule 12(b)(6) Dismissal is Inappropriate Given the Allegations of Willfulness

**Comcast reviewed Entropic's patents asserted in various patent-infringement suits:** Comcast reviewed the claims in each suit and analyzed its products' functionality in light of the patents asserted in each suit.

*See* 1048 FAC ¶¶ 69-71, 76-79 (DE 69-1).

# Rule 12(b)(6) Dismissal is Inappropriate Given the Allegations of Willfulness

**A former inventor of Entropic's '008 and '826 Patents works at Comcast:** Comcast gained knowledge of certain Asserted Patents upon hiring the former inventor of such patents.

*See* 1048 FAC ¶ 108, 76-79 (DE 69-1).

29

# Rule 12(b)(6) Dismissal is Inappropriate Given the Allegations of Willfulness

**Entropic Patents were cited in Comcast non-final rejections:** Comcast substantively reviewed and analyzed the cited patents such that Comcast knew that its devices infringed Entropic's patents.

*See* 1048 FAC ¶ 110 (DE 69-1).

# Entropic Properly Alleges that Comcast Was (At Best) Willfully Blind:

1048 FAC ¶ 102 (DE 69-1):

> 14      102.    No later than the day prior to signing the VSA with MaxLinear, Inc.,
> 15    Comcast knew or had every reason to know that MaxLinear, Inc. owned patents related
> 16    to the MoCA technology such that deployment of MoCA standard-compliant devices
> 17    would infringe on patents owned by MaxLinear. To the extent Comcast did not
> 18    investigate whether it infringed such patents, Comcast was willfully blind to its
> 19    infringement of patents owned by its long-time business partner, MaxLinear.

31

# Entropic Properly Alleges that Comcast Was (At Best) Willfully Blind:

1048 FAC ¶¶ 104-105 (DE 69-1):

> 104. No later than the day prior to signing the VSA with MaxLinear, Inc., Comcast knew or had reason to know that MaxLinear owned patents related to non-standardized technologies deployed in the cable television and/or cable internet businesses. To the extent Comcast did not investigate whether it infringed such patents, Comcast was willfully blind to its infringement of patents owned by its long-time business partner, MaxLinear.
>
> 105. No later than the day prior to signing the VSA with MaxLinear, Inc., any reasonable commercial party in Comcast's position, with Comcast's knowledge, would perceive a substantial likelihood that MaxLinear owned patents related to non-standardized technologies deployed in the cable television and/or cable internet businesses, technologies that Comcast uses and deploys.

# Comcast Only Argues That Willful Blindness Allegations are Conclusory:

**Comcast's Motion at 35:18-36:6 (DE 82-1):**

18           **6.     Conclusory allegations of willful blindness cannot support**

19           **willfulness (1048, Dkt. 69-1 ¶¶ 99–107)**

20         Lacking factual basis to support any of its allegations that Comcast had pre-suit

21  knowledge of any specific patent or infringement thereof, Entropic resorts to conclusory

22  allegations claiming willful blindness: that Comcast's failure to investigate Entropic's

23  patents renders Comcast willfully blind. 1048, Dkt. 69-1 ¶¶ 99-107. But these

24  allegations "are based on the same set of facts"—"Comcast already knew it was

25  willfully infringing patents owned by Entropic" (*id.* ¶ 101)—that "are insufficient to

1  show that [Comcast] had actual knowledge." *Teradyne v. Astronics Test Sys., Inc.*, 2020

2  WL 8173024, at *4 (C.D. Cal. Nov. 6, 2020) (dismissing willful blindness allegations

3  at pleading stage). Entropic's FACs "offer[] no analysis for why [Comcast] subjectively

4  believed that there was a high probability it infringed or that Comcast took deliberate

5  actions to avoid learning that it was infringing."[24] *Id.* Because they lack any factual

6  basis, Entropic's willful blindness allegations also fail.

# Willfulness Is Also Based on Direct Knowledge of the Patents in Suit:

❖ **Entropic sent a letter and portfolio list to Comcast on August 9, 2022 to engage in good faith licensing discussions**
*See* 1050 FAC ¶ 26; 1048 FAC ¶ 31

  ❖ Comcast knew or was willfully blind to its infringement of the Asserted Patents since no later than its receipt of Entropic's August 9, 2022 letter

❖ **Comcast reviewed the *Entropic v. Charter Communications, Inc.* complaint and analyzed its products' functionality in light of the patents cited in the complaint**
*See* 1050 FAC ¶¶ 61-67, 70; 1048 FAC ¶¶ 69-75, 78

  ❖ Comcast additionally requested indemnification from its suppliers for each of Entropic's patents asserted against Charter

34

# EXHIBIT B

*Entropic Communications, LLC v. Comcast Corporation, et al.*

Case Nos. 2:23-cv-01048 and 2:23-cv-01050

United States District Court
for the Central District of California

## ENTROPIC'S ADDITIONAL ARGUMENT IN OPPOSITION TO COMCAST'S MOTION TO DISMISS UNDER RULE 12(B)(1) AND 12(B)(6)

# The VSA Does Not Grant Comcast A License to All MaxLinear IP

# Two Competing Views of the Meaning of a "Vendor Support Agreement"

Comcast's View:

*MaxLinear granted Comcast a license to its entire IP portfolio—all patents, all trademarks, all copyrights, and all trade secrets—deep inside a Vendor Support Agreement, for **no fee at all**.*

*The license is revocable due to willful infringement [even though such revocation of a license is not legally possible].*

Comcast's Support:

❖ Portions of Section 7.3, in isolation, divorced from all commercial reality

Entropic's View:

*The covenant is a personal agreement by MaxLinear to hold in abeyance IP lawsuits against Comcast to promote potential business relations, until the VSA ended or unless Comcast acted sufficiently unfriendly by willfully infringing.*

Entropic's Support:

❖ Section 7.3

❖ The full context of the VSA, including e.g., **Section 1**, Section 3, Section 6.2, Section 7.1

❖ Commercial reality

❖ The parties' post-VSA behavior

36

# The VSA Covenant Is Strictly Construed Against Comcast

"[A] covenant not to sue . . . must be strictly construed against the party asserting it."

- *Colton v. New York Hosp.*, 414 N.Y.S.2d 866, 874 (Sup. Ct. 1979)

"For a document to constitute a release from liability, it must contain an explicit, unmistakable and unequivocal statement by one party that it intends to abandon its right to prosecute a present or future claim against the other party."

- *Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 383 (S.D.N.Y. 2005)

**Comcast does not dispute this**

37

# The VSA is a Services Agreement, Not a License to 100% of MaxLinear's IP

**VENDOR SUPPORT AGREEMENT**

THIS CONSULTING AGREEMENT (the "Agreement") is entered into effective as of the 1st day of August, 2020 (the "Effective Date") by and between Comcast Cable Communications Management, LLC, a Delaware limited liability company, on behalf of its applicable affiliates and subsidiaries, with offices at One Comcast Center, 1701 JFK Blvd., Philadelphia, PA 19103 ("Comcast") and  MaxLinear, Inc., a Delaware corporation with a mailing address at 5966 La Place Court, Suite 100, Carlsbad, CA 92008 ("Vendor"), each a "Party" and collectively the "Parties."

**BACKGROUND**

This Agreement describes the general terms and conditions under which Vendor will provide services to Comcast.

# The VSA Delays Any Suits, It Does Not Grant Comcast the Right to Use <u>All MaxLinear IP</u>

7.3     <u>Covenant Not to Assert</u>.  During the Term, Vendor, on behalf of itself and all Affiliates (each, a "Vendor Covenanting Party"), to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.   Nothing herein shall limit or restrict Vendor Covenanting Party's ability or right to assert any claim of infringement, to seek damages, or to enjoin Comcast's or Comcast's Affiliates' vendors for infringement of Vendor Covenanting Party's Intellectual Property; provided, however, that for a reasonable period of time, up to six (6) months, after Vendor Covenanting Party secures the first of either a final, non-appealable judgment or a final, non-appealable injunction (including without limitation an administrative remedy such as an exclusion order and/or cease and desist order) against a vendor of Comcast Protected Party, Vendor Covenanting Party shall, to the full extent of their authority, permit Comcast Protected Party the opportunity to transition their ongoing supply of the product(s) and/or service(s) that are subject to such judgment or injunction to non-infringing products and services.

39

# Section 7.3 does not survive termination.

14.13   Survival. The provisions of this Agreement that, by their sense and context, are intended to survive performance by either or both Parties shall also survive the completion, expiration, termination or cancellation of this Agreement, including without limitation, Sections 5, 6, 7.1, 7.2, 8, 10, 12, 13, 14.1, 14.7, 14.8 and 14.11.

**Section 7.3 does not survive**

***Comcast does not dispute this***

40

# The VSA Delays Any Suits, It Does Not Grant Comcast the Right to Use <u>All MaxLinear IP</u>

❖ The covenant cannot be an authorization, as it reserves the right to sue anyone else for Comcast's infringing products

❖ If Comcast is licensed to "purchase, use or deploy," how are such suits possible?

7.3   <u>Covenant Not to Assert</u>.  During the Term, Vendor, on behalf of itself and all Affiliates (each, a "Vendor Covenanting Party"), to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service.  Nothing herein shall limit or restrict Vendor Covenanting Party's ability or right to assert any claim of infringement, to seek damages, or to enjoin Comcast's or Comcast's Affiliates' vendors for infringement of Vendor Covenanting Party's Intellectual Property; provided, however, that for a reasonable period of time, up to six (6) months, after Vendor Covenanting Party secures the first of either a final, non-appealable judgment or a final, non-appealable injunction (including without limitation an administrative remedy such as an exclusion order and/or cease and desist order) against a vendor of Comcast Protected Party, Vendor Covenanting Party shall, to the full extent of their authority, permit Comcast Protected Party the opportunity to transition their ongoing supply of the product(s) and/or service(s) that are subject to such judgment or injunction to non-infringing products and services.

41

# The VSA Delays Any Suits, It Does Not Grant Comcast the Right to Use <u>All MaxLinear IP</u>

❖ The covenant cannot be an authorization, as it reserves the right to sue if the conditional is met:

> 7.3 <u>Covenant Not to Assert</u>. During the Term, Vendor, on behalf of itself and all Affiliates (each, a "Vendor Covenanting Party"), to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service. Nothing herein shall limit or restrict Vendor Covenanting Party's ability or right to assert any claim of infringement, to seek damages, or to enjoin Comcast's or Comcast's Affiliates' vendors for infringement of Vendor Covenanting Party's Intellectual Property; provided, however, that for a reasonable period of time, up to six (6) months, after Vendor Covenanting Party secures the first of either a final, non-appealable judgment or a final, non-appealable injunction (including without limitation an administrative remedy such as an exclusion order and/or cease and desist order) against a vendor of Comcast Protected Party, Vendor Covenanting Party shall, to the full extent of their authority, permit Comcast Protected Party the opportunity to transition their ongoing supply of the product(s) and/or service(s) that are subject to such judgment or injunction to non-infringing products and services.

42

# The VSA Delays Any Suits, It Does Not Grant Comcast the Right to Use All MaxLinear IP

❖ The covenant cannot be an authorization, as it reserves the right to sue for infringement if the conditional is met

❖ If Comcast was authorized to infringe, such an authorization could not be taken back:

    ❖ Once an act is authorized by contract, it cannot be de-authorized.

❖ But the express purpose of the conditional is to allow patent infringement suits, if the conditional is met.

❖ Thus, § 7.3 cannot be an authorization of Comcast's conduct, because it would foreclose the very infringement lawsuits kept alive by the condition.

# The Actual License Conveyed by MXL:

❖ The VSA contains an actual license, one of the limited scope one would expect from a software vendor providing updates and bug fixes.

❖ This license is entirely superfluous and pointless under Comcast's view of § 7.3.

> 6.2    Vendor Software.
>
> (c)    In connection with the performance of Services, Vendor will not, without the prior written consent of Comcast's Authorized Representative as reflected on the applicable SOW or Change Order, embed Public Software (as defined below) or any third party computer programs into any deliverables or Comcast systems. If Vendor Software is embedded into any Comcast systems without an applicable SOW, unless otherwise expressly agreed in writing by the Procurement Officer, Vendor hereby grants Comcast a perpetual, worldwide, irrevocable, fully-paid, nonexclusive, transferable, royalty-free right and license to, and to sublicense third parties to, use, execute, reproduce, redistribute, display and perform all such Vendor Software, as necessary for Comcast and its affiliates to receive, distribute and otherwise exploit the deliverables (the "Embedded Vendor Software License"). If Public Software is embedded into any

**Comcast does not dispute this**

44

# Comcast's and MaxLinear's Post-VSA Behavior

❖ Within a few months after signing the VSA, MaxLinear transferred the Patents in Suit (and others) to Entropic

  ❖ MaxLinear stated affirmatively there were no encumbrances, such as licenses or covenants not to sue, on the Patents relating to various parties including Comcast

❖ In August 2022 Entropic sent a letter to Comcast seeking to engage in licensing discussions.

  ❖ Comcast responded, but never mentioned anything regarding a license.

> **Comcast does not dispute this**

# Interpretation of the VSA Involves Factual Issues

# Facts Inform the Interpretation of the VSA

❖ Comcast itself relies on facts—what Comcast "would have" or would not have agreed to at the time of negotiating the contract—to argue Entropic's interpretation is wrong:

Comcast's Reply at 13:12-19 (DE 103-1):

| | |
|---|---|
| 12 | And while Entropic insists that the present perfect tense refers to willfulness up |
| 13 | to the present day (Opp'n at 15), that would allow MaxLinear to manufacture a |
| 14 | willfulness claim to undo the covenant for a given patent, and would render the covenant |
| 15 | illusory, contrary to New York law. Entropic offers no case law to support its reading. |
| 16 | Entropic's reading also makes no sense. Comcast would only have agreed to a covenant |
| 17 | containing the exemption because it had not willfully infringed MaxLinear's patents, |
| 18 | and in fact, neither MaxLinear nor any of its affiliates ever said Comcast had done or |
| 19 | was doing so. Entropic's wholly implausible willfulness allegations prove the same. |

47

# Facts Inform the Interpretation of the VSA

❖ Did Comcast and MaxLinear discuss § 7.3?

❖ What did MaxLinear intend?

❖ Why did Comcast seek to enter the VSA in the first place, for work MaxLinear was already performing anyway?

❖ Who wrote the VSA's provisions, and what edits were made?

❖ Is § 7.3 or its equivalent in other Comcast VSA's? How does Comcast treat any such equivalent provisions?

❖ Has Comcast obtained a license to every patent, trademark, copyright and trade secret—for no fee—from any other company? Would Comcast consider that commercially reasonable? Why or why not?

# Facts Inform the Interpretation of the VSA

"Where several constructions of a contract are possible, the court can look to the surrounding facts and circumstances to determine the intent of the parties."

- *25 Bay Terrace Assocs., L.P. v. Public Service Mutual Ins. Co.*, 148 N.Y.S.3d 484, 488-89 (2d Dep't App. Div. 2021).

"If a contract is ambiguous, 'extrinsic or parol evidence may be then permitted to determine the parties' intent as to the meaning of that language.'"

- *Dan's Hauling & Demo, Inc. v. GMMM Hickling, LLC*, 147 N.Y.S.3d 805, 808-09 (4th Dep't App. Div. 2021).

49

# The VSA Covenant Does Not Travel to Bind Entropic

# The VSA Covenant Is Personal to MaxLinear and Comcast, It Does Not Travel to Entropic

❖ The § 7.3 covenant is an agreement between these particular parties, to hold in abeyance IP suits until: (1) the Term is over or (2) Comcast willfully infringes.

❖ The covenant is expressly conditional

❖ While <u>un</u>conditional covenants are equivalent to licenses and thus burden the property right, this conditional covenant does not

❖ Without express language stating that the covenant travels to other parties, the covenant here does not travel

51

# Conditional and Unconditional Covenants are Fundamentally Different

**Unconditional Covenant Not to Sue**

- ❖ Promise <u>never</u> to sue for infringement (re the acts in question)

- ❖ Right to sue for infringement surrendered

- ❖ Authorizes conduct, therefore treated equivalent to a license

- ❖ As a license, burdens the property right and travels with it

**Conditional Covenant "Not" to Sue**

- ❖ Promise by a particular party to <u>delay</u> suit until certain condition(s) occur

- ❖ Right to sue for infringement <u>maintained</u>, even though held in abeyance

- ❖ <u>No</u> authorization; not a license

- ❖ Personal covenant that <u>does not</u> travel absent clear contract language

# The VSA Covenant Is Personal to MaxLinear and Comcast, It Does Not Travel to Entropic

❖ No case cited by Comcast nor located by Entropic holds that a conditional covenant not to sue runs with the patent to burden downstream owners.

| CASE | PROCEDURAL POSTURE |
|---|---|
| *Transcore, LP v. Electronic Consultants Corp.*, 563 F.3d 1271, 1273 (Fed. Cir.  2009) | Unconditional covenant evaluated on motion for summary judgment. |
| *Energy Innovation Co., LLC, v. NRC Corp.*, 2018 WL 7050840, at *1 (N.D. Ga Nov. 29, 2018) | Unconditional covenant evaluated on motion for summary judgment. |
| *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 498 F. Supp.3d 1080, 1084 (D. Minn. 2020) | Irrevocable, exclusive license evaluated on motion for summary judgment. |
| *Bioverativ Inc. v. CSL Behring LLC*, 2021 WL 3471688, at *1 (D. Del. Aug. 6, 2021) | Covenant not to sue evaluated where both parties agreed on dismissal of infringement claims. |

# The VSA Covenant Is Personal to MaxLinear and Comcast, It Does Not Travel to Entropic

❖ No case cited by Comcast nor located by Entropic holds that a conditional covenant not to sue runs with the patent to burden downstream owners.

| CASE | PROCEDURAL POSTURE |
|------|--------------------|
| *Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *6 (N.D. Cal. July 2, 2013) | Unconditional covenant not to sue evaluated on motion for summary judgment. |
| *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1370 (Fed. Cir. 2008) | Arbitration provision  evaluated on motion to dismiss. |
| *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F. 3d 1350, 1358 (Fed. Cir. 2013) | Unequivocal representation disclaiming intent to sue evaluated on motion to dismiss declaratory judgment action. |
| *Vectura Limited v. GlaxoSmithKline LLC*, 2019 WL 1352767, at *3 (D. Del. Mar. 26, 2019) | Time-limited covenant not to sue evaluated on motion to exclude expert testimony. |

# Ordinary Covenants Require Intent for Successors to be Bound

❖ New York law requires clear intent that a covenant run with property:

> "[Covenant not to compete] was unenforceable on the  ground that there was no evidence the parties intended the agreement to be assignable when it was originally executed."

- *Archer Worldwide, Inc. v. Mansbach*, 734 N.Y.S.2d 869, 869-70 (2d Dep't. App. Div. 2001)

> For a restrictive covenant to run with land, "it must appear that grantor and grantee intended that the covenant should run with the land."

- *328 Owners Corp. v. 330 W. 86 Oaks Corp.*, 8 N.Y.3d 372, 382 (N.Y. Ct. App. 2007)

❖ § 7.3 covenant is an agreement between these particular parties, to hold in abeyance IP suits until: (1) the Term is over or (2) Comcast willfully infringes.

# The VSA has been terminated.

Wrongful termination is a breach of contract, but does not mean that the contract remains in effect.

"Under New York law, timely notice that violates the terms of the contract is proper so long as it is actually received and no prejudice results."

- *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 706 F. Supp. 2d 350, 360 (S.D.N.Y. 2009).

"A claim for wrongful termination is nothing more than a sub-species of a breach of contract or in fact a breach of contract itself."

- *Mayweather Promotions, LLC v. PAC Entertainment Worldwide LLC*, 2022 WL 3997014, at *8 (S.D.N.Y. Sept. 1, 2022).

# The VSA has been terminated.

Any remedy for wrongful termination lies against MXL for breach, and does not include enforcing the terminated VSA against Entropic.

"Cynergy improperly terminated the ISO Agreement without notice and opportunity to cure and therefore was not entitled to withhold residuals. . . . Both parties are thus entitled to recover damages from the other."

- *Process Am., Inc. v. Cynergy Holdings, LLC*, 2014 WL 3844626, at *20 (E.D.N.Y. Apr. 30, 2014).

It 'is black letter law that non-parties [to a contract] ordinarily cannot be held liable for a breach of contract.'"

- *Widerman v. Spark Energy, Inc.*, 2020 WL 1862319, at *5 (S.D.N.Y. Apr. 14, 2020).

# Section 7.3 does not survive termination.

14.13   Survival. The provisions of this Agreement that, by their sense and context, are intended to survive performance by either or both Parties shall also survive the completion, expiration, termination or cancellation of this Agreement, including without limitation, Sections 5, 6, 7.1, 7.2, 8, 10, 12, 13, 14.1, 14.7, 14.8 and 14.11.

**Section 7.3 does not survive**

***Comcast does not dispute this***

# Entropic's Allegations of Willful Infringement

# Entropic Invented MoCA

1048 FAC ¶ 32:

**ENTROPIC'S LEGACY AS AN INNOVATOR**

32.     Entropic Inc., the predecessor-in-interest to Entropic as to the Patents-in-Suit, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others. Entropic Inc. was exclusively responsible for the development of the initial versions of the MoCA standards, including MoCA 1.0, ratified in 2006 and MoCA 1.1, ratified in 2007, and was instrumental in the development of MoCA 2.0, ratified in 2010. It also developed Direct Broadcast Satellite ("DBS") Outdoor Unit ("ODU") single wire technology, and System-on-Chip ("SoC") solutions for set-top boxes (STBs) in the home television and home video markets. Entropic was widely known in the cable industry for these innovations and its foundational development of MoCA.

60

# Entropic Invented MoCA (Cont.)

1048 FAC ¶¶ 1-2:

> 6   1.   Around the turn of the millennium, cable and satellite providers were eager
> 7   to deploy new and improved services, but they faced a big problem. The providers
> 8   needed a high-speed data network inside buildings to deliver those services to various
> 9   rooms. With existing technology, this meant installing new cabling inside each premises
> 10  to carry the network. Aside from the costly materials themselves, technicians would be
> 11  forced to spend hours planning the work, cutting and drilling into walls, and fishing
> 12  cables throughout a building, all while doing so in ways customers might tolerate. The
> 13  costs would run into the billions of dollars.
> 14   2.   A group of inventors had a vision: what if they could repurpose the already-
> 15  existing coaxial cables common in buildings to do the job? The challenges were
> 16  daunting. Existing coaxial cabling was never intended to work this way. The mess of
> 17  existing coax topologies in homes and businesses was a formidable barrier. The splitter
> 18  devices used to distribute legacy TV obstructed signals from room-to-room. Making it
> 19  all work would require nothing less than the invention of a new networking architecture
> 20  founded upon a host of new technologies.

# Entropic Invented MoCA (Cont.)

| | |
|---|---|
| 21 | 3. They succeeded. The inventors' company, called Entropic |
| 22 | Communications Inc. ("Entropic Inc."), made the technology work. The company was |
| 23 | awarded a portfolio of patents for the advances that made it possible. And the company |
| 24 | spearheaded forming a new industry standard for the architecture, commonly called |
| 25 | MoCA (Multimedia over Coax Alliance). |
| 26 | 4. Today, MoCA is the backbone of data and entertainment services for tens |
| 27 | of millions of customers. MoCA is widely used by every major provider in the industry, |
| 28 | saving them billions of dollars in costs and avoiding the hassle of re-wiring for providers |
| 1 | and customers alike. Unfortunately, the defendants take advantage of MoCA without |
| 2 | paying appropriate licensing fees for the technology. This lawsuit is about redressing |
| 3 | that wrong. |

1048 FAC ¶¶ 3-4

62

# ENTROPIC INNOVATED IN A VARIETY OF AREAS RELEVANT TO COMCAST

| 19 | 35.    For years, Entropic Inc. pioneered innovative networking technologies, as |
| 20 | well as television and internet related technologies. These technologies simplified the |
| 21 | installation required to support wideband reception of multiple channels for |
| 22 | demodulation, improved home internet performance, and enabled more efficient and |
| 23 | responsive troubleshooting and upstream signal management for cable providers. These |
| 24 | innovations represented significant advances in the field, simplified the implementation |
| 25 | of those advances, and reduced expenses for providers and customers alike. |

1048 FAC ¶ 35

63

# MAXLINEAR SEPARATELY DEVELOPED TECHNOLOGIES RELEVANT TO COMCAST, AND LATER ACQUIRED ENTROPIC INC.

27
28        36.   In 2015, MaxLinear, Inc. and MaxLinear, LLC (collectively, "MaxLinear")—leading providers of radio-frequency, analog, digital, and mixed-signal

1        semiconductor solutions—acquired Entropic Inc., as well as the pioneering intellectual
2        property developed by Dr. Monk and his team.

1048 FAC ¶¶ 36

64

# COMCAST WAS A MEMBER OF MOCA

18      84.     Upon information and belief, Comcast was involved with and/or a member of MoCA from the earliest days of the MoCA, through at least August 2019. Indeed, Comcast was a member of the MoCA board of directors.[6]

21      85.     Upon information and belief, no later than the day prior to its latest investment in Entropic in 2006, any reasonable commercial party in Comcast's position, with Comcast's knowledge, would perceive a substantial likelihood that deployment of MoCA standard-compliant devices would infringe on Pre-Investment Patents owned by Entropic.

1048 FAC ¶¶ 84-85

65

# COMCAST KNEW ENTROPIC AND MAXLINEAR WERE MOCA INNOVATORS

5       87.     As a member of the MoCA, Comcast was well aware that Entropic, the
6   owner of the Patents-in-Suit, was the leading contributor of technology to the standards
7   promulgated by MoCA, which are implicated by the claims of patent infringement
8   herein.
9       88.     Upon information and belief, Comcast knew that MoCA standard-
10   compliant devices had tremendous success, given the public success through Verizon
11   Wireless's deployment of Fios.
12       89.     Upon information and belief, Comcast knew that MaxLinear, Inc. was a
13   member of MoCA since at least 2011.

1048 FAC ¶¶ 87-89

# COMCAST MONITORED AND REVIEWED MOCA STANDARD-ESSENTIAL PATENTS

1048 FAC ¶ 90:

> 90.     Comcast and MaxLinear, Inc. were both board members of MoCA from at least 2015 through August 2019. By virtue of Comcast's participation in MoCA and its ongoing, extensive use of MoCA standards, on information and belief, Comcast monitored and reviewed the publication and issuance of patents that would be standard-essential, including MaxLinear and Entropic Communications Inc. patents. Because Comcast was using the devices that practiced the MoCA standards, Comcast willfully infringed each MaxLinear and Entropic Communications Inc. patent that was standard-essential to MoCA no later than shortly after the issuance of those patents.  To the extent Comcast did not engage in such review, it constitutes willful blindness to patent infringement due to Comcast's knowledge of the foundational role and contributions of Entropic Communications Inc. and MaxLinear to the MoCA standards.

# COMCAST SUBSTANTIVELY ANALYZED AT LEAST ONE NON-MOCA ENTROPIC PATENT NOW IN SUIT

---

> 7       67.   Upon information and belief, Comcast substantively reviewed and
>
> 8   analyzed Entropic's U.S. Patent No. 8,223,775 (the "'775 Patent"), duly issued on July
>
> 9   17, 2012 from an application filed September 30, 2003, as part of its due diligence prior
>
> 10   to investing in Entropic in 2006.
>
> 11       68.   Accordingly, upon information and belief, no later than the day prior to its
>
> 12   latest investment in Entropic in 2006, Comcast knew or had every reason to know that
>
> 13   Entropic owned the '775 Patent. Because Comcast knew of the '775 Patent and
>
> 14   substantively reviewed its claims, Comcast began willfully infringing the '775 Patent no
>
> 15   later than the dates it began offering its cable modem products and services, having
>
> 16   knowledge that such use and deployment infringed the '775 Patent.

1048 FAC ¶¶ 67-68

68

# COMCAST INVESTED IN ENTROPIC INC. AND WAS AWARE OF ITS PATENT PORTFOLIO

3    65.    Comcast invested in Entropic once in 2003, and again in 2006.

4    66.    Upon information and belief, Comcast substantively reviewed and

5    analyzed Entropic's patents and patent applications related to the Patents-in-Suit as part

6    of its due diligence prior to investing in Entropic.

1048 FAC ¶¶ 65-66

69

# COMCAST REVIEWED AND ANALYZED CERTAIN ASSERTED MOCA PATENTS PRIOR TO INVESTING

1048 FAC ¶ 80:

80.    Upon information and belief, as part of its due diligence prior to investing in Entropic in 2006, Comcast substantively reviewed and analyzed the following Patents-in-Suit: the '518 Patent, duly issued on November 13, 2007 from an application filed December 18, 2002, an application filed August 19, 2002 and, *inter alia*, a provisional application filed August 30, 2001; the '249 Patent, duly issued on September 22, 2009 from an application filed July 21, 2001, and a provisional application filed May 4, 2001; the '759 Patent, duly issued on February 15, 2011 from an application filed July 12, 2004, an application filed August 29, 2002, and, *inter alia*, a provisional application filed August 30, 2001; the '802 Patent, duly issued on December 27, 2011 from an application filed December 2, 2005, and a provisional application filed December 2, 2004; '450 Patent, duly issued on January 14, 2014, from an application filed September 19, 2005 and, *inter alia*, a provisional application filed December 2, 2004; the '539 Patent, duly issued on December 31, 2013 from an application filed September 29, 2005 and, *inter alia*, a provisional application filed December 2, 2004; the '7,566 Patent, duly issued on April 9, 2019 from an application filed February 7, 2017, an application filed September 19, 2005, and, *inter alia*, a provisional application filed December 2, 2004 (collectively, the "Pre-Investment Patents"). On information and belief, Comcast knew, based on its own analysis and also potentially statements from Entropic itself, that these patents were standard-essential to MoCA, such that practicing the MoCA standard would infringe these patents.

70

# COMCAST REVIEWED AND ANALYZED CERTAIN ASSERTED MOCA PATENTS PRIOR TO INVESTING (CONT.)

> 27  81.   Upon information and belief, no later than the day prior to its latest
> 28  investment in Entropic in 2006, Comcast knew or had every reason to know that
>
> 1  Entropic owned the Pre-Investment Patents related to the MoCA technology such that
> 2  deployment of MoCA standard-compliant devices would infringe patents owned by
> 3  Entropic.

1048 FAC ¶ 81

# COMCAST REVIEWED THE PATENTS ASSERTED IN THE VIXS SUIT

1048 FAC ¶¶ 93-96:

7    93.    Entropic filed a patent infringement suit against ViXS Systems, Inc. and

8  ViXS USA, Inc. in the Southern District of California, Case No. 13-CV-1102-

9  WQHBGS ("the ViXS Suit"), on May 8, 2013, asserting infringement of the '759 Patent

10  and the '518 Patent. Both patents are essential to the standards developed and

11  promulgated by the MoCA.

12    94.    Upon information and belief, as a member of the MoCA, Comcast analyzed

13  the claims in the ViXS Suit and the Asserted Patents.

14    95.    Upon information and belief, Comcast analyzed its products' functionality

15  in light of the patents asserted in the ViXS Suit.

16    96.    Because Comcast already was using and deploying devices practicing the

17  MoCA standards (and continued to do so), Comcast willfully infringed the '759 and

18  '518 Patents no later than May 8, 2013, after substantively analyzing the complaint and

19  Asserted Patents from the ViXS Suit.

# A FORMER INVENTOR OF ENTROPIC PATENTS WORKS AT COMCAST

17    108.    Upon information and belief, in addition to the knowledge as set forth

18  above, one of the named inventors of the '008 Patent and '826 Patent, as set forth in

19  Entropic's concurrently filed action *Entropic v. Comcast, et al.*, No. 2:23-cv-1050-JWH-

20  KES, was Patrick Tierney. Mr. Tierney now works at Comcast; thus, upon information

21  and belief, Comcast knew of the aforementioned Patents-in-Suit as early as the day Mr.

22  Tierney was hired.

1048 FAC ¶ 108

73

# COMCAST WILLFULLY INFRINGED PATENTS OWNED BY MAXLINEAR

1048 FAC ¶¶ 82-83:

82.   Because Comcast knew of the Pre-Investment Patents and substantively reviewed such Patents, Comcast began willfully infringing the Pre-Investment Patents no later than the dates it began offering the Accused Services as alleged herein, having knowledge that such use and deployment infringed the Pre-Investment Patents.

83.   No later than 2010 and continuing to the present, Comcast has used products that provided signals, programming and content utilizing a data connection carried over a coaxial cable network in accordance with the MoCA standards, including at least the Arris DCX3200, DCX3400, DCX3500, XG1-A, XG1v3, XG1v4, XG2v2, Ariss MR150CNM, Pace PR150BNM, Pace PX032ANI, Pace PXD01ANI, Samsung SR150BNM, and similarly operating devices. Because Comcast was already aware of Entropic's Pre-Investment Patents and knew that those patents were standard-essential, Comcast knew that its use of these devices would directly infringe the Pre-Investment Patents. Despite this knowledge, Comcast willfully infringed the Pre-Investment Patents beginning no later than 2010.

# COMCAST WILLFULLY INFRINGED PATENTS OWNED BY MAXLINEAR

11    73.    Comcast also willfully infringed two other MaxLinear patents no later than

12   March 20, 2019. Specifically, U.S. Patent No. 10,582,515 assigned to and prosecuted

13   by Comcast cites to two patents assigned to MaxLinear, U.S. Patent Nos. 9,178,765 and

14   9,419,858. These two MaxLinear patents were cited by the examiner in a non-final

15   rejection on March 20, 2019. On information and belief, Comcast infringes at least

16   claim 1 of both the '765 and '858 patents. On information and belief, no later than that

17   date, Comcast substantively reviewed and analyzed the '765 and '858 patents. On

18   information and belief, Comcast has willfully infringed the '765 and '858 patents

19   beginning no later than March 20, 2019.

1050 FAC ¶ 73

75

# COMCAST WILLFULLY INFRINGED PATENTS OWNED BY MAXLINEAR

1048 FAC ¶¶ 98-100:

98.     Additionally, Comcast and MaxLinear, Inc. were engaged in a longstanding commercial relationship for years.

99.     No later than the day prior to signing the VSA with MaxLinear, Inc., Comcast knew or had reason to know that MaxLinear owned patents related to non-standardized technologies deployed in the cable television and/or cable internet businesses. To the extent Comcast did not investigate whether it infringed such patents, Comcast was willfully blind to its infringement of patents owned by its long-time business partner, MaxLinear.

100.     No later than the day prior to signing the VSA with MaxLinear, Inc., any reasonable commercial party in Comcast's position, with Comcast's knowledge, would perceive a substantial likelihood that Entropic and/or MaxLinear owned patents related to non-standardized technologies deployed in the cable television and/or cable internet businesses, technologies that Comcast uses and deploys.

# COMCAST REVIEWED AND ANALYZED PRIOR LAWSUITS RE MAXLINEAR PATENTS



17  69.    Entropic filed a patent infringement suit against Charter Communications,
18  Inc. ("Charter") in the Eastern District of Texas, Case No. 2:22-CV-00125-JRG ("the
19  Charter Suit"), on April 27, 2022, asserting the '775 Patent, U.S. Patent No. 8,284,690
20  (the "'690 Patent"), U.S. Patent No. 8,792,008 (the "'008 Patent"), U.S. Patent No.
21  9,210,362 (the "'362 Patent"), U.S. Patent No. 9,825,826 (the "'826 Patent"), and U.S.

1  Patent No. 10,135,682 (the "'682 Patent") against Charter's provision of cable television
2  and internet services, cable modem products and STBs.

1048 FAC ¶ 69

77

# COMCAST ANALYZED THE PATENTS ASSERTED IN THE CHARTER SUITS

3    70.    Upon information and belief, Comcast analyzed the causes of action in the
4    Charter Suit and the asserted patents.
5    71.    Upon information and belief, Comcast analyzed its products' functionality
6    in light of the patents asserted in the Charter Suit.
7    72.    Upon information and belief, Comcast monitored the ongoing prosecution
8    of the '362 Patent family, and therefore was aware of the U.S. Patent No. 11,381,866
9    (the "'866 Patent") issued on July 5, 2022, and U.S. Patent No. 11,399,206 (the "'206
10   Patent") issued on July 26, 2022.

1048 FAC ¶¶ 70-72

# COMCAST ANALYZED THE PATENTS ASSERTED IN THE CHARTER SUITS (CONT.)

11      73.     Upon information and belief, Comcast analyzed its products' functionality
12  in light of the '866 Patent.

13      74.     Upon information and belief, Comcast analyzed its products' functionality
14  in light of the '206 Patent.

15      75.     Upon information and belief, Comcast requested indemnification from
16  Comcast's suppliers for each of the patents asserted against Charter, including the
17  MoCA-related patents, prior to Entropic filing the current action.

1048 FAC ¶¶ 73-75

# COMCAST ANALYZED THE PATENTS ASSERTED IN THE DISH AND DIRECTV SUITS

18    76.    Entropic filed a patent infringement suit against Dish Network Corporation, DISH Network, LLC, and Dish Network Service, LLC (collectively, "Dish") in the Eastern District of Texas, Case No. 2:22-CV-00076, on March 9, 2022, asserting infringement of three Entropic patents, including the '008 Patent (the "Dish Suit").

22    77.    Entropic filed a patent infringement suit against DirecTV, LLC, AT&T, Inc., AT&T Services, Inc., and AT&T Communications, LLC in the Eastern District of Texas, Case No. 2:22-CV-00075 on March 9, 2022, asserting infringement of three Entropic patents, including the '008 Patent (the "DirecTV Suit").

1048 FAC ¶¶ 76-77

80

# COMCAST DISCUSSED THE CHARTER, DISH, AND DIRECTV SUITS WITH RPX CORP.

| | |
|---|---|
| 26 | 78.    Upon information and belief, Comcast discussed the Charter Suit, Dish |
| 27 | Suit, and DirecTV Suit with RPX Corporation ("RPX"). Either before or shortly after |
| 1 | its discussions with RPX, Comcast substantively reviewed and analyzed the patents |
| 2 | asserted in the Charter Suit, Dish Suit, and DirecTV Suit. |
| 3 | 79.    Upon information and belief, Comcast subsequently suggested that RPX |
| 4 | reach out to Entropic to try to resolve the matters. |

1048 FAC ¶¶ 78-79

81

# 12(b)(6) Should Be Denied Where Movant Relies on Evidence Beyond the Pleadings

"In ruling on a 12(b)(6) motion, a court may generally consider only the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

*- Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, 2019 WL 1260634, at *2 (C.D. Cal. Mar. 18, 2019)

"As [Plaintiff] notes, '[c]ourts regularly decline to consider declarations and exhibits submitted in support of . . . a motion to dismiss, particularly 'if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice.'"

*- Trinity Info Media, LLC v. Covalent, Inc.*, 562 F. Supp.3d 770, 779 (C.D. Cal. 2021)

# 12(b)(6) Should Be Denied Where Movant Relies on Evidence Beyond the Pleadings

o Comcast seeks to include the following extrinsic evidence in support of its motion to dismiss:

| | | | |
|---|---|---|---|
| 1. Comcast- MaxLinear Vendor Service Agreement (VSA) (Ex. A) | 7. July-August 2013 assignment to MaxLinear, Inc (Ex. G) | 13. Entropic's Delaware Secretary of State registration (Ex. M) | 19. Letter from Entropic's CEO, Mr. Boris Teksler, addressed to Comcast Cable Communications, LLC (Ex. S) |
| 2. D&B Finance Analytics family tree report for MaxLinear Communications LLC (Ex. B) | 8. June 2010 assignment to MaxLinear, Inc (Ex. H) | 14. Entropic's Texas Secretary of State registration (Ex. N) | 20. Letter from Mr. Seth Kramer addressed to Entropic's CEO, Mr. Boris Teksler (Ex. T) |
| 3. Chart cross-referencing Asserted Patents and underlying patent applications (Ex. C) | 9. February 2015 Agreement and Plan of Merger and Reorganization (Ex. I) | 15. LinkedIn profiles for individuals associated with Fortress Investment Group (Ex. O) | 21. Letter from Entropic's CEO, Mr. Boris Teksler, addressed to Comcast Cable Communications, LLC (Ex. U) |
| 4. February 2018 assignment to MaxLinear Communications LLC (Ex. D) | 10. April 2015 assignment to Entropic Communications, LLC (Ex. J) | 16. Contact page on Fortress' website (Ex. P) | 22. Two letters from counsel for Entropic addressed to Comcast Cable Communications, LLC (Ex. V) |
| 5. September 2012 assignment to MaxLinear, Inc. of U.S. Patent App. No. 13/607,916 (Ex. E) | 11. March 2021 assignment to Plaintiff Entropic by MaxLinear, Inc (Ex. K) | 17. Organization chart of Comcast entities (Ex. Q) | 23. Letter to Comcast Cable Communication Management, LLC from Steven Litchfield at MaxLinear, Inc. (Ex. W) |
| 6. September 2012 assignment to MaxLinear, Inc. of U.S. Patent App. No. 14/948,947 (Ex. F) | 12. March 2021 assignment to Plaintiff Entropic by MaxLinear Communications LLC (Ex. L) | 18. Comcast 2020 Form 10-K (Ex. R) | |